Pages 1 - 39

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Phyllis J. Hamilton, Judge

```
"AMY," ET AL.,                 )
                               )
          Plaintiffs,          )
                               )
  VS.                          )     NO. CV 19-02184-PJH
                               )
RANDALL STEVEN CURTIS,         )
                               )
          Defendant.           )
_____)
```

Oakland, California
Wednesday, August 28, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

CAROL L. HEPBURN, P.S.
200 First Avenue West - Suite 550
Seattle, WA  98119
**BY:  CAROL L. HEPBURN, ESQUIRE**

CARPENTER, ZUCKERMAN & ROWLEY
407 Bryant Circle - Suite F
Ojai, CA  93023
**BY:  JOHN A. KAWAI, ESQUIRE**

For Defendant:

COLEMAN & BALOGH LLP
235 Montgomery Street - Suite 1070
San Francisco, CA  94104
**BY:  ETHAN A. BALOGH, ESQUIRE**

Reported By:        Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
                    Official Reporter

<u>**Wednesday - August 28, 2019**</u>                                    **9:00 a.m.**

**P R O C E E D I N G S**

**---oOo---**

**THE CLERK:**  Calling CV 19-2184-PJH, Amy, et al. vs.
Curtis.

Counsel, please step forward and state your appearances.

**MS. HEPBURN:**  Carol Hepburn on behalf of Plaintiffs.

**MS. KAWAI:**  John Kawai, also for Plaintiffs.

**THE COURT:**  All right.  Good morning.

**MR. BALOGH:**  Good morning, Your Honor.  Ethan Balogh
on behalf of Defendant Randall Curtis.

**THE COURT:**  Good morning.

**MR. BALOGH:**  Good to see you, Your Honor.

**THE COURT:**  This matter is on for hearing.  Which one
of you is going to argue, or are you going to split it up?

**MS. HEPBURN:**  I will be arguing, Your Honor.

**THE COURT:**  Do you want to get your materials?  I
would like you at the podium.

**MS. HEPBURN:**  Yes, ma'am.

**THE COURT:**  All right.  I'd like to first just clarify
a few things.  I would like to know if there -- there are a few
inconsistencies in the pleadings, and I just want to make sure
that they weren't oversight or typographical errors.

As I counted, there are 15 plaintiffs; correct?

**MS. HEPBURN:**  Yes, Your Honor.

1        **THE COURT:**  Seven of whom are identified in the

2    Complaint as being adults, which means that there are eight

3    that are minors; correct?

4        **MS. HEPBURN:**  Mya has since become an adult,

5    Your Honor.

6        **THE COURT:**  "Since" meaning when?

7        **MS. HEPBURN:**  I don't know -- I'm sorry.  Since the

8    filing of the Complaint, she's had a birthday.

9        **THE COURT:**  Oh, since the filing of the Complaint,

10    which was earlier this year?

11        **MS. HEPBURN:**  Yes.

12        **THE COURT:**  So she's now an adult?

13        **MS. HEPBURN:**  Yes.

14        **THE COURT:**  Okay.  But she was a minor in 2016?

15        **MS. HEPBURN:**  Yes.

16        **THE COURT:**  Okay.  Now, there are several declarations

17    filed on the question of the victim notification.  We have a

18    declaration from, let's see, someone named Marsh and then from

19    you, Ms. Hepburn.

20        **MS. HEPBURN:**  Yes, correct.

21        **THE COURT:**  Okay.  And the names in the caption of

22    both of those declarations are the same, 15, as exist in the

23    caption of the Complaint, but in your declaration, Ms. Hepburn,

24    you name 10 of the victims, but two of the victims are Ashland

25    and Ava, who don't appear in the caption at all.

1          **MS. HEPBURN:**  My apologies.  I think that must be an

2     error, Your Honor.

3          **THE COURT:**  Okay.  That's what I assumed.

4       And then in the Marsh declaration, there are five victims

5     identified.

6          **MS. HEPBURN:**  Yes.

7          **THE COURT:**  But no one identifies Maureen and

8     Savannah.

9          **MS. HEPBURN:**  Savannah is a minor.  Maureen is an

10     adult.

11          **THE COURT:**  Okay.  But the problem is that neither of

12     the declarations cover Maureen and Savannah, but one of the

13     declarations cover Ashland and Ava.  It seems to me that

14     perhaps those two sets of names were mixed up with maybe

15     another case or something?

16          **MS. HEPBURN:**  Not from another case.

17          **THE COURT:**  Anyway, you need to figure that out --

18          **MS. HEPBURN:**  Yes.

19          **THE COURT:**  -- because the evidence that you submit in

20     conjunction with the declarations that support that they

21     received the notification doesn't match up with all of the

22     15 --

23          **MS. HEPBURN:**  I understand.  I understand.  I

24     apologize for that, Your Honor.

25          **THE COURT:**  All right.

1   So assuming that you can clarify that, then we can move to

2   the argument.

3   We have the Defendant's motion to dismiss.  Essentially

4   there are two issues:  One, whether or not the Plaintiffs in

5   this case had to be a minor at the time that they were

6   victimized; and, two, whether or not personal injury was

7   suffered as a result of the violation of the statute.  Those

8   are the two main issues.

9   Mr. Balogh, I have reviewed your papers.  Did you wish to

10  be heard further?

11  **MR. BALOGH:**  Briefly, Your Honor.  I know you have

12  reviewed our papers closely.

13  The first issue -- and I think there's -- I would just add

14  one thing, too.  I think you correctly framed the broad issue

15  as we brought it, which is the statute says whoever -- any

16  person who, while a minor, was a victim of one of 14 predicate

17  statutes and suffered an injury as a result of, quote, "such

18  violation," close quote, may sue, dot, dot, dot.  May sue and

19  recover, I think is the phrase of the statute.

20  And one of the things we get from their opposition brief

21  actually means that all -- at a minimum, it has to be dismissed

22  without prejudice as to the pleading requirement because the

23  pleading as framed by the Defendants, what they say -- excuse

24  me -- by the Plaintiffs in their opposition brief is each of

25  the Plaintiffs, barring the two that you've identified that

1   haven't -- the victim notification issue -- each of the

2   Plaintiffs was a victim of a Section 2251 violation by -- while

3   they were a minor by somebody else.  They each have their own

4   abuser.

5       And then they tell us in their opposition that as a result

6   of that 2251 violation by everybody else --

7           **THE COURT:**  2252, wasn't it?

8           **MR. BALOGH:**  Their opposition says the abuse came from

9   the -- the predicate statute they invoke for their abuse as

10  minors is 2251.  I will give you the page cite where they say

11  this.

12          **MS. HEPBURN:**  That's correct, Your Honor.

13          **THE COURT:**  Okay.

14          **MR. BALOGH:**  I'll just walk you through it, if I can.

15          **THE COURT:**  But Mr. Curtis pled to 2252.

16          **MR. BALOGH:**  That is correct.  And so what they've

17  pled is on date in the 1990s or the aughts or the teens, each

18  of us -- and they make the same allegations, so I will take the

19  hypothetical plaintiff, just for the purpose of argument, if I

20  may.

21      So Jane Doe says, "In 1992, I was a victim of a crime by

22  my uncle.  My uncle abused me.  He photographed it.  He

23  trafficked in it.  In 2016, Mr. Curtis pled guilty to a

24  different statute, 2252.  And so we're suing" -- that's the

25  gravamen of the lawsuit, both violations, but the statute is --

the wording cannot be doubted.  Whoever -- "whichever person,

while a minor, suffers a violation of statute acts," in this

case 2251 is what they plead and then sued because of such

violation.  They're admitting they're suing because of a

different violation, Mr. Curtis' violation.  And the statute

doesn't permit a mix and match.

And what they say in their opposition brief is, "No, the

predicate is 2251 by the uncle.  The violation is 2251 by

Mr. Curtis.  We can sue."  And our position is no, you

absolutely cannot sue on that theory.  What you have to say

under the statute is, "On date while I was a minor, I suffered

a violation of predicate statute," and that statute is the

gravamen of the suit against Mr. Curtis.  It has to be based on

his 2252 violation.

And what they say, quite admirably, in their opposition

brief is, "That's not what we've pleaded.  We pled something

different."  And I don't think the statute permits that

"something different."  So that would be the first argument.

I think for the -- the -- the girls who are now minors --

not minors, of majority -- they could absolutely I think

replead.  I think they would have to plead the necessary facts.

But at a minimum at this point and the most narrow,

judicious argument -- you know, we decide as little as possible

to resolve the issue before the Court, you know,

judiciousness -- that all of them have conceded they haven't

1    pled the statute as written so none of them have stated a claim

2    upon which relief can be granted, and that would be the first

3    argument I would make today.

4        I will entertain any questions Your Honor has, but I think

5    the statute -- so we did a statutory analysis.  I think the

6    Supreme Court did a very good job in *Nassar* in teaching how we

7    interpret these statutes and in *Burrage*, and the key for this

8    argument is what does "such violation" mean?  It has to refer

9    back to the first violation.  That's what "such" means.  It's a

10   reference.  It's a director, if you will.

11       So they have to plead that while a minor, the "such

12   violation," this 2252 that Mr. Curtis was convicted of -- that

13   they were a victim while a minor of that violation, and by

14   their own admission, no Plaintiff has pleaded that.

15           THE COURT:  So you wouldn't -- so you're arguing that

16   if, indeed, as pled if they're alleging that they suffered

17   personal injury as a result of the first violation -- because

18   there were two.  The women at issue were victimized once when

19   the images were created and secondly when your client viewed

20   the images.

21           MR. BALOGH:  Allegedly, but, yes.

22           THE COURT:  Possessed the images.

23           MR. BALOGH:  Yes.

24           THE COURT:  So if their intent is to hold your client

25   responsible for the injury resulting from the first, that is,

1  the creation of the image, you're saying that the statute

2  precludes that?

3       **MR. BALOGH:**  Absolutely, Your Honor.  And we just --

4  we walked through it, and it's just -- it's just a pure

5  statutory question.  The first two -- the clause is "any person

6  who" --

7       **THE COURT:**  I have it right here in front of me.

8       **MR. BALOGH:**  -- "while a minor was a victim of a

9  violation of statute and" -- "and suffers a" -- "who suffers a

10 personal injury as a result of such violation."

11   So the question is what does "such violation" mean?

12      **THE COURT:**  Sure.  But let's assume "such violation"

13 means the creation of the image.

14      **MR. BALOGH:**  Okay.  Right.

15      **THE COURT:**  Then the statute says they may sue, but it

16 doesn't say who they may sue.

17      **MR. BALOGH:**  Right.

18      **THE COURT:**  So you're arguing that they can't sue

19 someone who later views it based upon that reading of the

20 statute?

21      **MR. BALOGH:**  That is correct.  The question is --

22 right.  It doesn't say who sues.  So then the question is how

23 would you interpret the statute with its most natural meaning?

24   Now, I have seen all the photographs.  Can they sue me?

25 The agent viewed all the photographs.  Can they sue him?

1    Judges in these cases view all the photographs.  Can we sue

2    them?  And the answer would be "no."

3        The natural reading of the statute is you sue the person

4    who created the violation, who committed the violation.  And

5    the "such violation" refers back to the original one.

6        And I don't -- I haven't heard my colleague identify any

7    natural reading of those first two clauses of the statute

8    that's different than mine.  They just -- they just don't

9    address the "what does such violation mean?"

10       But "such violation" has to refer to the first one, and

11   then you're suing for the injury.  If the injury comes from the

12   person who created it, how could you sue a third party like

13   Mr. Curtis?  Because the violation -- suffers personal injury

14   as a result of such violation, then the tortfeasor is the

15   person who committed such violation.

16           **THE COURT:**  What do you say to their arguments about

17   the legislative history --

18           **MR. BALOGH:**  Well, I would say --

19           **THE COURT:**  -- and the change in the statute?

20           **MR. BALOGH:**  Well, I would say three things:  One, it

21   didn't change as a result of language.  The only thing that

22   changed in the statute was two things.  One, it changed -- it

23   used to say "any minor who suffered a violation," dot, dot,

24   dot.  So it said you don't have to be a minor when you sue, but

25   it didn't change the "such violation" language in any way,

1    shape, or form.  So that predicate remains, the limitation on
2    what you can sue for.

3        And the second way I would address it is actually a
4    twofold argument.  One, unless we have a natural reading that
5    is contrary to mine, we don't get to legislative history, and
6    we played out the Supreme Court's clear degradation of that as
7    a statutory tool.  But even if you said, "Well, we'll consider
8    it anyway, I want to get the full picture," one of the
9    co-sponsors adopts my point of view and says no, this is about
10   the perps, it's about the abusers, the people who take the
11   pictures during the abuse and the people who traffic in them,
12   neither of which is Mr. Curtis.

13       And that will ultimately dovetail when you see how the
14   Supreme Court treats this in *Paroline* --

15            (Cellular telephone noise interruption.)

16       **MR. BALOGH:**  I apologize, Your Honor.

17       There is a remarkable consistency in the legal theories
18   which show why Mr. Curtis doesn't fall within the statute.  Not
19   only do we have Senator Isakson giving my interpretation, so he
20   is inconsistent.  He and John Kerry, two co-sponsors, think it
21   means different things, and that's why the Supreme Court
22   degrades legislative history.

23       Apart -- even the Supreme Court teaches us you can look at
24   congressional reports, but the Congressional Record is just
25   anyone can put in whatever they want.  No one knows who sees

1    it, reads it, considers it.  It's, by definition, not

2    authoritative.  But even if you looked at it, when we have a

3    conflict -- and I believe I gave you the citation -- to look at

4    the legislative history, then that has to overcome clearly, it

5    has to overwhelm the plain language, which it clearly does not

6    do here.  You have disparate views of what it contains.

7          But *Nassar* really solves it, and *Nassar* tells us what to

8    do, and when we read the language, "such violation" has to go

9    back to the first one, and there is -- and if there is a way to

10   harmonize it that I haven't thought of, my colleagues haven't

11   thought of, I don't know of it.

12         But we start with the language, and the language is clear

13   this is aimed at the person who committed the abuse or created

14   the -- put the images in the S, if you will, such that the fear

15   and trepidation these girls or women feel today is in

16   existence.  That's not Mr. Curtis.

17         **THE COURT:**  All right.  Do you want to move to the

18   causation issue?

19         **MR. BALOGH:**  Certainly.

20         *Burrage* and *Nassar* teach us how we review "as a result

21   of," what does that mean.  And *Nassar* teaches us there is a

22   presumption that that means "but for" causation.  That is the

23   backdrop on which Congress litigates.  It's sort of like

24   willfully both in the civil and the criminal context.  Under

25   Bryan, it's a magic word.  And when Congress uses a phrase that

has common meaning, we -- the courts say well, we assume they know their meaning.  They assume they know the backdrop, and that's *Nassar*.  *Nassar* is a civil case.

And then what *Burrage* teaches, which is a criminal case -- they build on *Nassar* but teach the same thing.  And that was my exact response to the Complaint, where do you start?  With statement of torts.  What's the causation?  And "as a result of" means "but for" causation, unless there is a textual reason not to do that.

And *Burrage* explained and *Paroline* explain -- *Paroline* built on the same thing, which is when Congress uses that phrase, we presume they mean "but for" causation.

And *Paroline* teaches us two things.  One, that statute said we're not going to use "but for" causation.  It said we're going to use damages, quote, "proximately caused," and because of that, the Supreme Court said we're going to relax the *Burrage* rule, we're going to relax the *Nassar* rule for 2559 because Congress has given us an indication they want to do that by identifying damages that proximately caused.

So Congress has given us its signal.  It's chosen language to guide us in our interpretation, and this is how we interpret it because they told us not to use "but for" causation.

In this case, there is no proximate cause signal, so the standard -- the default rule *Nassar* and *Burrage* teach us is "but for," and *Paroline* goes a step further, which is one of

1    the problems we have here.

2         *Paroline* teaches that downstream possessors of child

3    pornography cannot be the "but for" cause of the types of

4    injuries these Plaintiffs are alleging.  And, in fact, one of

5    these Plaintiffs was the claimant for restitution in *Paroline*,

6    and the Supreme Court said clearly she can't establish it.  She

7    can't make that standard because she claims a different type of

8    damages.

9         And I think -- I think -- theoretically I think they could

10   get a chance to replead.  I think any plaintiff here, if the

11   facts are true, could say, "On date I learned about Mr. Curtis'

12   conduct.  It injured me in this way."  And they could try to

13   make the factual showing that his conduct and their awareness

14   of it affected them, and then that's what would be tested at

15   this trial, but they haven't done that.

16        They've done a similar thing to what the Supreme Court

17   said wasn't "but for" causation in *Paroline*, which is, "We're

18   aware generally that people like Mr. Curtis exist, and because

19   I'm aware that people like Mr. Curtis exist, that causes me

20   mental hardship.  And that general awareness I want to get paid

21   for."  And that's exactly what *Paroline* said is not "but for"

22   causation of personal injury, and that's the record we have

23   here.

24        So I think at a minimum, the Court has to dismiss all of

25   them without prejudice and require them to replead when they

1    learned about the conduct and how that conduct caused them each

2    personal injury.  We'll explore that, and we may have a trial

3    on that, but that's what they have to do, and we're not there

4    yet.

5        I also think as a matter of law they're going to have a

6    hard time getting there because of the Supreme Court's

7    statements in *Paroline*, but, again, judiciousness, decide only

8    as much as we need to resolve the issue before the Court, I

9    think they have to do that today.  So that would be my argument

10   on the second issue.

11       **THE COURT:**  Okay.

12       Response?

13       **MS. HEPBURN:**  Thank you, Your Honor.

14       First of all, counsel did misstate our point in our

15   responsive pleadings.  We are not saying that our predicate for

16   Mr. Curtis is in fact the original contact, abuse, and

17   production of the case, but I will get to that in a minute.

18       I think what is important here is to view this issue in

19   the context of the broad remedial scheme that Congress has

20   devised and the courts have affirmed for victims of child sex

21   abuse image exploitation.  That began with Section 2255 which

22   provided the civil remedy which had the option for liquidated

23   damages of $50,000 or proof of actual damages.

24       It went on with the enactment of Section 2259, which is

25   the specific restitution statute for victims of child

pornography.

It was then expanded with the amendments in 2006 of Section 2255, which not only increased the minimum liquidated damages but also put in the clarifying language that the injury that was being claimed civilly for need not have occurred when the victim was a minor.  Now, if this statute was a model of clarity, we wouldn't have needed that amendment, would we?

The scheme that Congress has devised went on and was broadened once again in 2018 with a December 7, 2018, enactment of the Amy, Vickey and Andy Act which amended Section 2259 by providing a minimum amount of restitution for these victims and creating a compensation fund for those who find that restitution and/or civil claim does not really provide them reimbursement for their damages.

And so what you have is a broad remedial scheme which Congress has expanded over time with different types of remedies and with increasing the minimum amount of those remedies in order to meet the scourge of child pornography offenses and the devastating language that everyone has recognized come from them, the courts and the Congress.

So let's look at the language of the statute.  "Such," actually if you look at Webster's, means referring to a similar kind or character or type of something, and so I think Your Honor was hitting on it when you were saying that well, the referral back to one of the predicate cases was of a

1    similar kind or type or character.  And if you look at all the

2    predicate offenses there, the first two or three are about

3    coerced labor and labor trafficking.  All the rest are about

4    some sexual-related crime about coercion, about transporting

5    minors across state lines.

6         And I think what we've -- what would be much more in line

7    with counsel's argument is if instead of the word "such,"

8    Congress would have used the word "that," so let me just read

9    the statute using that substitution.

10         "Any person who, while a minor, was a victim of a

11    violation of," and then we list the enumerated sections, "and

12    who suffers personal injury as a result of that violation,

13    regardless of whether the injury occurred while the person was

14    a minor."

15         If that were the language, it would clearly relate back to

16    the initial offense that occurred while a minor, but it

17    doesn't.  It uses the word "such."  And, again, the statute is

18    not a model of clarity at all.

19         And, in fact, counsel has in his reply brief some

20    discussion about surplusage, and if you look at the *Boland*

21    case, there is actually a discussion there of the issue of

22    surplusage towards the end of the opinion.  It's on pages 881

23    to 882, and it talks about in this statute the words talking

24    about having been injured by the offense is really surplusage

25    for the use of the word "victim" in the early part of the

statute because in order to be a victim, one, of necessity, has to be injured.  And Scalia is quoted by the Third Circuit in that particular case.

It's unfortunate we don't have a case which has considered the precise issues before the Court at this time, and so we have to look at those which have -- those cases which have discussed other issues, but, again, have looked at the legislative history.

But let me also talk about *Paroline* because *Paroline*, I think, supports the Plaintiffs' side in this argument and not necessarily Defense.

*Paroline* -- and there was some discussion, quite a bit of discussion there in the briefs, in the 14 amicus briefs which were submitted and the argument before the Supreme Court, about the issue of aggregate causation.  And the court there looked -- all of the plurality decisions in that case look at and recognize the unique nature of this particular injury. That you have an initial insult with the hands-on offense and the production of the images, but then you have the re-victimization that comes over time repeatedly and repeatedly.  And injury is heaped upon injury upon injury upon injury.  And certainly Mr. Curtis is among those who have injured these young women.

And this has been recognized over time in the *Ferber* decision, in the *Osborne* decision, in the *Paroline* decision.

1    *Burrage* was a narcotics decision, and that was

2    specifically discussed in the *Paroline* case.  And the court in

3    *Paroline* decided to depart from the "but for" causation, but

4    I'll get to that in a minute.

5        Again, if we look at what the result of Defendant's

6    interpretation would be, it would say that if I am a victim of

7    child pornography, that when I'm 17 and a half, I could sue one

8    of the downloaders who possessed and ogled my images, but the

9    day I reach 18 and I'm 18 years and one day, I could not, and I

10   submit that's a bizarre result, Your Honor.

11       And it flies in the face of all of the history of case law

12   which recognizes the lifelong and devastating injuries that

13   come to the victims of these crimes.  It's at odds with the

14   broad remedial nature of the statutes that Congress has

15   enacted, as well as it nullifies the 2006 amendments to Section

16   2255.  It is a very strange result.

17       And taking it a step further, it would actually be that

18   while I was a minor and I was not in control of what happened

19   to me legally and I had to rely on parents and others who

20   didn't protect me when I was a child to pursue my legal

21   remedies, I would have a remedy, but when I'm 18 and I can act

22   on my own behalf, I have no remedy.  It makes no sense in the

23   broad scheme of things.  It's an absurdity which we try to

24   avoid in statutory interpretation.

25       Other cases have looked at the legislative history, and

1  they have looked at the statements of lawmakers.  The *Hekseth*

2  case that I've submitted is one that did this.  That was a case

3  that looked at whether or not a civil claim under 2255 could be

4  brought after a victim received restitution, and again the

5  Court said yes.  Again, we're looking at broad remedies here to

6  try and fully compensate these victims.  And, again, we have

7  the *Boland* case that did as well.

8      Can I answer any questions from Your Honor about the

9  question of minor status?

10      **THE COURT:**  Well, you indicated at the beginning of

11  your presentation that you were going to refute Mr. Balogh's

12  claim that the predicate act that you pled is 2251 --

13      **MS. HEPBURN:**  I was trying --

14      **THE COURT:**  -- as opposed to 2252.

15      **MS. HEPBURN:**  We stand on the Complaint, Your Honor,

16  which says that the predicate offense is the 2252 -- is the

17  2252 offense.  I was merely responding that, yes, all of these

18  victims did, as minors, suffer one of these offenses, and that

19  happened to be under 2251.

20      But if you look at the "such" wording -- and it was a bit

21  hard with the tremendous additional amount of authorities that

22  was filed in the reply as opposed to the opening brief in this

23  matter -- but if you look at the definition of the word "such"

24  in terms of a literal interpretation of the statute, that

25  "such" refers back to something of a similar character or kind,

and the 2251 is of a similar character or kind.

But we believe that status as a minor at the time of the predicate offense is not a requirement, that that's a straw argument in this case.  And so I'm not -- I think the Complaint is properly pled.

**THE COURT:**  Okay.

**MS. HEPBURN:**  I also think the Complaint is properly pled with regard to damages.  We've alleged the type of damages that each of these victims has suffered as a result of child pornography offenses, and we've said in our Complaint that the Defendant is included among those who have perpetrated the crimes and caused the damage.

We're acknowledging that he's not the only one, but we have pled for each of them that he is certainly one of those who have damaged them.  We have enumerated the types of damage that they suffer.

And we also support, as discussed about *Paroline*, that there is no "but for" causation here that is required.  That the analogous analysis in *Paroline* -- yes, Your Honor?  Did you have a question?  I'm sorry.  I'm sorry.

We believe it's properly pled, and "but for" causation is not a requirement, and that *Paroline* stands for that in the context of child sex abuse image exploitation crimes and remedies.

**THE COURT:**  Okay.  So simple proximate causation --

1        **MS. HEPBURN:**  Yes.

2        **THE COURT:**  -- is what you are relying upon?

3        **MS. HEPBURN:**  Yes.  And the fact that Congress has

4   instituted a liquidated damages provision stands for that, and

5   Congress is attempting with that to try and alleviate further

6   injury on the victims so that they don't have to come forward

7   and plead or testify with specificity about the types of

8   injuries that they have received at the hands of the defendant.

9        We have a minimum liquidated damages amount designed to

10  short circuit that and avoid further injury.

11       **THE COURT:**  Okay.  All right.

12  Response?

13       **MR. BALOGH:**  Thank you, Your Honor.  I will be brief.

14       To find my piece on the "they were going to refute," it's

15  page 10 of their brief, and here is how the Plaintiffs

16  interpret what they've pleaded.

17       "As they have alleged, Plaintiffs were all minors when the

18  images of their childhood sexual abuse were created.  They were

19  each sexually abused as minors, and images, both photographs

20  and video images, of their sexual abuse were disseminated to

21  others.  They are thus all victims of crimes under 18

22  United States Code Section 2251.  As well" --

23       **THE COURT:**  But aren't they using 2251 as sort of the

24  umbrella of the enumerated offenses?

25       **MR. BALOGH:**  Right.  So they're saying when they were

1  minors, that's the crime they all claim as a minor.  That's the

2  first predicate of this act.  "Any person, who while a minor,

3  was a victim of this violation."  They say in page 10, that's

4  2251 and identify 2251 as the predicate statute of which they

5  were victims while minors.

6       That's when they pivot to, as well, Mr. Curtis possessed

7  childhood sexual abuse images, child pornography, of

8  Plaintiffs, a violation of 18 U.S.C. Section 2252, and the

9  subsequent conviction is the predicate behavior that renders

10 him liable to Plaintiffs.  So that is the "such violation."

11 And "such violation" under the statute necessarily refers to

12 the statute -- to the predicate act identified in the first

13 clause which is the violation that occurred while they were

14 minors.

15       **THE COURT:**  But what does the Complaint say?

16       **MR. BALOGH:**  The Complaint is hard to read.  It's very

17 carefully crafted.  What's really clear in this case is it's

18 unclear whether any Plaintiffs even know about Randall Curtis.

19 It's unclear whether any Plaintiff knows or believes that he

20 possessed images of them.

21       That's -- what the issue in *Paroline* was, part of it

22 was -- and I believe it's Amy -- doesn't know who Paroline was.

23 They stipulated she didn't ever know about Paroline.

24       **THE COURT:**  Don't the declarations indicate that they

25 were given notice?

1      **MR. BALOGH:**  No.  It indicates the lawyer was given

2  notice.  There is nothing in this record -- and you can inquire

3  of counsel -- whether any individual Plaintiff -- and if they

4  are -- if they are minors under the age of 5 or 6, I would

5  ascribe to the rule that their guardians can speak for them,

6  but from age 6, 7, 8, the adults, not one of them says "we're

7  aware that Randall Curtis even exists," much less that "we

8  believe he did something to us," much less that "we were

9  personally injured as a result of his conduct."  None of that

10  is pleaded, and that was one of our complaints, which is that's

11  the bare minimum.  You can't say -- you can't say he harmed you

12  unless you know of him.  If a tree falls in the forest and no

13  one is there to hear it, you cannot go deaf by definition, and

14  you can't blame your deafness on the defendant.

15      And here, not one Plaintiff -- you can just inquire, does

16  any individual Plaintiff actually have an understanding and

17  belief of what Mr. Curtis did and that understanding led to

18  harm to them?  Because that's the predicate; right?  That is

19  one much the predicates.  Put aside the statutory analysis

20  which is that predicate had to occur when they were a minor.

21  If we put --

22      **THE COURT:**  So I should construe the declaration as

23  the lawyers, on behalf of their clients, received a copy of the

24  victim notification --

25      **MR. BALOGH:**  Yes.

1    **THE COURT:**  -- that indeed their image was found on

2    Mr. Curtis' computer, and I am to presume that they never

3    conveyed that information to their client?

4    **MR. BALOGH:**  Yes.  Well, that's what -- that's what

5    they pled to in *Paroline*.  They pled those facts for Amy.

6    *Paroline* went to the United States Supreme Court on that

7    record.  And just to be clear -- and I'm sure I'll be confirmed

8    by counsel -- in some of these other cases, they're often the

9    lawyers on these other cases which they have cited or some of

10   the cases in the case law.  They are prosecuting these cases on

11   a broader basis than this Court.

12       That is a common feature of these cases.  The plaintiff

13   doesn't personally know of the defendant's conduct.  It's a

14   common feature, and I don't know whether that's a feature of

15   this case, but no Plaintiff has pled, no Plaintiff has made the

16   affirmative representation that "I, the individual, got

17   information about Mr. Curtis, and based on that information, it

18   affected me in an identifiable way."  Not one Plaintiff has

19   said that as of this date.

20       And I think that's a necessary step to establish -- even

21   to make a claim for personal injury -- that you have to be

22   aware of Defendant's conduct.  They --

23       **THE COURT:**  I don't understand.  Why do you think they

24   have filed a lawsuit if they're not aware of the Defendant's

25   conduct?

1    **MR. BALOGH:**  Because the lawyers are.  I think they

2  are acting under Power of Attorney.  I don't think they -- they

3  didn't even sign the ADR certification.  The ADR certification

4  in this court says "lawyer and plaintiff."  "Lawyer and party."

5  "Lawyer and party."  My client signed it.  I signed it.  Not

6  one Plaintiff signed it.  John Kawai signed on behalf of

7  Plaintiff, unidentified, for the 15 plaintiffs.  Not even one

8  Plaintiff has certified the ADR certification.

9    **THE COURT:**  Most of our declarations that are filed on

10  behalf of minors don't include the minor's signature.

11    **MR. BALOGH:**  Well, there is guardians for the minors

12  here.  They are John Doe and Jane Doe and I think there are a

13  couple of other names.  They didn't sign it.  They would have

14  the authority.

15    For the minors, I agree, the guardians have authority, but

16  the guardians haven't signed it, and we have eight adults who

17  are in this lawsuit, and none of them have signed it.  So I'm

18  saying none.  It's zero.  The answer is zero.  Not one

19  Plaintiff at any point --

20    **THE COURT:**  Well, we're not adjudicating the

21  legitimacy of the ADR certificate at this time.

22    **MR. BALOGH:**  Right.

23    **THE COURT:**  We're only looking at the Complaint.  This

24  is a motion going to the pleadings.

25    **MR. BALOGH:**  Right.  And my point -- I was making a

1   broader point of what the concern is here about damages, but

2   the pleadings are -- I stand by my arguments on the statutory

3   interpretation.  I was just sort of giving some color to that

4   of sort of the broader concerns of this case.

5         And I guess my final response is I think the answer is

6   what Senator Isakson said.  This statute doesn't reach

7   downstream possession, and the reason it doesn't reach

8   downstream possession is because downstream possessors don't

9   harm the victims.

10        The harm to the victims comes from two sources -- this is

11  what *Paroline* said -- the people that abuse and photograph and

12  the initial distributors who make it available.  Those are the

13  individuals, the perps, the criminals who actually cause harm.

14        And the claim here is, "Well, it's in the S.  I -- I have

15  anxiety because anyone could download it today," and that is

16  not harm.

17        **THE COURT:**  Your argument is that hundreds, if not

18  thousands, of people viewing the images causes no harm to the

19  victims?

20        **MR. BALOGH:**  Yes.  I think that harm flows from the

21  distributor, not from the -- not from the downstream

22  possessors.

23        **THE COURT:**  If there weren't a demand for the images,

24  then there wouldn't be any incentive to create this kind of

25  contraband, would there be?

1    **MR. BALOGH:**  Well, I don't know that that's

2    necessarily true.  My sense is these cases -- there is actual

3    pedophilia, there is mental disruption, there's people that --

4    I don't think the people that are creating this, the men that

5    abuse these girls -- I would be hard-pressed to believe they

6    were doing a market analysis of the system before they decided

7    to do the terrible acts they did.

8      I think the uncle example is a terribly depraved human

9    being who abused his niece -- abused his nieces,

10   photographed them --

11       **THE COURT:**  Let me just ask you, if someone creates

12   child pornography and then it's destroyed and no one sees it --

13       **MR. BALOGH:**  Okay.

14       **THE COURT:**  -- there is no further harm from the

15   creation, the harm is solely from the abuse that occurred

16   during the creation of the image; correct?

17       **MR. BALOGH:**  Correct.

18       **THE COURT:**  Are you saying that that's the same as the

19   situation where there is indeed a product that's created that's

20   not destroyed but is shared with hundreds of other people?

21       **MR. BALOGH:**  I think --

22       **THE COURT:**  You're saying that that sharing and the --

23   what's the language used by the cases?  It's the trade in their

24   images.  The fact that the images are being shared with

25   hundreds of other people doesn't create any more of a problem

1   than the situation where the images are destroyed immediately?

2        **MR. BALOGH:**  No.  I'm saying the damage flows from the

3   person who distributes it.  So if you want to take a -- let's

4   take Johnson & Johnson opiates, for something in the news.

5   Perp 1 creates the opiates in Tasmania.  Super powerful.  That

6   person introduces that to the stream of commerce.  That's the

7   harm.  The person who abused and distributed harms the victim.

8       But the same reason I didn't hurt any Plaintiff in this

9   case when I went down to Justice and they put it on the

10  computer for me and we examined evidence, and just how if we

11  have a trial in this courtroom, neither your conduct of

12  overseeing the evidence nor the jurors' conduct in reviewing

13  and assessing it to determine are these girls who they claim to

14  be, is this child pornography, those people don't harm the

15  girls.

16       **THE COURT:**  Mr. Balogh, I think that's a very

17  interesting argument and that's one that perhaps the jury will

18  decide in this case.  I'm certainly not prepared at this

19  juncture of the case to agree with you that there's no harm to

20  the victims from hundreds, thousands of people looking at the

21  images that were created of their abuse.  I'm not going that

22  far.

23       **MR. BALOGH:**  Just to be clear --

24       **THE COURT:**  Excuse me.  Don't interrupt me.

25       **MR. BALOGH:**  I'm sorry, Your Honor.

1    **THE COURT:**  That is not something that I will reach in

2   this case, and if I were to reach it, it would not be in your

3   favor, so I think you should stop arguing that particular point

4   at this time.

5    **MR. BALOGH:**  Can I clarify, Your Honor, because that's

6   not what I'm arguing.

7    The harm is real.  The question is who is the burden of

8   the harm on, who is the causer of the harm.

9    My argument is it comes from the distributor.  That causes

10  the harm.  It's the person who takes it and provides it --

11   **THE COURT:**  No.

12   **MR. BALOGH:**  But for that conduct, nothing gets seen.

13  But for --

14   **THE COURT:**  I don't agree with you that there is no

15  harm caused by people looking at the images of violence

16  perpetrated against these young girls.  I don't agree with you.

17   **MR. BALOGH:**  Thank you, Your Honor.

18   **THE COURT:**  All right.  But I don't know that I need

19  to decide that in order to decide this case.

20   Anything else on the issues that have been raised here?

21   **MS. HEPBURN:**  I might just add that as among this

22  group of Plaintiffs, some do receive the images; some have

23  elected -- I'm sorry -- some receive the notices, Your Honor,

24  directly, in addition to counsel; some just receive them from

25  counsel.  Some of counsel's statement would invade the

1    attorney-client privilege in terms of what our communications

2    are.

3         I can speak to any further facts that the Court is

4    interested in --

5         **THE COURT:**  Well, given that you raised it, what's

6    your response to counsel's argument that no one has -- I don't

7    have the Complaint in front of me, but his argument is that no

8    one has pled that they have any awareness that Mr. Curtis

9    viewed their images much less that they were harmed thereby.

10        **MS. HEPBURN:**  Not specifically in those words,

11   Your Honor, but I don't believe that that's again a requisite.

12   If we can analogize to *Paroline* again, the parties specifically

13   stipulated in that matter that Mr. Paroline had two images,

14   that he did not know Amy, never known of Amy, and that Amy did

15   not know of him until the court case arrived, and so, you know,

16   it's an exactly analogous situation.

17        But, no, we haven't pled it because we didn't think it was

18   necessary.

19        **THE COURT:**  Okay.  All right.  The matter is

20   submitted.  Thank you.

21        **MR. BALOGH:**  Thank you, Your Honor.

22        Can I ask a question before you dismiss us for the day,

23   Your Honor?

24        **THE COURT:**  Yes.

25        **MR. BALOGH:**  Stranger in a strange land.  I know the

1    courtroom; not my normal setting on how we go forward.

2        We have a CMC in October, and we have -- the issue that's

3    arisen is whether or not we can depose the guardians of the

4    minors and whether or not we can depose the adults or obtain

5    discovery from them directly.

6        The Plaintiffs' position is we can't do that.  My act --

7            **THE COURT:**  The adults -- the adult plaintiffs?

8            **MR. BALOGH:**  Yes.  So I can't -- the Plaintiffs'

9    position is whether the -- I can't depose the guardians of the

10   minors and I can't depose the adult plaintiffs, and I can't

11   know their names, I can't investigate them, I can't do

12   anything, and they want to the litigate that because my act of

13   conducting discovery to have them prove their claims that

14   they've brought would hurt them, is their theory, and so

15   because I would -- by just seeking discovery in support of

16   their claims, I would cause harm to them, that I'm not entitled

17   to it in this case, and we're going to proceed without that.

18       I obviously think I'm entitled to test the allegations and

19   to obtain discovery and to ask questions of the Plaintiffs, and

20   if they're minors, to ask questions of their guardians, who

21   will speak for them because the children are children.  I don't

22   see at this point any need to do anything but examine their

23   guardians.

24       And we have a CMC now in October.  I know the Court

25   somewhat from experience, that we'll get an order about today's

1   proceedings in the near term.

2       To litigate that discovery issue, should we just bring

3   that directly to the magistrate?

4           **THE COURT:**  I don't understand why this is an issue.

5   I don't understand the Plaintiffs' position.

6           **MS. HEPBURN:**  The Plaintiffs are concerned again about

7   further injury and about anonymity, and the Court has granted

8   our motion to proceed via pseudonym.

9       We are prepared to present proof on the identity issue in

10  terms of yes, these Plaintiffs are those who, as children, were

11  depicted in the images that Mr. Curtis had and that were seized

12  by law enforcement.

13      We believe that with the liquidated damages provision of

14  the statute that there is not the need to go through the

15  grinding discovery about "were you injured" and "how were you

16  injured" and "how has that affected you," and that that would

17  only reinjure.

18          **THE COURT:**  That would go to damages, perhaps, and

19  we're talking about perhaps the amount of damages, but that

20  doesn't answer the question of liability in this case.  This is

21  not a strict liability case.  You still have to prove --

22          **MS. HEPBURN:**  Well, but we believe the issue is

23  identity, which we're prepared to prove, and beyond that, we

24  believe the case law says that being a victim of child

25  pornography is itself an injurious state of being, and we've

1  all opted for the liquidated damages provision as to -- as

2  opposed to proving an amount of actual damages.

3      **THE COURT:**  Okay.  I don't have any problem with that,

4  but there's still the question of causation.  It's not just

5  damages.

6      **MS. HEPBURN:**  Is this something that we can present on

7  a motion, Your Honor, as opposed to on the fly?

8      **THE COURT:**  I don't, frankly, need a motion if this is

9  all the argument there is.  You're the Plaintiffs.  You have to

10  prove the case.  The Defendant is entitled to defend him or

11  herself.

12      It's unheard of that civil litigation would proceed

13  without allowing the Defense to take the depositions of the

14  Plaintiffs, the guardians for the minors.  They can certainly

15  proceed pseudonymously -- however you pronounce that word --

16  using the pseudonyms that they've adopted for purposes of the

17  Complaint and procedures thus far.  They don't have to reveal

18  their true identities, assuming that these aren't legitimately

19  their first names.  I don't really know because I know

20  Magistrate Judge Kim ruled on those matters.

21      They can maintain their anonymity, but that doesn't mean

22  that the attorney representing the Defendant can't take their

23  depositions.

24      **MS. HEPBURN:**  We have forensic psychological reports

25  and psychologists who can certainly be presented and be deposed

1   ad nauseam on the damages that all of these Plaintiffs have

2   suffered, and those have been sufficient for purposes of

3   restitution in each and every case.

4          **THE COURT:**  Restitution when ordered in a context of a

5   civil case?  A criminal case?

6          **MS. HEPBURN:**  No.  In a criminal case, Your Honor.

7          **THE COURT:**  Okay.  But this is a civil -- this is a

8   civil case whereby you are attempting to secure on behalf of

9   the Plaintiffs damages in excess of what's permitted by the

10  restitution statute or by the stipulation for restitution that

11  was entered in this particular case.

12         **MS. HEPBURN:**  Correct.

13         **THE COURT:**  This is a civil case, and unless you

14  present a Ninth Circuit case that says victims of this

15  particular kind of crime cannot be deposed, I would permit the

16  Defense to depose them, them or their guardians, if they are

17  minors.  Period.  I don't need any motions about that, unless

18  there is a case exactly on point.  If there is, send it to me.

19         **MS. HEPBURN:**  Okay.  Thank you, Your Honor.

20         **MR. BALOGH:**  The one thing I would like to address

21  briefly -- thank you, Your Honor -- is I agree that they should

22  be allowed to preside under pseudonyms publicly, but I disagree

23  that I don't get that information.  And in this case,

24  Judge Illston ordered those names disclosed to me even for

25  restitution, but rather than proceed that way, we had a

1   negotiation with the Government before they released the names.

2   And Judge Kim issued her order because it was unopposed, even

3   though they didn't serve Mr. Curtis until after they got the

4   order.  So it's not been litigated.  Judge Kim issued an order

5   as unopposed because the Defendant had not been served.  So

6   it's kind of an unfair order.

7        But the substance of the order I agree with.  I have no

8   desire and I don't believe they should publicly identify any

9   plaintiff in this case.  Full stop.  There's appropriate

10  grounds for that.  I have litigated enough of these types of

11  matters to be very comfortable with the protection of their

12  identities.

13       It's a totally different matter to hide them from the

14  Defense.  And what the case law -- even the lead case they

15  cited was -- the Ninth Circuit case was until class

16  certification issued, we don't have to know the named

17  plaintiffs.  But the standard is ultimately I get the -- I get

18  the names, and if you want to exclude them from my client, AEO,

19  that's fine, too.  He is doing 10 years and is a guest of the

20  United States.  He doesn't need the names.

21       But I'm entitled to investigate each and every Plaintiff

22  to understand the bona fides of their claims, and obviously I'm

23  going to be respectful of each of these individuals and be

24  sensitive to the matter at hand, but I would -- if the Court

25  is --

1    **THE COURT:**  Have you all met and conferred about a

2    protective order in this case?

3    **MR. BALOGH:**  We have, but the position on pseudonyms

4    and the depositions they were firm on.  And so we have

5    discussed --

6    **THE COURT:**  Well, you need to go back.  I've stated

7    what my position is on the use of pseudonyms and the

8    depositions.  You need to go back and meet and confer on the

9    question of whether or not the actual identities -- first I've

10   thought about it.  I would entertain briefing on that if

11   there's some cases on point that you all can provide, but you

12   need to meet and confer on it first.

13   **MR. BALOGH:**  Yes, Your Honor.

14   **MS. HEPBURN:**  May I respond to what I believe is a

15   misrepresentation that counsel has made because I've been in

16   extensive communications with Julie Garcia, the AUSA on this

17   matter, and reviewed the stipulation and order, protective

18   order in the criminal matter, and it doesn't say that in

19   fact -- and Ms. Garcia pointed this out to me ad nauseam

20   because we were quite concerned about this; that, in fact, the

21   identifying information was provided to Mr. Balogh.  And when I

22   have pointedly asked Mr. Balogh about whether he received

23   identifying information, he refused to tell me and told me I

24   needed to exercise my tools of discovery.  But if you read the

25   order, it says that if the --

1    **THE COURT:**  Which order?

2    **MS. HEPBURN:**  I'm sorry.  The order in the criminal

3   matter concerning highly confidential discovery material.

4    It says if the Government discloses that information, then

5   X, Y, Z protections will be in place.

6    Now, I didn't come prepared to argue that today, but I can

7   tell you I have had at least five conversations, extensive

8   emails, with Ms. Garcia about this.

9    **THE COURT:**  Okay.  All right.  I don't know --

10    **MR. BALOGH:**  We'll meet and confer.

11    **THE COURT:**  -- the parameters of this argument.  You

12   need to meet and confer.

13    **MS. HEPBURN:**  Yes.

14    **THE COURT:**  I have indicated to you that I will permit

15   depositions.  They may proceed using their pseudonyms

16   throughout the course of the depositions and all the rest of

17   the litigation unless you show me a Ninth Circuit case that

18   says that they are -- the Defense is not entitled to be able to

19   take depositions.

20    **MS. HEPBURN:**  I understand --

21    **THE COURT:**  On the question of whether or not you get

22   the identity -- the real identity, I have no idea what has

23   transpired in the criminal case, whether or not that

24   information has been provided or not.  I don't have a position

25   on it.

1        I expect you all to meet and confer.  This is a civil

2    case.  I expect you to be able to resolve it.  If you're unable

3    to do so, whichever party -- either side can file a five-page

4    letter brief to me setting forth the nature of the dispute and

5    the nature of the -- where you all disagree, and I'll resolve

6    it.

7        Actually, it's a joint letter brief, is what we require

8    for discovery disputes.  It's a five-page joint letter brief

9    setting forth the dispute over the identities, and I'll make a

10   decision on it.

11              **MS. HEPBURN:**  Thank you.

12              **MR. BALOGH:**  Thank you, Your Honor.

13              **THE COURT:**  Is there anything else?

14              **MR. BALOGH:**  No, Your Honor.  Thanks for your patience

15   today.

16              **THE COURT:**  All right.  We're adjourned.

17                   (Proceedings adjourned at 9:53 a.m.)

18

19

20

21

22

23

24

25

1

2

3                     CERTIFICATE OF REPORTER

4          I certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled matter.

6

7     DATE:    Friday, August 30, 2019

8

9     *Pamela Batalo Hebel*

10    _____
      Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
      U.S. Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25