UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| AMY et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>RANDALL STEVEN CURTIS,<br><br>    Defendant. | Case No. 19-cv-02184-PJH   (RMI)<br><br>**ORDER**<br>Re: Dkt. No. 94 |

Now pending before the court is the parties' jointly-filed letter brief (dkt. 94) in which three discovery disputes are presented. The parties dispute whether Defendant is entitled to obtain discovery on the issue of damages; whether Defendant is entitled to obtain discovery regarding monies Plaintiffs have sought and received with respect to similar or substantially similar claims; and, whether Defendant is entitled to depose Plaintiffs, and where appropriate, their guardians in lieu of Plaintiffs. *See* Ltr. Br. (dkt. 94) at 2. For the reasons stated below, Defendant's requests are denied.

**BACKGROUND**

Proceeding under pseudonyms, Plaintiffs are a number of children and adults who, at various times in their childhoods, were victims of sexual assault that was either photographed or videotaped and which images were then disseminated on the internet. Defendant is an individual who was indicted in December of 2016 for having knowingly possessed and transported images of this sort; that is, depicting child pornography. *See United States v. Curtis*, Case No. 3:16-cr-00510-SI (dkt. 1). In July of 2017, Defendant entered guilty pleas pursuant to a written plea agreement through which he admitted to having knowingly possessed and transported visual

depictions of minors engaged in sexually explicit conduct; more specifically, "over 600 images depicting child pornography, including images of bondage, penetration, and/or toddlers or infants engaged in sexually explicit conduct." *See id*., Plea Agreement (dkt. 34) at 3. Defendant also admitted to having personally taken such photographs involving a person (who may or may not have been a minor at the time) in a hotel room in Phnom Penh, Cambodia while visiting that country in August and September of 2016. *Id*.[1] In advance of sentencing, the government informed the court that, according to the investigating agents, Defendant had possessed approximately 9,588 images and 33 videos, but that a large portion of these images were duplicates and had been deleted. *See id*., PSR (dkt. 37) at 6. In September of 2018, the court entered its amended judgment in the criminal case wherein Defendant was sentenced to serve a 10-year term of imprisonment, and required to make payment in the amount of $5,000 under the Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22, and restitution to fifteen individually named victims (enumerated under pseudonyms) in amounts ranging from $250 to $3,000 (amounting to a total restitution amount of $20,250). *United States v. Curtis*, Case No. 3:16-cr-00510-SI, Amended Judgment (dkt. 114) at 2, 7. In the end, the final judgment that was entered in Defendant's criminal case reflected that he was convicted for possession of child pornography (in violation of 18 U.S.C. § 2252(a)(4)(B)) and for its transportation (in violation of § 2252(a)(1)). *See id.* Amended Judgment (dkt. 114) at 1.

Thereafter, in April of 2019, a number of the individuals claiming to have been depicted in the images or videos found in Defendant's possession filed a civil action in this court seeking statutory damages in the amount of $150,000, as provided for in 18 U.S.C. § 2255(a), as well as punitive damages. *See* Compl. (dkt. 1) at 15. Subsequently, in March of 2020, Plaintiffs filed a First Amended Complaint, through which they elected to seek only statutory damages, attorney's fees, and pre-judgment and post-judgment interest, while withdrawing their request for punitive

---

[1] At Defendant's sentencing hearing, the court noted that it would abstain from making any findings regarding this person's age at the time due to certain conflicting and ambiguous information in the record. *See id*., Partial Sentencing Transcript. (dkt. 82) at 3; *see id*. (dkt.123) at 42, 45 (The Court: "I make no finding as to her age . . . [a]t this time the Court concludes that there is not sufficient evidence to make a finding that Mr. Curtis' conduct involved the sexual abuse of a minor.").

damages. *See* Amd. Compl. (dkt. 81) at 7-8 ("The Plaintiffs each elect liquidated damages in the amount of $150,000 and the cost of the action . . ."). The instant discovery dispute followed.

## DISCUSSION

As mentioned, Defendant submits that he is entitled to obtain discovery on Plaintiffs' damages in general, as well as discovery pertaining to any sums Plaintiffs may have received from other persons who possessed or transported images similar to those that were found in Defendant's possession; and, to that end, Defendant submits he is entitled to depose Plaintiffs, and where appropriate, their guardians, to inquire about these two topics. *See* Ltr. Br. (dkt. 94) at 2. Because Plaintiffs have elected to seek only the liquidated damages amount set forth in the statute, rather than pursuing actual or punitive damages, they submit that discovery into their actual damages or their restitution requests and damages amounts in other cases against other violators should be foreclosed as irrelevant and burdensome. *Id*. at 3-5. Furthermore, contending that the statutory damages scheme leaves identity as the only issue subject to discovery (i.e., whether Plaintiffs are in fact the persons depicted in the prohibited visual depictions found in Defendant's possession), Plaintiffs seek a protective order to prevent their depositions because the harm that would be caused by such depositions would be wildly disproportional to the needs of the case. *Id*. at 6-7.

In 2007, by passing the Adam Walsh Child Protection and Safety Act of 2006, 109 P.L. 248, 120 Stat. 587, Congress implemented a comprehensive series of statutory updates and revisions intended to address the increasing tide of child pornography as well as other manifestations of child exploitation; and, for present purposes, Section 707 of that enactment, known as Masha's Law, increased the civil statutory damages recoverable for victims of child sexual exploitation from $50,000 to $150,000. In drafting the predecessor statute, the Child Abuse Victims' Rights Act of 1986, the Attorney General's Commission on Pornography held hearings and noted the "inseparable relationship between child pornography and child abuse," concluding that "child pornography is extraordinarily harmful both to the children involved and to society." *N.S. v. Rockett*, 2018 U.S. Dist. LEXIS 223678 at \*9 (D. Or. Oct. 19, 2018) (citing Dep't of Justice, 1 Attorney General's Comm'n on Pornography: Final Report 417 (1986)). Among the various 2006 revisions and changes to the 1986 Child Abuse Victims' Rights Act were the

provisions of Masha's law that permitted adults who were victims of sexual exploitation as children to sue both those who initially committed the exploitation and those who later perpetuated that exploitation by distributing and possessing images of their childhood sexual abuse. *Rockett*, 2018 U.S. Dist. LEXIS 223678 at *10 (citing James R. Marsh, Masha's Law: A Federal Civil Remedy for Child Pornography Victims, 61 Syracuse L. Rev. 459, 460, 472 (2011)). By its plain terms, in order to establish liability under Masha's law, a plaintiff must prove he or she was a victim of one of the enumerated and specified federal criminal child pornography or child exploitation statutes, and also that he or she later suffered personal injury as a result of the civil defendant's violation of one or another of the specified criminal statutes. *See* § 2255(a).

Put another way, Section 2255 of Title 18 now provides a civil remedy for subsequent personal injury suffered as a result of a violation of a number of predicate criminal statutes under which a plaintiff was previously victimized while still a minor. In pertinent part, those predicates include 18 U.S.C. § 2251 (sexual exploitation of minors by, *inter alia*, producing a visual depiction of said minor engaged in sexual activity), and § 2252 (prohibiting certain activities involving the sexual exploitation of minors such as, *inter alia*, possessing such depictions that had moved in, or affected, interstate commerce, or transporting such depictions by any means or facility of interstate commerce). Accordingly, Congress created a civil remedy under § 2255 for persons who were victimized during their childhood years as described, *inter alia*, in § 2251 (i.e., subjected to sexual abuse where a visual depiction of that abuse was created and disseminated), "and who [later] suffer[] a personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor . . ." § 2255(a). Such persons "may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred." *Id*. The provision then goes on to add that, "[t]he court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate." *Id*. Lastly, the statute provides that such an action must be commenced, if at all, no later than 10 years after the date that plaintiff reasonably discovers the later of: (1) the violation that forms the basis of the claim; or (2) the injury that

4

1    forms the basis of the claim; or, (3) not later than 10 years after reaching the age of 18. *Id*. at §
2    2255(b).
3         In short, Defendant's arguments for discovery, and his desire to depose these Plaintiffs, are
4    based on a flawed reading of § 2255 that obfuscates the use of the terms of "victim," "violation,"
5    and "personal injury," while turning a blind eye to the fact that Plaintiffs' First Amended
6    Complaint has unambiguously elected to seek only the liquidated damages amount provided in the
7    statute while disavowing any claim to actual or punitive damages. Initially, Defendant suggests
8    that his "criminal case did not resolve whether any Plaintiff was, in fact, a victim of his criminal
9    convictions because the parties there expressly declined to resolve that fact question, and Judge
10   Illston approved that approach." *See* Ltr. Br. (dkt. 94) at 8 (citing *United States v. Curtis*, 16-cr-
11   510-SI (dkts. 90, 114). In support of this proposition, Defendant cites to a stipulation in his
12   criminal case, wherein the government confirmed that each restitution claimant "is indeed an
13   individual pictured in those series," and even though Defendant refused to concede that the
14   claimants were "statutory victims" of his offenses, he nevertheless stipulated to the above-
15   described restitution amounts for the claimants, each of whom has proceeded under the following
16   pseudonyms: Violet, Savannah, Sally, Skylar, Sierra, Pink Heart Sisters, Jenny, Jessica, Sarah,
17   Amy, Pia, Mya, Maureen, Tara, and Vicky. *See id*. Stipulation Re. Restitution (dkt. 90) at 2-3.
18   Defendant also cited to the amended judgment in his criminal case, however, a review of that
19   document (*see id*. (dkt. 114) at 1-9) does not lend any support to Defendant's suggestions that the
20   restitution claimants were not victims of his offense and that Judge Illston approved that approach.
21   Instead, the amended judgment in Defendant's criminal case expressly denominates the restitution
22   claimants as "nonfederal *victims* [that] must be paid before the United States is paid." *See id*.
23   Amended Judgment (dkt. 114) at 7 (emphasis added). However, even if Defendant's amended
24   judgment had denominated the restitution claimants by means of some other descriptive term,
25   such as interested party, Defendant still overlooks the difference in the way that § 2255(a) uses the
26   terms "victim" and "personal injury." In overlooking this difference, while also overlooking
27   Plaintiffs' election to seek the liquidated damages amount, Defendant incorrectly suggests that
28   both of § 2255's two elements, victimization under a predicate statute, and personal injury caused

5

by the civil Defendant's violation, "require proof, and thus each is subject to discovery." *See* Ltr. Br. (dkt. 94) at 8. Defendant adds that "no controlling case holds that any Plaintiff is, in fact, a victim of the [Defendant's] underlying criminal conviction, and that such victim necessarily suffered personal injury . . . [instead] that's a fact question with a unique answer for each Plaintiff." *Id*. More specifically, Defendant contends that none of the psychological reports tendered by Plaintiffs in this case have "identified any alleged injury arising from *his* actual conduct . . . [and] that the question of whether *his* conduct, *in fact*, caused any Plaintiff injury is real, and will be disputed in this case." *Id*. (emphases in original). Defendant then adds that "the harms Plaintiffs allege they are experiencing are separate from Defendant's alleged conduct, and thus they suffered no injury by him." *Id*.

Defendant's arguments are unpersuasive for a number of reasons. While Defendant is correct to suggest that there is no binding precedent in this Circuit that holds that these Plaintiffs "necessarily suffered personal injury" simply by virtue of Defendant possessing and transporting visual depictions of their sexual exploitation, the court will adopt such a standard now while noting that the decision of the Court of Appeals for the Sixth Circuit in *Doe v. Boland*, 698 F.3d 877 (6th Cir. 2012), is both informative and persuasive in this regard. In that case, an attorney and technology expert named Dean Boland downloaded innocent images of two real children from a stock photography website and digitally imposed their faces onto the bodies of adults performing sex acts. *Boland*, 698 F.3d at 879. His stated objective was to demonstrate, as an expert witness in three criminal child pornography cases, that the defendants in those cases may not have known they were viewing genuine child pornography by showing the jury before and after pictures of the images he had morphed. *Id*. at 879-80. When his testimony in those cases came to the attention of the FBI's Cleveland office, agents searched his home and seized several files from his computer, which eventually caused him to enter into a pre-trial diversion agreement with federal prosecutors, in the course of which he admitted to violating 18 U.S.C. § 2252A(a)(5)(B) by knowingly possessing a visual depiction that was created, adapted, or modified to appear that an identifiable minor was engaged in sexually explicit conduct; he also published an apology of sorts in the Cleveland Bar Journal to the effect that he continued to not "recognize that such images violate

6

federal law." *Boland*, 698 F.3d at 880. When the parents of the children whose images he had so misappropriated found out about Boland's morphing and dissemination of their children's images, they sued him under the civil-remedy provisions of two federal child-pornography statutes, including § 2255, and ultimately, the district court granted summary judgment to the parents and awarded them $300,000 under § 2255's liquidated damages provision. *Boland*, 698 F.3d at 879. In appealing the district court's award of § 2255's statutory damages amount, Boland raised arguments that were substantially similar to what Defendant argues here.

In rejecting Boland's argument that the children whose images he had morphed into pornography had not suffered any resulting "personal injury," as required by the statute, the *Boland* court explained that not unlike a defamatory statement, pornography injures a child's reputation and emotional well-being, as well as violating the interest in avoiding the disclosure of personal matters. *Boland*, 698 F.3d at 880 (citing *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 249 (2002), and *New York v. Ferber*, 458 U.S. 747, 759 n.10 (1982)). Accordingly, the *Boland* court explained that, despite the fact that a child's victimization by sexual abuse may have occurred long ago, the subsequent possession, dissemination, or transportation of visual depictions of this sort of abuse will necessarily cause personal injury to the depicted person's reputational and privacy interests, as well as their emotional well-being. *Boland*, 698 F.3d at 881 (citing *United States v. Burke*, 504 U.S. 229, 235-36 (1992), and explaining that, as used in the tax code, "personal injuries" include dignitary torts such as defamation). Thus, as argued by Defendant in the instant case, Boland argued on appeal that § 2255 plaintiffs must show that they are "victims" and that they suffered a "personal injury," in essence suggesting that a plaintiff's "personal injury" requires proof of causation in the civil case. *Boland*, 698 F.3d at 881. In response, the court noted that Boland was incorrectly focused on "victim" and "personal injury" at the expense of other illuminating words in the statute's first sentence. *Id*. While noting that the plaintiffs became victims of Boland's conduct at the same time that they suffered injuries, namely when Boland appropriated their likenesses to create the morphed images, the court explained that the statute makes it clear that the victimization and the personal injury need not occur simultaneously. *Id*. Indeed, § 2255's terms clearly provide that a child who was abused and made the subject of a

7

1  pornographic image or video might have one § 2255 claim against the depiction's creator as soon
2  as it is produced, and another against a person who possesses or disseminates a copy years later.
3  *Id*. The *Boland* court explained that the statute's separate references to "victim" and "personal
4  injury" show only that minor victims may sue for injuries they incur later in life, and that the
5  statute does not create one category of victims and another category of people who suffer personal
6  injuries. *Id*.²

Of course, the principal reason that *Boland* is particularly informative in this case is because of the substantial similarity between the arguments raised by Boland on appeal, and those presented here by Defendant. Initially, it should be noted that, the § 2255 Plaintiffs in this case are real people with well-established legally protected interests in the dignity and integrity of their reputations, their emotional well-being, and their privacy. *See Ashcroft*, 535 U.S. at 249. Assuming that Defendant possessed and transported such visual depictions of them, it is beyond dispute that Defendant invaded those interests, and while the ambit of § 2255 was meant to provide relief for this sort of invasion of these interests – that is, $150,000 in presumed damages – as the *Boland* court noted, the Adam Walsh Act and Masha's law did not create the rights that Defendant's offense conduct violated. *See Boland*, 698 F.3d at 882.

---

² Defendant's argument to the effect that no controlling case holds that Plaintiffs are in fact victims of his underlying child pornography convictions, such that they necessarily suffered personal injuries, is substantially the same argument as was presented by Boland on appeal – attempting to drive a wedge between two statutory terms that are nothing more that meaning-reinforcing redundancies. The court in *Boland* responded to this by noting that the U.S. Code is brimming with this sort of redundancies such as stating that an invalid contract is "null and void," or that an agency action must not be "arbitrary and capricious," or that a "cease and desist" letter may be sent, or that a bankruptcy trustee can sell a debtor's property "free and clear" of other interests; and so on and so forth. *Id*. 881-82 (citing 16 U.S.C. § 2613; 7 U.S.C. § 13b; 11 U.S.C. § 363(f)). The court then went on to explain that a victim by definition is someone who suffers an injury, and a defendant convicted of a child-pornography offense must pay restitution to a "victim," which is statutorily defined as "the individual harmed as a result of a commission of a [child-pornography] crime." *Boland*, 698 F.3d at 882 (quoting 18 U.S.C. § 2259(c)). The court added further that this definition also tracks the common understanding of what it means to be a "victim." *Boland*, 698 F.3d at 882 (citing Webster's Second Int'l Dictionary 2841 (1953), "A person or living creature injured . . . at the hands of another person"; Black's Law Dictionary (9th ed. 2009), "A person harmed by a crime, tort, or other wrong"; and, Oxford English Dictionary Online (3d ed. 2012), "One who suffers some injury, hardship, or loss."). In light of this, the court explained that the § 2255 plaintiffs in that case "undoubtedly were victims of Boland's conduct. So too they undoubtedly suffered personal injuries by any conventional reading of that phrase." *Boland*, 698 F.3d at 882. Likewise, in the instant case, the court finds (as stated in Defendant's amended judgment) that the persons depicted in the child pornography depictions he possessed and transported were indeed his victims, and that likewise, they undoubtedly suffered personal injuries as a result of his offenses by any conceivable understanding of the terms.

8

1   Exactly as was the case in *Boland*, Defendant in the instant case ignores the liquidated
2   damages clause and submits that § 2255 plaintiffs must prove actual damages caused by
3   Defendant's conduct in possessing and transporting images depicting the victimizations they
4   endured as children. In this regard, the *Boland* court explained that while it is true that most
5   plaintiffs seeking to recover damages for torts must show the amount of their damages, § 2255 is
6   no ordinary tort statute in that it clearly declares that a person who suffers personal injury as a
7   result of such violation "shall recover the actual damages such person sustains or liquidated
8   damages in the amount of $150,000 . . ." *See* § 2255(a); *see also Boland*, 698 F.3d at 882. The
9   court rejected the argument that victims would have to prove some measure of damages first, and
10  if that amount would be less than $150,000, then the court would have to increase the damages
11  award to the statutory minimum because that interpretation of the statute would confound the
12  purpose of its liquidated damages clause given that "[t]he point of a minimum-damages
13  requirement is to allow victims of child pornography to recover without having to endure
14  potentially damaging damages hearings. Were it otherwise, a fresh damages hearing might inflict
15  fresh wounds, increasing the child's suffering and increasing the compensatory damages to which
16  she is entitled." *Id*. At its essence, *Boland* turned on the holding that Congress concluded that all
17  children depicted in pornography are seriously injured and deserve a high threshold amount of
18  liquidated damages without having to endure potentially damaging inquiries into the nature and
19  extent of their damages. *Id*. Thus, "[o]nce a child has shown she was the victim of a sex crime,
20  there is little point in forcing her to prove an amount of damages, only to have the court disregard
21  that figure and award the statutory minimum." *Id*. at 882-83.

22  The undersigned finds this reasoning to be persuasive. Since Plaintiffs in this case have
23  disavowed the recovery of actual damages, opting instead to seek only the $150,000 sum of
24  presumed damages (plus costs and attorneys' fees) provided for in the statute, their actual damages
25  are no longer at issue; and, since their actual damages are not at issue, Defendant has no basis to
26  seek discovery or depositions intended to calculate or quantify the actual damages these Plaintiffs
27  have suffered as a result of Defendant's violations of the child exploitation statutes. Further, to the
28  extent Defendant seeks to conduct discovery as to causation, maintaining that his possession and

9

transportation of child pornography did not technically injure these Plaintiffs – the court disagrees because the dignitary and privacy interests discussed above can be violated without Plaintiffs even having knowledge of Defendant's crimes. While it is unclear precisely what sort of questioning Defendant's counsel has in mind for these Plaintiffs, it appeared from counsel's suggestions during oral argument that his intention was to establish that these Plaintiffs were perhaps unaware of Defendant's possession and transportation offenses. However, for the reasons just discussed, this sort of questioning would be unavailing in a case where Congress has codified a liquidated damages remedy with the express purpose of avoiding the very spectacle that Defendant has in mind – that is, one that would compound and multiply Plaintiffs' damages in an ironic and futile effort to prove that his conduct has not caused the damage in the first place. Put another way, Defendant proposes to prove that some or all of these Plaintiffs are not injured by his crimes because he thinks they may be unaware that he possessed and transported images of their childhood victimizations, so, he proposes to probe their knowledge of his crimes through depositions that are virtually certain to cause further damages to their reputational, emotional, and privacy interests. The court agrees with Plaintiffs that Defendant's request to depose them about their damages as related to his offense conduct should be foreclosed as irrelevant (due to their election of the liquidated damages remedy) and also because, even if relevant, it would be grossly disproportional to the needs of the case. In the end, Defendant's contention that discovery is necessary to establish that his conduct did not cause any injury to these Plaintiffs is meritless.

Defendant also contends that to the extent that § 2255 plaintiffs "often link their claimed injuries to a fear of being recognized by others as a victim of sexual abuse, and to having their illicit images viewed by others . . . there is no evidence – from either Defendant's criminal case or this case – that Defendant *ever* viewed the images found on his electronic media." *See* Ltr. Br. (dkt. 94) at 9 (emphasis in original). This is a remarkable suggestion. Through his signed plea agreement, Defendant admitted that when he was apprehended on his return from Cambodia, he had multiple electronic devices in his possession; that he solely accessed; that he regularly accessed; and, that "contained over 600 images depicting child pornography, including images depicting bondage, penetration, and/or toddlers or infants engaged in sexually explicit activity."

10

*See United States v. Curtis*, Case No. 3:16-cr-00510-SI, Plea Agreement (dkt. 34) at 3. Furthermore, Defendant's written admissions go on to say that at the time of his apprehension, Defendant "knew that these electronic devices contained these images, and that these images depicted minors engaging in sexually explicit conduct." *Id*. Then, in open court at his change of plea hearing, Defendant confirmed that he signed that plea agreement after discussing it with counsel, that he understood everything in the plea agreement, and that he agreed with the representations and admissions contained therein. *See id*., Plea Hearing Tr. (dkt. 60) at 10. Thereafter, government counsel stated the factual basis for the plea by repeating Defendant's written admissions in open court to the effect that at the time of his apprehension Defendant possessed more than 600 images depicting child pornography, and that Defendant *knew* his devices contained images that depicted minors engaging in sexually explicit conduct. *Id*. at 14. When asked by the court whether those factual representations were true, Defendant answered, "[y]es, your Honor." *Id*. at 14-15. Therefore, in light of his detailed admissions about the nature and quantity of these images, the suggestion that there is no evidence that Defendant ever viewed the images that he knew so much about, and that were in his exclusive possession, is absurd.

Defendant also makes much of the contention that one Plaintiff, at some point, had told a psychotherapist that, "I'm not worried about being affected by them [images of her victimization] being out there. It is anonymous." *See* Ltr. Br. (dkt. 94) at 9. It is unclear what Defendant thinks may be accomplished by advancing such a suggestion. Suffice it to say, the court will simply note that, putting aside the concept of emotional well-being, Defendant's arguments overlook the fact that his offense conduct would still have violated Plaintiffs' dignitary, reputational, and privacy interests that are (as discussed above) because of Defendant's possession and transportation of such images.

Defendant next contends that "no Plaintiff has established that Defendant, in fact, possessed any photograph (illicit or otherwise) of her," and that this is a "fact issue that must be resolved at trial." *Id*. In this regard, as noted by Plaintiffs, the issue of the identity of the persons depicted in the hundreds of images found in Defendant's possession remains subject to proof and to the conduct of discovery that would be proportional to the needs of the case. That said, there

11

does, however, appear to be some indication that, at the very least, the persons denominated as Defendant's victims in the restitution portion of the Amended Judgment in his criminal case use the same pseudonyms as the Plaintiffs in this case. *See United States v. Curtis*, Case No. 3:16-cr-00510-SI, Amended Judgment (dkt. 114) at 7 (ordering that restitution is to first be made to all "nonfederal victims," who were denominated by use of the following pseudonyms, Violet, Savannah, Sally, Skylar, Sierra, Pink Heart Sisters, Jenny, Jessica, Sarah, Amy, Pia, Mya, Maureen, Tara, and Vicky). However, this contention is unrelated to any of the three currently pending discovery disputes.

While once again ignoring § 2255's liquidated damages provision, and while attempting in vain to distinguish *Boland* by suggesting that Boland conceded that the children involved in his case were his victims whereas Defendant submits that he has made no such concession, Defendant submits that deposing these Plaintiffs is necessary in order to assess their credibility, to probe whether or not they have lied to their psychotherapists or "skewed, omitted, or misrepresented facts to assist their pursuit of money." *See* Ltr. Br. (dkt. 94) at 10. Once again, if Plaintiffs were seeking to recoup actual damages, perhaps Defendant's arguments might achieve some traction, however, that is not the case. Plaintiffs' damages are presumed by statute, and the only issue is whether or not these Plaintiffs are depicted in the child pornographic images and videos that Defendant admitted to possessing and transporting.

Plaintiffs direct the court's attention to discovery disputes in copyright cases where an election has been made to seek only liquidated damages. *Id*. at 3-7. Without citing to any authority, Defendant insists that, unlike copyright cases, "section 2255 requires plaintiffs to present proof of *some* damage they suffered by Defendant's conduct." *Id*. However, contrary to Defendant's suggestion, the court finds that the mootness and futility of conducting discovery into actual damages once an election is made to pursue statutory damages in copyright infringement cases is informative in the present context. Congress permits recovery of statutory damages instead of actual damages in copyright infringement actions because of the recognition that the financial harm caused by copyright infringement is difficult to prove and difficult to quantify. *Star's Edge, Inc. v. Braun (In re Braun)*, 327 B.R. 447, 450 (Bankr. N.D. Cal. 2005) (citing *Peter Pan Fabrics, Inc. v. Jobela*

*Fabrics, Inc.*, 329 F.2d 194, 195-96 (2d Cir. 1964) (finding that statutory damages allow "the owner of a copyright some recompense for injury done him, in a case where the rules of law render difficult or impossible proof of damages or discovery of profits.").[3] In short, by allowing the recovery of statutory damages, Congress has decided the propriety of awarding damages in the absence of proven injury, which, in the infringement context indicates Congress's finding that an act of copyright infringement causes harm or injury by its very nature. *In re Braun*, 327 B.R. 447, 450 (Bankr. N.D. Cal. 2005). So too, "[a]s illustrated in *Boland*, Masha's Law makes clear that any victim of a predicate violation has, by virtue of that victimhood, suffered personal injury under § 2255." *N.S. v. Rockett*, No. 3:16-CV-2171-AC, 2018 U.S. Dist. LEXIS 223678, at *19 (D. Or. Oct. 19, 2018).

After a thorough search, the court has been unable to find a single case that would either lend any support to Defendant's arguments or cast any doubt on the soundness of the Sixth Circuit's

---

[3] *See also Columbia Pictures Television v. Krypton Broad.*, 259 F.3d 1186, (9th Cir. 2001) ("The Copyright Act provides a plaintiff the option of electing either statutory damages or actual damages. [] By its motion, plaintiff elects statutory damages. A plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits."); *Tableau Software, Inc. v. AnyAspect KFT*, No. C 06-04639-CRB, 2008 U.S. Dist. LEXIS 105420, at *8-9, 13 (N.D. Cal. Aug. 12, 2008) ("Plaintiff also moves to compel responses to its discovery requests and for sanctions. After it filed the motion, however, it filed the motion for damages and permanent injunction. As plaintiff has elected statutory damages and the Court has granted its motion for a judgment, the motion for discovery is moot."); *Oracle Am., Inc. v. Google Inc.*, 131 F. Supp. 3d 946, 955 (N.D. Cal. 2015) (Court held that the statutory language of 17 U.S.C. 504(c), which allows a plaintiff to elect statutory damages in copyright infringement cases, "at any time before final judgment is rendered," prevents the court from compelling Plaintiff to elect its measure of damages early on.); *Jordan v. Time, Inc.*, 111 F.3d 102, 104 (11th Cir. 1997) ("Under 17 U.S.C. § 504(a), a copyright owner may choose between two types of damages: actual damages and profits or statutory damages . . . [and] once a timely election is made to receive statutory damages all questions regarding actual and other damages are rendered moot.") (citing *Twin Peaks Productions v. Publications Intern.*, 996 F.2d 1366, 1380 (2d Cir.1993)); *Cimon v. TNT Logistics N. Am.*, No. 3:04-cv-519-J-25MMH, 2005 U.S. Dist. LEXIS 61483, at *5-6 (M.D. Fla. June 24, 2005) ("Defendant TNT has not moved for summary judgment on the claim in Count IV which alleges a violation of the Family and Medical Leave Act. In that claim, Plaintiff does not seek punitive damages; rather Plaintiff seeks liquidated damages. Accordingly, the Court concludes that the information sought in the Motion to Compel would not be relevant to any claim or defense in connection with Count IV."); *cf. Moser v. Health Ins. Innovations, Inc.*, No. 17cv1127-WQH(KSC), 2018 U.S. Dist. LEXIS 215901, at *60 (S.D. Cal. Dec. 21, 2018) ("As long as the First Amended Complaint even suggests that plaintiff seeks anything other than statutory damages, such as the economic harm referred to in paragraph 102, defendant is entitled to discover the basis for those damages."); *see also Microsoft Corp. v. McGee*, 490 F.Supp.2d 874, 882 (S.D. Ohio 2007) ("[S]tatutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed."); and, *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101-02 (N.D. Cal. 2003) ("[s]tatutory damages [are] particularly appropriate in a [defaulted] case, such as this one, in which defendant has failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiff's actual damages.").

reasoning in *Boland*. Instead, there is an abundance of authority adopting the reasoning expressed in *Boland*. *See e.g.*, *A.B. v. Kowalczyk*, No. 3:19-cv-01521-MO, 2020 U.S. Dist. LEXIS 152145, at *5 (D. Or. Aug. 21, 2020) ("Defendant also cannot dispute that the victims of his crimes suffered personal injury, both as a legal matter and as a matter of pure common sense [because] [o]nce a child has shown she was the victim of a sex crime, there is little point in forcing her to prove an amount of damages, only to have the court disregard that figure and award the statutory minimum.") (quoting *Boland*, 698 F.3d at 882-83 (6th Cir. 2012)); *Doe v. Bruno*, No. 3:17 CV 217 (JAM), 2017 U.S. Dist. LEXIS 60242, at *9 (D. Conn. Apr. 20, 2017) ("Because plaintiffs are not required to show specific injuries, it is the victimhood alone—and not any resulting effects—that forms the basis of a § 2255 action. Thus, a plaintiff need only show that he or she was the victim of a sex crime under the enumerated statutes.") (internal quotation marks omitted); *Doe v. Hesketh*, 828 F.3d 159, 170 n.13 (3d Cir. 2016) ("Congress's recognition that the same may be true in some civil suits is reflected in § 2255's statutory damages provision, which allows victims to obtain $150,000 in compensation without participating in a damages hearing if they so choose."); *Shovah v. Mercure*, 44 F. Supp. 3d 504, 510 (D. Vt. 2014) ("By the express language of § 2255, damages for these victims are presumed to be no less than $150,000 in value. Because there is no need to show specific injuries to calculate damages under the statute, it is the victimhood alone—and not any resulting effects—that forms the basis of a § 2255 action. Thus, a plaintiff need only show that he or she was the victim of a sex crime under the enumerated statutes.") (internal quotation marks and citations omitted); *Amy v. Kennedy*, No. C13-17 RAJ, 2014 U.S. Dist. LEXIS 24779, at *14 (W.D. Wash. Feb. 25, 2014) ("Here, the $150,000 minimum damages are deemed to be the 'actual damages' sustained, not punitive damages. As stated above, the court is persuaded by the reasoning of the Sixth Circuit: The point of a minimum-damages requirement is to allow victims of child pornography to recover without having to endure potentially damaging damages hearings.") (internal citations omitted); *see also*, *Stephens v. Clash*, No. 1:13-CV-712, 2013 U.S. Dist. LEXIS 163861, at *18 (M.D. Pa. 2013) ("A plaintiff suffers injuries for purposes of Section 2255 at the same time he or she becomes a victim of a defendant's criminal conduct. Thus, Stephens became a victim and was injured when Clash violated certain criminal statutes. Stephens' assertion that he did

14

not know about his psychological and emotional injuries and their relation to Clash's conduct until 2011 is irrelevant; the court finds that Stephens was a victim of the injurious conduct, and thus aware of his injuries, when it occurred between 2004 and July 2006."); *see also Rockett*, No. 3:16-CV-2171-AC, 2018 U.S. Dist. LEXIS 223678, at *19.

Further, Defendant submits that he "intends to explore whether the statute, especially under Plaintiffs' interpretation [], provides for an unconstitutional civil fine in violation of the Seventh Amendment and the Due Process Clause." *See* Ltr. Br. (dkt. 94) at 11. Defendant's proposed exploration was not, however, attended with any clear explanation as to how this statute's plain terms violate his constitutional rights. It is unclear from Defendant's portion of the letter brief exactly how he believes his due process rights were violated, or by whom. As to the supposed violation of his right to a jury trial in a liquidated damages case, the Court of Appeals for the Ninth Circuit has held that "there is no right to a jury trial when the judge awards the minimum statutory damages." *GoPets LTD v. Hise*, 657 F.3d 1024, 1034 (9th Cir. 2011). Defendant also requests the court to compel Plaintiffs to tender documentary evidence regarding monies they have sought and received from other violators with respect to their claimed injuries stemming from those persons' violations because "the Defendant is exploring an unjust enrichment defense." *See* Ltr. Br. (dkt. 94) at 11. Defendant's contention in this regard is surprising, as it does not appear that this quasi-contract doctrine would have any application whatsoever in the present context. Under California law, unjust enrichment has been defined as an action in quasi-contract, which does not exist when an enforceable, binding agreement exists between the parties. *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *see also McBride v. Boughton*, 123 Cal. App. 4th 379, 20 Cal. Rptr. 3d 115, 122 (Cal. Ct. App. 2004) ("Unjust enrichment is not a cause of action, however, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution."). It cannot be reasonably contended that the quasi-contract doctrine of unjust enrichment can somehow upend Congress's statutory scheme to recompense child exploitation victims, while shielding them from further damage by making statutory damages available for injuries to the dignity of their reputations, their emotional well-being, and the most profound aspects of their privacy rights. When a person is the victim of the same tort, perpetrated at

different times by different persons, that person is entitled to recovery from each torfeasor for each violation; and the suggestion that any prior receipt of compensation for these Plaintiffs from other violators may constitute unjust enrichment is without merit and warrants no further discussion.

For the reasons stated above, Defendant's motion to compel depositions and discovery as to damages, causation, and moneys sought or received from other violators is **DENIED**. Plaintiffs' motion for a protective order such as to preclude their depositions is **GRANTED**.

**IT IS SO ORDERED.**

Dated: September 8, 2020

ROBERT M. ILLMAN
United States Magistrate Judge