**Pages 1 - 38**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Robert M. Illman, Magistrate Judge

```
AMY, et al.,                      )
                                  )
            Plaintiffs,           )
                                  )
  VS.                             )      NO. C 19-O2184 PJH/RMI
                                  )
RANDALL STEVEN CURTIS,            )
                                  )
            Defendant.            )
_____   )
```

San Francisco, California
Thursday, September 3, 2020

**TRANSCRIPT OF TELEPHONIC PROCEEDINGS OF THE
OFFICIAL ELECTRONIC SOUND RECORDING**

**APPEARANCES**: (via telephone)

For Plaintiffs:

        CARPENTER, ZUCKERMAN & ROWLEY
        407 Bryant Circle - Suite F
        Ojai, California  93023
        **BY:   JOHN A. KAWAI, ATTORNEY AT LAW**

        CAROL L. HEPBURN, P.S.
        200 First Avenue West - Suite 550
        Seattle, Washington  98127
        **BY:   CAROL L. HEPBURN, ATTORNEY AT LAW**

For Defendant:

        COLEMAN & BALOGH LLP
        235 Montgomery Street - Suite 1070
        San Francisco, California  94104
        **BY:   ETHAN A. BALOGH, ATTORNEY AT LAW**
        **NARAI SUGINO, ATTORNEY AT LAW**

Transcribed By:   Marla F. Knox, RPR, CRR, RMR
        United States Official Court Reporter

1    **Thursday - September 3, 2020**

2                        **P R O C E E D I N G S**

3                              ---oOo---

4         **THE CLERK:**  Court calls civil case number C19-2184

5    PJH/RMI, Amy, et al. versus Curtis.

6       Parties, state your appearances for the record, please.

7         **MR. KAWAI:**  Good morning, John Kawai for Plaintiffs.

8         **MS. HEPBURN:**  Good morning, Carol Hepburn for

9    Plaintiffs.

10        **MR. BALOGH:**  Good morning.  This is Ethan Balogh for

11   Defendant Randall Curtis.

12        **MS. SUGINO:**  Good morning.  This is Narai Sugino for

13   Defendant.

14        **THE COURT:**  All right.  Good morning, everyone.

15      We are here on the parties' joint discovery letter brief.

16   So I guess I would like to hear from Plaintiffs first.

17        **MS. HEPBURN:**  Yes, Your Honor.  This is Carol Hepburn.

18      Discovery has its limits.  And this Court has inherent

19   power to enforce appropriate limits.

20      We cited the *Hickman versus Taylor* case for the language

21   that discovery like all matters of procedure has ultimate and

22   necessary boundaries.  Where there is oppression or where it

23   ventures into the irrelevant or encroaches on recognized

24   domains of privilege, it needs to be limited.  And we believe

25   the discovery requested here crosses the limit.

1    Now, the Court did enter a prior discovery order on

2 November 8th of 2019 in this case, and that prior order allowed

3 absent countervailing circumstances, depositions of adults.

4 There was no request at that time for minors, and the Court did

5 not allow deposition of minors at that time.

6    And that was based upon the issues of identity and that

7 Plaintiffs need to prove that they are the people who are in

8 the images depicted in Defendant's collection and that there

9 were punitive damages in the case at that time.

10    Since that time, Plaintiffs sought permission and were

11 allowed to file their First Amended Complaint which did remove

12 punitive damages from the case.

13    So here, we are left with the element of identity, which

14 is Plaintiffs' position.  And we -- there are three bases upon

15 which it is our assertion that we need not prove an amount of

16 damages.

17    That is the statutory language that provides the option

18 for liquidated damages, which is a truncated process.  It

19 should be.  And there is no quantity of injury that need be

20 proven per the language of the statute.

21    Also, the second basis is case law which gives us guidance

22 and which has been found that victims are harmed by every

23 possessor of their child sex abuse material.

24    And also the third basis is the order of restitution which

25 was entered in the underlying criminal case.

1    So if we start by looking at the statute, we see that it

2  is phrased in the disjunctive in terms of the damages allowed.

3  There are liquidated damages, which Plaintiffs may prove or

4  there are actual damages; one or the other.

5    Plaintiffs have proved here -- excuse me -- Plaintiffs

6  have chosen here to go for liquidated damages.  That is

7  Plaintiffs' choice.  It is not Defendant's choice.

8    And the Defendant's request for discovery here -- and most

9  egregiously their request to depose the minors in these

10 circumstances -- would undo Plaintiffs' choice.  There is a

11 reason that Congress allowed this choice.  And this discovery

12 would undo that option.

13   And it doesn't make sense for Congress to give the victims

14 of child sex abuse a truncated option for damages and then

15 allow the full gamut of discovery, which consumes the parties'

16 time and money, the Court's time and resources at trial and

17 inflicts further damages on these victims.

18   Now, there is one circuit court -- and the only one that

19 we could find -- has said:  No, this doesn't make sense.  There

20 is no point to make the victim prove an amount of damages only

21 to have the Court then award the minimum statutory amount.

22   And that is the case of *Doe versus Boland* down at the

23 Sixth Circuit which we provided in our letter.  We acknowledge

24 that arose under a different procedural posture than we have

25 here.

1        Neither Counsel could find a case under Section 2255 about

2    discovery, but what is pertinent about *Doe versus Boland* is

3    that it does discuss personal injury and the personal injury

4    element, which is he, here -- Defendant bases his claim for

5    this discovery on our need to prove personal injury and,

6    therefore, damages.

7        But the *Boland* discussion of personal injury is pertinent

8    in that there was no discussion in the case about proof in the

9    record.  If the Court will recall, this is a case where an

10   expert witness morphed photos -- stock photos of children onto

11   pornography.

12        **THE COURT:**  Right.

13        **MS. HEPBURN:**  And the Court in *Boland*'s discussion

14   looked at prior case law.  It looked to the case of *New York*

15   *versus Ferber* which discussed the nature of injury to child

16   pornography victims.  It looked to a tax case, *US v. Bert*, you

17   know, what is personal injury under Section 104 of the tax

18   code.

19        And there was no question in the Court's mind in *Boland*

20   that these children, who had been sexually abused and had

21   images created, were harmed by Mr. Boland, who had created

22   these pictures.  And, remember, these kids in *Boland* were never

23   sexually abused like our Plaintiffs here.

24        Now, this was a 2012 decision.  It was before the *Paroline*

25   case in 2014 which rose under Section 2259 of Title 18

1   concerning restitution for child porn victims; but, again,

2   injury and causation were a primary focus of the Supreme Court

3   in *Boland*.

4        And that was a case where Amy, who is also a Plaintiff

5   here, was held by the Court clearly to be injured by someone

6   who was a possessor of two images of her, who did not know her.

7   She didn't know beforehand.

8        And yet the Court said clearly that she was injured and

9   that any possessor of child sex abuse material injures the

10  child who is depicted in that.  The facts are on point with

11  this case.

12       And 2259 and 2255 are two parts of the structure of

13  remedies that Congress has provided for children who are

14  victims of child pornography crime, and it makes clear that

15  discovery on injury here is not a -- an element of this case.

16       And then, after *Paroline*, we have Congress issuing

17  findings in 2018 in the Amy, Vicky and Andy Act finding that

18  every person who possesses child pornography harms the victims.

19       So, therefore, we believe that we do not need to prove an

20  amount of damages in this case.  That as a matter of law, if we

21  prove that these Plaintiffs are the victims who were depicted

22  in Mr. Curtis' collection, then they are harmed as a matter of

23  law.

24       So my third point is the underlying restitution order in

25  the criminal case, and that is because that order necessarily

1   had defined that the victim in the Vicky series, the victim in

2   the Misty series, et cetera, were necessarily harmed, whoever

3   those victims might be.

4        Now, it is our task here to prove who those victims are

5   and that they are our Plaintiffs.  But that was necessarily a

6   finding that those victims were harmed, and we acknowledge that

7   Counsel astutely reserved the identity issue.

8        He didn't reserve any injury issue, and, in fact, don't

9   believe that he could because the Court couldn't enter an order

10  of restitution without it necessarily finding that the victims

11  had losses.

12       So for all of these reasons, we believe that discovery and

13  the issues of damages is not at all appropriate because as

14  *Boland* said once a child has shown she is a victim of a sex

15  crime, there is just little point in having to prove an amount

16  of damages.

17       So the requested discovery goes into the prior restitution

18  request which we submit are over burdensome and of little

19  relevancy here.  Again, our only issue is identity.

20       And the -- the production of these letters would take

21  hundreds of hours of staff and attorney time.  We have already

22  provided Counsel with all of the forensic reports, which we

23  have for all of the victims.  We have been trying to work

24  cooperatively in discovery and have -- Plaintiffs have provided

25  many documents to Defendant.

The letters that Mr. Curtis received in the course of the restitution inquiry in his underlying case are very much the standard letters that are sent out in these matters.  So there is not much variation that is going to be found in all of the letters that are requested for.

And, again, where there is no proof of actual damages required, these are of little or no relevance.

And, Your Honor, our final point is proportionality.  We believe that the depositions and the encouraging into the counseling and school records of these Plaintiffs are disproportional and that injury will surely be inflicted by the depositions.

We have provided the declaration of Dr. Cooper -- Sharon Cooper, who is literally world-renowned.  She has trained law enforcement and therapists and people in the court system all over the world on the effect on victims of child sex abuse material exploitation.  And she has outlined for the Court all of the -- the serous psychological, medical problems that are ongoing conditions.

And I think -- if I can say it -- it is important to remember that these victims are different than other crime victims.  These are victims who suffer ongoing continuing crimes every day and they know that.

They walk down the street, and they don't know who that they pass may be someone who has viewed their sex abuse images.

1    Many of them look like they did in those images, and they are
2    afraid of recognition.

3        Dr. Cooper talks about the problem disassociation as does
4    Lily, one of the Plaintiffs herein.  And these cases are just
5    different because this is a present tense ongoing crime.

6        And so the likelihood of injury in deposition is just that
7    much more salient.  Child pornography creates a many headed
8    Hydra that torments its victims.

9        And I must focus also on the minors.  Court -- excuse
10   me -- Defendant has alleged that supposedly the Court has
11   decided these issues twice before.  That is simply wrong.

12       I have provided the transcript of the first instance where
13   he said that the Court decided.  And Defense Counsel shot from
14   the hip.  And at the end of our 12(b)6 motion, there was no
15   notice.  There was no briefing.  In the comments by the Court
16   indicated that there would be depositions.

17       But then we have the order -- again, which was entered
18   before the First Amended Complaint -- and did not include
19   minors.

20       And here we have minors.  We have a child who is
21   considering gender reassignment and thinks about suicide.  That
22   is Pia.  We have a child who lives in fantasy land.  That is
23   Savannah.  We have one whose parents have shielded her from the
24   knowledge of the image downloading, and that is Violet.

25       And when we see the state that Pia is in, we understand

1  the good reasoning that the parents have done this.  And then

2  we have Sierra who is 19 years old and who has been judged to

3  be an incompetent, and a guardianship has been entered for her

4  because she is unable to understand and take care of her own

5  affairs.

6      So we submit that none of these children should be

7  subjected to deposition in any way.  And because also of this

8  ongoing nature of the crime, Dr. Cooper informs us all that

9  Mr. Balogh will take on the persona of his client in the minds

10  of the Plaintiffs.  And worst yet, probably the persona of the

11  original hands-on abuser.

12      And that's sad to say, but it is the nature of this image.

13  And I'm sure that Mr. Balogh will tell the Court that he will

14  be a nice person and be as gentle as he can and that he has had

15  experience representing child sex abuse victims, but we are

16  still facing this problem.

17      And Mr. Balogh has seen all these images.  Do we tell our

18  clients that Mr. Balogh has seen images of their private parts,

19  their vaginas?  And he talks about Mya being oblivious to all

20  of this because she thinks it is anonymous.  And yet we know

21  that the pictures and Mr. Curtis' collection shows her full

22  face and her vagina as well.  And are we to tell her that he

23  has seen that as well when we prepare her for the deposition?

24      I'm at a loss, Your Honor.  And I -- we ask for a

25  protective order to prevent this from going forward.

1    **THE COURT:**  All right.  And just to be clear, you sort

2    of parsed out the beginning and then sort of at the end talking

3    about the difference between those who are still minors and

4    those who were minors at the time of the crimes.

5        And if your arguments as to a protective order against

6    depositions apply to everyone, your arguments regarding those

7    who are still minors are in -- sort of in addition to your

8    proportionality argument, correct, and for the harm to the --

9    to those minors; correct?

10        **MS. HEPBURN:**  Exactly, Your Honor.

11        **THE COURT:**  Okay.  And then in addition to that,

12   you're -- you are arguing that the issues will be limited

13   essentially to identity only and that, you know, for that, you

14   don't need depositions; but those -- that that can be -- that

15   information can be gotten through other things like request for

16   production or interrogatories and things like that.

17        And you pointed to some of the records from the previous

18   proceedings and criminal proceedings; is that correct?

19        **MS. HEPBURN:**  Yes, Your Honor.

20        And also, I mean, if they want depositions, you can depose

21   people other than the direct victims themselves on the identity

22   issues.  Certainly the parents --

23        **THE COURT:**  Like the parents or guardians.

24        **MS. HEPBURN:**  -- or guardians, yes.

25        **THE COURT:**  Okay.

1          **MS. HEPBURN:**  Or law enforcement, Your Honor.

2      Each of these child porn series have the law enforcement

3  point of contact who are tasked to come into criminal cases and

4  provide identity testimony.

5          **THE COURT:**  Okay.  All right.  All right.  So I will

6  hear from Counsel for Defendant.

7          **MR. BALOGH:**  Thank you, Your Honor.

8      First, I want to start, if I may -- hold on.  Let me put

9  that note in front of me -- by adding a couple of things to the

10  record.

11      And before I get to the specific three issues you were

12  just discussing at the end -- the three issues under

13  consideration today -- I want to stay with the overview of the

14  case and what is important.

15      Because I think one of the key issue that Plaintiffs argue

16  is they don't have to prove that they suffered any damages and

17  that by proving a violation, a conviction, they prove they are

18  necessarily injured.  And no case holds that.

19      What *Ferber* and *Osborn* recognize is that child porn can be

20  outlawed.  There wasn't a First Amendment defense.  There was a

21  narrowing construction that was applied in *Osborn* to make it

22  past constitutional muster.  And there was a recognition that

23  people who are victims of sexual abuse and who have their abuse

24  recorded are victims and do suffer injury.

25      It doesn't mean every person suffers injury from every

distribution.  It doesn't speak to any individual fact

component.  It is talking about the general societal rule to

permit a criminal statute.

     And when we look at what Congress did with 2255, not only

did it define that they have to prove there was a violation of

a predicate and they suffered personal injury as a result, when

Plaintiffs say that Congress meant those to be the same things,

they overlooked 2255(b).

     And 2255(b) is the statute of limitations.  And how it

reads is as follows:  Any action commenced under this section

shall be barred unless the Complaint is filed one, not ten

years after the date on which the Plaintiff reasonably

discovers the later of, capital A, the violation that forms the

basis of the claim or, capital B, the injury that forms the

basis for the claim.

     So Congress again in the statute has declared that

violation of the statute is one element and that has a

triggering provision, and injury arising from the conduct --

that is, the violation -- is a different element.  And there

are different things that have different showings.

     And when we talk about the other Plaintiffs' case, *Doe v.*

*Hedgepeth*, it is a summary judgment case; but it only talks

about civil lawsuits.  The point of *Hedgepeth* is stopping

collateral estoppel and restitution -- that's the ruling --

because the parties are entitled to litigate their case.

1    And, respectfully, while the Plaintiffs say they are fine
2    with giving discovery -- it is about proportionality -- I
3    respectfully disagree that's how they are treating this case.
4    If you look at both the declarations about why they want the
5    protective orders or want the Motions To Compel to be denied,
6    it is about anything in this case hurts them.

7    Lily tells us and Jane Doe tells us by responding to
8    discovery requests, I haven't evoked harm against them.  I am
9    harming them now.  It caused them pain to follow up with civil
10   discovery.

11   But the obvious retort is they chose to bring the case.
12   And when the guardian talks about how she is acting in the
13   child's best interest and she has made the balancing to sue and
14   have her charge suffer through this discovery, that may well be
15   her choice.  But I don't think it is appropriate or fair to
16   place the blame of that on the Defendant who was hailed into
17   court and is simply seeking to invoke his discovery rights to
18   address a valid part of the case.

19   Were any of these Plaintiffs or any particular Plaintiffs
20   injured as a result of my client's conduct?  The statute twice
21   says they have to prove injury.  And I want to explore injury
22   which is fair game.

23   The second thing I want to add to the record is
24   Plaintiff's Counsel James Marsh has provided a declaration, but
25   he is not here on the phone; but he is Plaintiffs' Counsel.

1          He wrote a law review article about 2255.  And here is

2     what Mr. Marsh said in that article -- let me give you -- I

3     will give you the quote first.  And I believe he cited it in

4     his brief -- I think he cited it in his declaration, but I will

5     give you the full cite anyway.

6          The quote is:  The notion that distribution, transport,

7     sale, receipt or possession of child pornography by unknown

8     strangers causes personal injury seems much more difficult to

9     conceptualize and prove.

10          He later says:  Once a Plaintiff has proven personal

11     injury, they are entitled to recover the actual damages they

12     sustained and the cost of the suit including reasonable

13     attorneys' fees.

14          That is an admission by his like that he interprets the

15     statute as I do, which is you have to prove injury, which will

16     be difficult in certain cases like this one.

17          The citation is -- the name of the article that Mr. Marsh

18     published is Marsh's Law:  A Federal Civil Remedy For Child.

19          It may be found at 61 Syracuse Law Review, 459.  And the

20     page numbers I was citing Your Honor to may be found at -- hold

21     on I'm scrolling back down -- may be found at page -- excuse

22     me --

23                         (Pause in proceedings.)

24          **MR. BALOGH:**  -- page 20 and 21 of my citation, the

25     last two pages.

1        The other thing Mr. Marsh says in the final section, which

2   he entitles Roman numeral 8, the Personal Injury Requirement --

3   Mr. Marsh -- again, Plaintiffs' Counsel in this case -- says as

4   follows:  Quote, in order to obtain statutory damages, a

5   Plaintiff must show that she suffered personal injury as a

6   result of Defendant's predicate act.  According to Black Law

7   Dictionary personal injury includes any harm caused to a

8   person, bodily injury, an invasion of a personal right

9   including mental suffering.

10       Again, that is a confession by Plaintiffs' Counsel that I

11  am correct in my interpretation of the statute.

12       So before I move on to the three points, I also want to

13  address the distinctive feature of this case.

14       Mr. -- the Defendant was arrested in San Francisco

15  International Airport with media that was seized from him by

16  the Government.  He was traveling from abroad.  That media was

17  seized upon his entry to the United States.

18       He ultimately pled guilty that some of that media

19  contained child pornography.  They've never identified any

20  claimant in that case as actually being in his possession, and

21  equally important it has never been established the matter of

22  fact that he ever viewed these pictures at any time in any way

23  at all.

24       And that's the important fact because as *Paroline* says --

25  and I would ask -- I would urge the Court to read closely --

1    *Paroline* establishes that that Defendant saw the videos and

2    viewed the videos and it triggered this restitution basis on

3    that criminal penalty on that finding that *Paroline* was guilty

4    of viewing their images.

5        That is not true in this case.  And it is an open question

6    as to whether or not sealed data in a drive that has never been

7    viewed can harm another person in any way, shape or form under

8    any theory of damages much less can harm them before they know

9    about it or if they never know about it.  These are fact

10   questions.

11       And we have submitted a declaration from Hy Malinek that

12   demonstrates, one -- many things that Plaintiffs' Counsel has

13   said -- which is obviously women who have suffered at the

14   hands -- of sexual abuse by usually -- particularly in this

15   case their fathers, some their uncles, for years on end and are

16   forced to do horrible things are traumatized by that and

17   horribly so.  And I don't take any truck with that.

18       What Dr. Malinek also recognizes is that how people are

19   harmed by traumatic events varies by individual, varies in time

20   and is unique to the circumstances presented.

21       And that's why Mya's quote becomes so powerful.  Because

22   when Mya asked at that time whether she was harmed by

23   downstream viewers -- not down-loaders, downstream viewers of

24   it, she said no.  She doesn't have a problem with it.  She

25   rationally understands it is anonymous, and it doesn't harm

1    her.

2         That confession is enough on its face to get to a jury on

3    liability.  Did she suffer personal injury?

4         And for the same reasons we want to explore that same

5    question with all the Plaintiffs to understand if and how they

6    articulate how my client's conduct caused them an injury.

7         On this point, it is also -- we will go back to

8    *Paroline* -- important to note that *Paroline* itself -- you know,

9    the Plaintiffs' lawyers in this case.  Mr. Marsh participated

10   in -- they argued to the Supreme Court that the damages to

11   their clients -- in that case Amy -- could not be divisible.

12   They were indivisible.  Whether it happens before or

13   afterwards, that they -- that all downstream -- down-loaders

14   caused complete harm.

15        And the Supreme Court said clearly that question is

16   debatable.  That there is no firm answer.  And so we are at the

17   stage now -- we are not at summary judgment out of the gate.

18   We are at a place where we are at the discovery stage of a case

19   that Plaintiffs chose to bring where they are seeking $2.25

20   million plus attorneys' fees.  We are entitled to explore the

21   elements of the offense they must prove, and that's what we are

22   seeking to do here.

23        So let me maybe have one moment, Your Honor, before I move

24   on to the three pieces.

25             **THE COURT:**  Sure.

1          (Pause in proceedings.)

2          **MR. BALOGH:**  Thank you, Your Honor.  It is challenging

3    to work at home and not the podium.  I don't know why I'm not

4    as good at it yet.  Probably lots of practice, but it is just

5    taking me one more second.

6          (Pause in proceedings.)

7          **MR. BALOGH:**  So let's talk about the right to

8    individual discovery under three issues.

9          The first is have we established that they have to prove

10   some quantum of damage that they were, in fact, damaged?

11         No case says that in a civil case that is decided for

12   these individuals as a matter of law.

13         Related to that, I think the -- I don't think Ms. Hepburn

14   has been faithful to Judge Illston's ruling and what happened

15   in the criminal case.

16         What happened in the criminal case was we asked -- they --

17   the Claimants made a restitution request.  And we asked the

18   Government for their identities so we may vet them.

19         And the Government agreed that, of course, that is the

20   type of information.  They have to prove they say who they are.

21   Anonymous people showing up with anonymous names saying "give

22   me money," the Defendant -- because it is part of the criminal

23   process -- has some procedural tools including investigating

24   those claims and assessing those claims.

25         Many of the claims that were presented in this case were

1   presented for years with victim impact statements or

2   restitution analyses that predated Mr. Curtis' alleged conduct

3   by years.

4        And despite the -- many of these requests, sort of ended

5   up what had happened to the Claimants -- what the Claimants

6   alleged happen to them; the types of photographs that were

7   taken and the types of abuse.  And the request did not pin down

8   to:  Well, what did he possess and was it viewed?  What was

9   there?  And that was the assessment that *Paroline* directs us to

10  make.

11       And *Paroline* had directed the Court to accept a number of

12  factors, the number of photographs, the nature of the

13  depictions, whether someone can be viewed on anonymity versus

14  the recognition question.  And there is more than that under

15  *Paroline*.  I commended you to the last page of that opinion by

16  Justice Kennedy.

17       And the Government agreed that we could get the

18  identities, and Judge Illston so ordered.

19       Immediately after that, the Government contacted

20  Ms. Hepburn and Mr. Marsh and told them exactly what I just

21  told you.  They are going to turn these over unless they

22  object.  And Plaintiffs objected and said they didn't want to

23  do that.  And they -- they would not agree to it in any way,

24  shape or form; and they demanded the Government proceed without

25  that.

1     And that put the Government in a pickle.  And so the

2  Government came to us, and they told us they were going to --

3  not going to comply with the order.  And if we wanted to

4  enforce compliance, we could try to or we could try to

5  negotiate the case.

6     At this point we had genuine beliefs that several of the

7  Claimants didn't deserve any restitution even if we presumed

8  they are who they are.  That's because there was one picture

9  that didn't identify them or no pictures at all because the

10 Government had given multiple positions regarding certain

11 Plaintiffs whether or not their photographs were viewed.

12    And we agreed to resolve that case only if it did not

13 resolve the question of identity.

14    And the Government agreed.  And the stipulation reads as

15 follows -- that Judge -- that Judge Illston entered reads as

16 follows:  Whereas the Defendant does not concede that any of

17 the Claimants is a statutory victim and nothing in this

18 stipulation shall be construed as any admission by Defendant,

19 in any proceeding, by any party, and this stipulation is

20 presented pursuant to Federal Rule of Evidence 408 and whereas

21 the parties nevertheless agree that to conserve judicial

22 resources, bring about a speedy resolution of this matter and

23 avoid further litigation, the Court upon approval of this

24 stipulation, may without objection from the Defendant enter an

25 order for restitution in the amount set forth below.

1         Thus Ms. Hepburn is fundamentally incorrect when she says

2    the amended judgment that provided restitution establishes in

3    any way, shape or form that any of the Plaintiffs -- even if

4    they are who they say they are -- were, in fact, victims of the

5    predicate offense.

6         There is nothing in that record.  And that is quite

7    different than every other case they have brought under 2255

8    where the Defendant had in the underlying litigation made

9    admissions and otherwise established that the Plaintiffs were

10   victims and harmed by his conduct.

11        That's a huge difference here, and a difference -- and a

12   difference that matters in the litigation because now those are

13   predicates which the Plaintiffs must prove, and that's part of

14   the reason why we are entitled to discovery.

15        I want to be clear about the limits of what we gave up.

16   We had claimed at that point -- and the Government had

17   supported us -- that there were no images of Mya or Savannah.

18   There was only -- only images of either Tori or Erika.  And

19   others had de minimus photos that could not identify anyone

20   including Skylar, Sally, Amy, Jessica, Violet and Maureen.

21        That's nearly half of the Plaintiffs.  That is more than a

22   million dollars in damages on questions that have not been

23   answered or addressed or even discovered.  And we are seeking

24   discovery to that further end.

25        So let's go to the three categories, if we may now,

1    Your Honor.

2        One, the first category is documents that are either

3    school records or investigation records, records that relate to

4    the underlying alleged hands-on abuse -- I was damaged by

5    this -- or records that relate to other damages arising from

6    similar circumstances.

7        And this is those -- goes to the factual question, which

8    is sustained by Malinek, of depending on the nature of the

9    abuse and timing and the Plaintiffs' testimony, whatever

10   damages they may suffer may, in fact, be caused by someone

11   other than Randall Curtis.

12       And if those facts are developed, a jury or fact-finder

13   could determine that the damages they complained of -- either

14   based on the events themselves previously or the timing of

15   it -- for example, the disclosure of the original distribution

16   and not knowing about Defendant's alleged actions ten years

17   later -- might not have moved the needle at all -- that would

18   support a finding of no viability.  And Mr. Curtis is entitled

19   to pursue that kind of -- that kind of -- that kind of

20   discovery -- excuse me -- so he may defend the case on a

21   no-damages theory.

22       What the Government -- what the one piece of that -- so

23   that's one piece of it.  And that relates fundamentally to the

24   damages theory I have been espousing this morning in my

25   briefing.

1    The second issue is do we have the right to obtain

2  discovery regarding money sought and monies obtained by the

3  Plaintiffs?

4    And the confidentiality provision is in the bar.  Everyone

5  knows that court process overcomes a confidentiality provision.

6  Every settlement -- proper settlement says it is held

7  confidential.  And if you get processed, you have to alert the

8  other party or the party that wants to keep it confidential, so

9  they can make application to the Court to keep it confidential

10  because confidentiality is not a recognized basis to avoid

11  otherwise discoverable information.

12    And that is exactly what *Hickman* says.  We -- both parties

13  get the other parties' records.  *Hickman* says that clearly.

14    And so in this case we think that, first and

15  fundamentally, that goes to images -- that goes to motive to

16  lie.  Seeking money and obtaining money for claims is an

17  incentive to lie and exaggerate and is a time-honored

18  recognition that that is the kind of discovery we can find to

19  determine whether the victims are telling the truth when they

20  make any claims about my client if they ever, in fact, make any

21  claims about my client other than you were convicted and we

22  believe you possessed our pictures and nothing else.

23    And as we know from the *Cleland* case I cited to you that

24  other judges -- at least in the restitution context --

25  understand that claims for money need to be scrutinized.

1       And here, I think that dovetails with the credibility

2   issue because from what I have seen in the -- of the

3   restitution requests, they are artfully written and not

4   necessarily accurate when they describe who they are, why they

5   are seeking money, especially when compared to the 2255 cases

6   they have been and continue to bring and the omission of

7   references to them.  And we think we are entitled to explore

8   that.

9       We also think we are entitled to explore that for related

10  examples.  For example, under the Seventh Amendment in the

11  civil case, Mr. Curtis has the right to a jury trial.  But if

12  this statute reads as what the Plaintiffs say it reads -- which

13  is all we do is establish that you are the convict -- then we

14  automatically get $150,000 -- trial by fiat, if you will -- we

15  contend that it is an unconstitutional civil fine.

16      And the Supreme Court in multiple cases had recognized

17  that certain penalties -- even civil penalties -- if they are

18  not in proportion to loss or damage may be unconstitutional and

19  can be stricken down.

20      And the cases I would cite you to are *St. Louis IM and X.*

21  *Railway Co. versus Williams*.  That is 251, United States 63.  I

22  would recommend page 66 discussing that -- those limits.

23      I would also -- that case goes further.  I would recommend

24  pages 67 which discusses the same limitations.

25      I would also -- excuse me -- recommend *Six Mexican Workers*

1   *versus Arizona Citrus Growers*.  That may found at 904 F.2d

2   1301, pages 1309 to 1310, which recognizes the same concept;

3   that certain civil penalties and certain laws can be written in

4   such a way as to qualify unconstitutional civil fines.

5       The equitable defense to the Judge to assess whether an

6   award would be unjust is a time-honored equitable defense, and

7   we should be entitled to gather evidence to make that

8   representation to Judge Hamilton as a matter of law, as a

9   matter of fact.

10      And so for these reasons, their request for money are

11  relevant to this both what they sought and receive.  And I will

12  address their main complaint there is proportionality.

13      And, respectfully, their complaint is even though these

14  are our documents and even though we are these people's lawyers

15  for years and even though we are tasked with maintaining client

16  files, we have chosen to do so in such a way that it is not

17  easy for us to gather the materials that we gather weekly.

18      And I don't understand that response.  Electronic

19  databases are easy to organize.  And if by their own choices

20  have made it difficult for them to comply with documents in

21  their possession that are obviously relevant, that can't be

22  used against us because that was their choice and continues to

23  be their choice.

24      Indeed, this case has been pending for almost -- for well

25  over a year.  And they are telling the Court that in the time

1    of this case they have continued to ignore that responsibility

2    and haven't even maintained those documents in a readable,

3    accessible way by their choice; and that their choice should

4    impinge upon Mr. Curtis' discovery rights.

5         And, respectfully, I think that is backwards.  They are

6    aware of their discovery responsibilities.  They are aware of

7    their preservation and maintenance responsibilities.  And these

8    are their documents.  And it shouldn't be too much to ask for

9    us to see.

10        And if they want to go back and say each letter is a

11   record of -- you know, they get updated over time, if they want

12   to get us a copy of each one template that was used and then

13   just a list of the cases that it was submitted in, that would

14   be a -- a natural breaking point to get us the information to

15   see what are the representations they make in pursuit of money.

16        It is almost a predicate of a fraud case.  When you seek

17   money and use the wires to get money, we get to assess whether

18   you have been truthful as a way of assessing your honesty.  And

19   that is what we are requesting here.

20        If I may move to what I think is the heart of the matter,

21   their largest complaint, is the request for deposition

22   discovery.

23        And, again, I don't think they get the history exactly

24   right.  You are right.  We did bring it up to Judge Hamilton in

25   a hearing without briefing.  And Judge Hamilton's response was

sheer rejection.

Rule 30 says if you choose to sue somebody, you have to sit for deposition.  A plus B.  You can't sue to get money and then say you are immune to the system which you have invoked.

It is like jurisdiction.  If you show up and invoke the jurisdiction, you become subject to the jurisdiction.

Here, you show up and sue.  You are subject to Defendant exploring the bona fidities (sic) of your claims because you have chosen to sue.

And what Lily says and Jane Doe says and Violet's mother say in their declaration is they find that outrageous.  They don't understand how anyone could demand -- and this is a quote I think from Lily -- that they prove what they claim.

And I don't understand what lawyer could have told them they wouldn't have to prove what they claim.  But their disbelief that invoking the civil justice system, which has obligations, that is not a fair understanding.

They brought the case, and now they should be subjected to allowing Mr. Curtis to develop evidence to defend against the case.

And so, Judge, when we made the original motion to approach the issue, Judge Hamilton could not be more clear. She said as follows:  Unless Plaintiffs present a Ninth Circuit case that says victims of this particular kind of crime cannot be deposed, I would permit the Defense to depose them -- them

or their guardians, if they are minors.  I don't need any more motions unless there is a case exactly on point.

So that resolved the matter of whether depositions were available.  But it didn't.  Plaintiffs didn't relent and they saw we filed a motion.

And, again, the Court ruled for Defendant and said that they had to sit for deposition.

Now, true enough, she linked part of her ruling to punitive damages.  And true enough the Defendant -- the Plaintiffs have now withdrawn that claim?  And now there are no punitive damages.

It in no way overcomes the ruling or would be a basis for reconsideration of the ruling which is essentially what they are asking Your Honor to do.

I would agree that they haven't done that with respect to the minors.  No one has moved -- this is the first time they are moving for a protective order of minors.  And that issue remains live.

We have given a citation to a case that is to permit minors.  We have tried to draw a fair line, which 15 years old is the cut-off; but the minors -- the depositions of the adults has been resolved.

And for that live issue, we think, again, if they have chosen to bring this case, calling upon them to answer questions, is not a heavy lift.

1      And we know from their history that in James Marsh --

2   James Marsh's declaration as well, they sit for interviews all

3   the time.  They -- some of the Plaintiffs go to conferences,

4   and they speak at conferences publicly about what happened to

5   them at the hands of their abusers; how they feel about the

6   current state of the world; about their feelings and emotions.

7      And if they are able to do that voluntarily when it suits

8   their purposes, they most certainly need to do that pursuant to

9   deposition rights when they have chosen to bring a case.

10      It cannot be the ruling of the Court that they can only

11   talk about it when they say they feel sufficiently comfortable;

12   but when the Defendant, who they are seeking money from, wants

13   to get information, that would be fundamentally -- that they

14   can no longer stand that.

15      And while I have no -- I disagree with Plaintiffs'

16   characterization of how I would depose them wholeheartedly, I

17   think it is a fine example of Ninth Circuit Rule 3.7, questions

18   aren't evidence.  Only answers to questions are evidence.

19      And so when Plaintiffs' lawyers say to me:  You are going

20   to do X, Y and Z; and you are going to be horrible.  And I say:

21   I'm not going to give you my deposition outline.  I believe I

22   get to depose them on certain issues, that's what that means.

23   That doesn't mean I -- in any way, shape or form -- suggest

24   that I'm going to do what they say.  I decline to answer, and

25   they can't put allegations in my mouth because it suits their

1   end.

2       And I think what is fair game in this case is identifying

3   the length of the abuse, how -- the alleged abuse; how the

4   alleged abuse affected them; whether it occurred temporally;

5   when did they learn about the distribution available on the

6   internet; how did that affect them; if and when they learned

7   about my client's conduct, how did that affect them.  For them

8   to describe any alleged injuries or damages that arise under

9   2255 and any similar or related damages that a fact-finder may

10  consider ultimately came from a different source but not from

11  any conduct that my client did.

12      And so I think that's my ragtag presentation, as best I

13  can, I'm happy to answer questions from you.  Let me just check

14  my notes if I may.

15      Oh, the last thing I just want to say is the two cases

16  they cited summary judgment -- I believe it is called *Rocket*

17  and -- *Coldslap* (phonetic) -- it is a Eastern European name, I

18  believe.  I don't know how to pronounce it.  Those cases are

19  both about summary judgment against the direct abuser of a

20  child, full stop.  That in no way, shape or form relates to the

21  allegations in this case.

22      And I guess the very last thing I will say is:  In their

23  own reports -- and we have cited them.  I think it is paragraph

24  3 of my declaration.  We give the pin cite -- when their own

25  psychologist evaluated them before any Plaintiff was aware of

1   any conduct regarding the distribution of their alleged images,

2   all those psychologists said the same thing.  We have to

3   forecast future damages because they don't know.

4        And that is, by their agent also, a confession of they

5   have not been injured yet.  We believe they will be injured in

6   the future.

7        And that may or may not be true as far as whether they

8   will be injured in the future, but it is absolutely true that

9   they have confessed the notion of injury -- both as a legal

10  basis through Marsh's statement, through a natural reading of

11  the statute -- and as a factual basis tethering it to they have

12  to know about the distribution.

13       These are live issues for Mr. Curtis to explore in

14  discovery and to present at trial.  And to short circuit

15  discovery now such that we don't really get any when we got the

16  Rule 26 notices, Your Honor, the Defendant didn't identify any

17  fact witness, not one other than the participants in the

18  underlying criminal case and an expert -- their expert.  That's

19  it.

20       And they didn't identify any -- any discovery other than

21  matters from the criminal case, notices from the Department of

22  Judicial Notice System and the expert materials regarding their

23  expert.  They didn't offer any materials whatsoever.

24       So for them to suggest -- and I have been fighting now for

25  this discovery for -- I filed my request last September, so for

1    a year -- to get to where I am; to have five amendments that

2    still don't get me much.

3         For them to suggest that it is a factual matter -- they're

4    honoring my discovery rights and believe I have them and just

5    want to circumscribe them in a narrow way -- I don't think that

6    is an accurate assessment of what has gone on here.

7         The essence is they don't believe I'm entitled to

8    discovery for the reasons they cited in their declaration.

9    They believe because that because they claimed they were

10   victims in a criminal case, they win.  And nothing else can

11   happen in this case.  That is just incorrect.

12        And we ask the Court to grant us the documents and the

13   depositions we have requested.  And I will answer any questions

14   Your Honor has.

15           **THE COURT:**  All right.  So, you know, the request for

16   a protective order, the burden is on the requesting party.  So

17   I will give Plaintiffs a brief time for reply.

18           **MS. HEPBURN:**  Thank you, Your Honor.

19        To correct a couple of factual misstatements, first of

20   all, there is only one Plaintiff who doesn't know that her

21   images are distributed, and that's Violet who is still a minor.

22        And to point out for the Court in the transcript of Judge

23   Hamilton's off-the-cuff remarks at the time of the 12(b)6

24   motion, she spoke on page 54 specifically about depositions of

25   Plaintiffs, the guardians for the minors.

1    There was no discussion at that time nor at the time of

2  the prior discovery order of deposing the minors at all.

3    I would submit that all of the Defendant's protestations

4  about credibility of the Plaintiffs and being able to test that

5  go to the issue of damages and the context of proving actual

6  damages.

7    It does not go to identity.  I mean, how can you lie about

8  your identity?  And we can bring in people of -- you know, to

9  talk about that and where can we have an expert who is viewing

10  the images again to determine, you know, that, they are, in

11  fact, of the Plaintiff.  And so --

12    Again, if this is a case where the sole issue is identity,

13  then all of this talk about credibility of the Plaintiffs

14  really falls by the wayside.

15    What is the point of having a liquidated damages provision

16  if we all have to go through all of this and these folks have

17  to be poked and prodded and intruded upon again?  Why did

18  Congress provide that?

19    I point out that the Marsh article that Counsel cited to

20  was published in 2011.  That is before the 2012 *Boland* case,

21  before the 2014 *Paroline* case, before the 2018 Congressional

22  findings in the Amy, Vicky and Andy Act.

23    And, again, I would -- I also point the Court to the

24  *Paroline* case where causation was the primary issue.  The

25  injuries were the primary issue for decision.  And without

1   equivocation the findings were, by the quote, all the plurality

2   opinions that these children, these young adults, are harmed by

3   possession of their images.

4        There is no case that holds that for a criminal conviction

5   that a Defendant must be proven to see and to view and whatever

6   the image is.  And under 2255 says the predicate offense is

7   that the person has committed the crime and committed the

8   violation.  And that is what is proven by the conviction.

9        There is no requirement in 2259 for purposes of

10   restitution that the Government prove that a Defendant has

11   viewed the image of a particular victim.  So Defendant is just

12   off base on that.

13        So, again, I point to the fact that we are going for

14   liquidated damages here.  We acknowledge the need to prove

15   identity; but we feel that as a matter of law, once it is

16   shown, that it is shown that these Plaintiffs were harmed by

17   Mr. Curtis.

18        **THE COURT:**  All right.  Everything has been well

19   presented in the papers; certainly by the parties and then

20   either emphasized or pointed out here on the record.

21        So I believe I have all I need to move forward with the --

22   with an order which I expect to get out in the next couple of

23   days.  All right?

24        **MS. HEPBURN:**  There is one --

25        **MR. BALOGH:**  Judge --

1          **MS. HEPBURN:**  One more thing I just -- I should have

2     pointed out for the Court as well that there is the pending

3     motion by Plaintiffs to strike affirmative defenses.  Just --

4          **THE COURT:**  Right.

5          **MS. HEPBURN:**  -- just to remind the Court.

6          **MR. BALOGH:**  If I can --

7          **THE COURT:**  I did see that.

8          **MR. BALOGH:**  Your Honor, if I can say one more thing,

9     Your Honor.  I will be brief.

10         **THE COURT:**  All right.

11         **MR. BALOGH:**  My response is I think -- I just don't

12    think Ms. Hepburn understands my argument.

13         I absolutely agree that the predicate violation here does

14    not require viewing by the Defendant, and that 2259 doesn't

15    require viewing by the Defendant.  And that, perhaps, explains

16    why there are no such admissions and no record was made.

17         But our position -- and I think Ms. Hepburn gets this.  I

18    think we are just talking past each other a little bit -- is

19    that the elements of proving the prior violation included

20    Plaintiffs -- which I think is what she is saying is the

21    identity issue is one element -- but proving that they suffered

22    personal injury as a result, I think that's a second element.

23    And that element has been listed again in the statute of

24    limitations.  And we want discovery on that element.

25         And there is no such thing as a victim as a matter of law

1    in a civil case.  They may be -- if they proved identity, they

2    might be victims of the crime in a criminal case; but it

3    doesn't prove personal injury.  And no case says that.

4         And as the Supreme Court and the Ninth Circuit repeatedly

5    warned the Courts:  Questions that lurk in the record and

6    haven't been submitted for submission are not precedential.

7         And none of these -- all of the cases they are relying on

8    are the -- the criminal case they are relying on are criminal

9    cases talking about restitution, not about the 2255 showing of

10   proof.

11        And even in the copyright case, you still get discovery on

12   damages because it is related to proportionality.  And we have

13   established how proportionality relates to at least some of our

14   defenses including the constitutional defenses.

15        And since the Court is going to be guided by

16   constitutional avoidance, which means Judge Hamilton is going

17   to need to try to avoid the constitutional questions if she

18   can -- we are entitled to develop the factual base of our case

19   so we can make an actual presentation to her and have her

20   decide the issue.

21        And that's all I wanted to add.  I thank you for your

22   patience.

23           THE COURT:  Well, I appreciate that.  And I understand

24   their response to that regarding the liquidated damages and the

25   purpose of it.

1      So I definitely have everyone's point on that.  So I
2  appreciate that.
3      All right, folks.
4          **MR. BALOGH:**  Thank you.
5          **THE COURT:**  I will get the order out and -- and
6  hopefully get it in a couple days.  That way you guys can have
7  that headed into the arguments in front of Judge Hamilton on
8  the other issue.  So --
9          **MR. BALOGH:**  Thank you, Judge.  We appreciate it.
10          **MS. HEPBURN:**  Thank you, Your Honor.
11          **THE COURT:**  All right, everyone.  Have a great day.
12  Thank you.
13                        (Proceedings adjourned)
14                          ---oOo---
15
16
17
18
19
20
21
22
23
24
25

1

2                       **<u>CERTIFICATE OF REPORTER</u>**

3          I certify that the foregoing is a true and correct

4    transcript, to the best of my ability, of the official

5    electronic sound recording provided to me by the U.S. District

6    Court, Northern District of California, of the proceedings

7    taken on the date and time previously stated in the

8    above-entitled matter.

9          I further certify that I am neither counsel for, related

10   to, nor employed by any of the parties to the action in which

11   this proceeding was taken; and, further, that I am not

12   financially nor otherwise interested in the outcome of the

13   action.

14

15   DATE:   Monday, September 14, 2020

16

17

18

19   _____

20           Marla F. Knox, RPR, CRR, RMR
             United States Court Reporter

21

22

23

24

25