# EXHIBIT 1

COLEMAN & BALOGH LLP
ETHAN A. BALOGH, No. 172224
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Telephone: 415.391.0440
Facsimile: 415.373.3901
eab@colemanbalogh.com

Attorneys for Defendant
RANDALL STEVEN CURTIS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| "AMY," *et al.*,<br><br>     Plaintiffs,<br><br>RANDALL STEVEN CURTIS,<br><br>     Defendant. | **Case No. 19 Cv 2184 PJH**<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>**Date: February 25, 2021**<br>**Time: 1:30 p.m.**<br><br>**Trial: June 21, 2021**<br><br>**Before the Honorable Phyllis J. Hamilton Chief United States District Judge**<br><br>**DOCUMENT LODGED UNDER SEAL** |

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ................................................................1

OVERVIEW ..............................................................................................................2

ARGUMENT .............................................................................................................3

A.     The Court should sustain Defendant's objections to Plaintiffs' evidence and deny
       Plaintiffs' summary judgment based on their deficient showing...........................................3

      1.     The Court should strike and exclude from the evidence to be considered in support
       of Plaintiffs' Motion for Summary Judgment documents identified in Categories II
       through IV pursuant to Fed. R. Civ. P. 37 and Fed. R. Evid. 602 and 801...............4

            a.     The Category III witnesses were not disclosed timely, and the witnesses
              offer expert testimony that was never disclosed; the Court should exclude
              the declarations for both reasons.................................................................5

            b.     The Category IV witnesses were not disclosed timely, and some offer fact
              testimony based on hearsay; the Court should exclude the declarations for
              both reasons. ...............................................................................................6

            c.     The Coffren Affidavit (Exhibit 7 to the Hepburn Declaration (a Category II
              document)) was not disclosed timely; the Court should exclude it pursuant
              to Fed. R. Civ. P. 37(c) and Fed. R. Evid. 801, and should also exclude
              Exs. 4 and 5 to the Hepburn Declaration pursuant to Fed. R. Evid. 801.......7

      2.     The Court should strike and exclude from the evidence to be considered in support
       of Plaintiffs' Motion for Summary Judgment the declaration of Kevin Laws; Mr.
       Laws is not an expert on identification, lacks personal knowledge of the key
       predicate facts, and relies on hearsay and untimely disclosed and undisclosed
       documents to support his "expert" opinion that he located photographs of Plaintiffs
       in electronic media allegedly possessed by Defendants. .........................................8

            a.     Even if the Court considered Mr. Laws's declaration, it is insufficient to
              support summary judgment, and the Court should permit the jury to
              address the factual conflicts he has presented on this case.........................11

            b.     During his review, Mr. Laws was unable to identify contraband for nine
              Plaintiffs, creating a dispute of material fact sufficient to warrant a trial for
              those nine. ..................................................................................................15

            c.     The solitary photographs ascribed to Sally and Violet do not constitute
              child pornography, and the Court cannot resolve this conflict on this
              record. ........................................................................................................15

3.      The Court should reject Hepburn Declaration Exhibit 6 as hearsay statements made in settlement negotiations, and should be excluded pursuant to Fed. R. Evid. 408 & 801. .........................................................................................................19

4.      The Court should exclude the Declarations of ███████████ ("Amy"), ████████ ("Maureen"), ████████████ ("Sarah"), ███████████ ("Lily" aka "Vicky"), and ████████ ("Jenny"). ..................................................19

B.      Plaintiffs' proof is insufficient for additional reasons. .......................................20

CONCLUSION...............................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Ching v. Mayorkas*, 725 F.3d 1149 (9th Cir. 2013) .......................................................20

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ...........................10

*Hoffman v. Constr. Protective Services, Inc.*, 541 F.3d 1175 (9th Cir. 2008) ............4, 5

*Murray v. Southern Route Maritime SA*, 870 F.3d 915 (9th 2017) ..................................9

*United States v. Dost*, 636 F.Supp. 828 (S.D. Cal. 1986) ..............................................16

*United States v. Freeman*, 498 F.3d 893 (9th Cir. 2007) ...............................................10

*United States v. Gadson*, 763 F.3d 189 (9th Cir. 2014) .................................................10

*Yetti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001) ...............4

**Statutes**

18 U.S.C. § 2256 ....................................................................................................15, 16, 19

**Other Authorities**

Schwarzer, *In Defense of Automatic Disclosure in Discovery*, 27 Georgia L. Rev. 655 (1993), .....4

**Rules**

Civ. L. R. 7-3 .....................................................................................................................1

Fed. R. Civ. P. 26 .....................................................................................................2, 3, 4, 5

Fed. R. Civ. P. 30 ..............................................................................................................19

Fed. R. Civ. P. 37 ......................................................................................................4, 5, 6, 7

Fed. R. Evid. 104 ..............................................................................................................10

Fed. R. Evid. 408 ..........................................................................................................1, 19

Fed. R. Evid. 602 ......................................................................................................*passim*

Fed. R. Evid. 702 ................................................................................................................9

Fed. R. Evid. 801 .......................................................................................................1, 7, 8

Fed. R. Evid. 901 ..............................................................................................................10

III

Defendant Randall Curtis, by and through his counsel, hereby opposes Plaintiffs' Motion for Summary Judgment, *see* ECF 140, objects to material portions of Plaintiffs' evidence, and asks the Court to strike and otherwise disregard Plaintiffs' improperly presented evidence.  *See also* Chief Judge Hamilton's Civil Pretrial Instruction A.4. ("**Objections** to evidence may no longer be filed separately but must be contained within the opposition or reply brief or memorandum. Civil L. R. 7-3") (original emphasis).  For the reasons set forth herein, the Court should deny Plaintiffs' motion in full.

## STATEMENT OF ISSUES TO BE DECIDED

1. Should the Court decline to consider the "expert" identification testimony of Kevin Laws because it is not expert testimony, does not pass *Daubert* muster, and relies on hearsay evidence that is forbidden under Ninth Circuit precedent?

2. Should the Court strike and exclude from consideration the declarations from witnesses Plaintiffs failed to disclose timely, and because those witness offer testimony where they lack personal knowledge, as required by Fed. R. Evid. 602, and based on hearsay, in violation of Fed. R. Evid. 801?

3. Should the Court strike and otherwise disregard "expert" opinions offered by law enforcement witnesses where Plaintiffs did not disclose those witnesses as experts?

4. Should the Court otherwise exclude hearsay exhibits presented as attachments to the declaration of Carol Hepburn, and should the Court also exclude consideration of criminal case settlement negotiations pursuant to Fed. R. Evid. 408?

5. Even if considered, does the declaration and testimony of Kevin Laws fail to establish that Defendant, in fact, possessed child pornography depicting Plaintiffs or any subset of them, such that the Court should deny all or part of Plaintiffs' motion for summary judgment?

6. Should the Court exclude the declarations from Plaintiffs Amy, Maureen, Sarah, Lily (aka Vicky), and Jenny based on fundamental fairness arising from Plaintiffs refusal to sit for deposition, and the deprivation of Defendant's right to cross examine them on the substance of the accounts they present?

# OVERVIEW

On August 7, 2019, Plaintiffs provided Defendant their initial disclosures pursuant to Fed. R. Civ. P. 26(a).  Balogh Decl. Ex. B.  Therein, Plaintiffs disclosed as potential witnesses "likely to have discoverable information that Plaintiffs [might] use to support their claims[:]" a prosecutor from the criminal case that preceded this action, defense counsel from that case, the defendant in this case, and a potential expert witness, Kevin Laws.  *Id.* at 3-5.  Plaintiffs did not disclose any other potential witness.  *Id.*  As for "documents, electronically stored information, and tangible things" which Plaintiffs disclosed they might "use[] to support their claims," Plaintiffs disclosed seven documents from the criminal case, "notices from the Department of Justice Victim Notice System," and documents relating to their proffered "expert," Kevin Laws. *Id.* at 5-6 (capitalization altered).  Plaintiffs' plan was so transparent, they announced it directly: Plaintiffs "plan" was to rely on "discovery received by Defendant from the government in his criminal prosecution[,] along with Mr. Laws proffered expert testimony, to prove their case.  *Id.* at 6.  As a result, they disclosed nothing else, making clear as day they would rely on anything else.

But as Defendant would later learn during expert discovery this past week, Plaintiffs' plan backfired.  Plaintiffs had retained Mr. Laws in April 2019, Ex. C at 64:1-17. At the time they disclosed Mr. Laws as their expert, he had not yet reviewed the media in the Government's possession from the criminal case.  Rather, Mr. Laws did not embark on that task until more than one year later, when he traveled to San Francisco in mid-July 2020 to meet with the federal agents involved in Defendant's prosecution.  *See e.g.*, *id.*, at 141:22-142:3.  While Mr. Laws and Plaintiffs delayed that evidence review, Mr. Laws spent parts of June, August, and December 2019, and January 2020, meeting with Plaintiffs so that he could later provide testimony on the question of their identities.[1]

---

[1] It is concerning that Mr. Laws had completed all of his interviews with 14 of the 15 Plaintiffs at the time Plaintiffs were urging the Court to preclude deposition discovery based on Plaintiffs' claimed inabilities to discuss their cases, *see* ECF Nos. 94 & 127, and while shielding this impeaching evidence from Defendant and the Court.

2

When Mr. Laws completed his review of the Government's media, he (1) concluded that seven of Plaintiffs' images purported to be found on media ascribed to Defendant constituted child pornography, (2) contended that those seven individuals were the women he had met during his interviews of Plaintiffs, and (3) informed Plaintiffs' counsel that he could not locate any child pornography images of the other eight plaintiffs in the media produced by the Government's agents. *See id.*, at 148:1-150:12  Most succinctly, Plaintiffs' discovery plan crumbled with respect to eight Plaintiff's claims.  As a result, Plaintiffs scrambled to make a new secret discovery plan, which they revealed on January 19, 2021, when they filed for summary judgment.

Along the way, Plaintiffs disclosed the existence of a revised, secret discovery plan near the close of business on October 28, 2020—*viz.*, the day before fact discovery closed.  At that late date, Plaintiffs provided Defendant an amended disclosure pursuant to Fed. R. Civ. P. 26(a).  *See* Balogh Decl. Ex. E.  Therein, Plaintiffs provided notice of 32 additional witnesses just as the time to conduct discovery expired.  *Id.*  So too, Plaintiffs disclosed additional "documents" they would suddenly rely on, even though the discovery clock expired the very next day.

## ARGUMENT

**A.    The Court should sustain Defendant's objections to Plaintiffs' evidence and deny Plaintiffs' summary judgment based on their deficient showing.**

Defendant objects to consideration of the following evidence, and asks the Court to strike it or otherwise disregard it when considering Plaintiffs' motion for summary judgment:

I.      The declaration of Kevin D. Laws filed in his name at ECF 140;

II.     Exhibits 4, 5, 6 & 7 to the Declaration of Carol Hepburn filed at ECF 140;[2]

III.    The Declarations of S/A Jeffrey Stetler, Thomas Rothrock, Deborah Behymer, Joshua Findley, Roy Shepherd, and Corporal Adelle Brown, also filed at Exhibit 140;

IV.    The Declarations of ▇▇▇▇▇▇ ("'Violet's mom"), ▇▇▇▇▇▇ ("John Doe"), ▇▇▇▇▇ ("Jane Doe"), ▇▇▇▇▇▇ ("'Jessica's mom"), ▇▇▇▇ ("Jane Smith"), and Jane Roe, also filed at Exhibit 140; and

---

[2] Plaintiffs did not label many of the exhibits they presented with their summary judgment filing, and rather than label and file each exhibit separately, Plaintiffs simply appended multiple declarations, some of which followed by multiple unlabeled exhibits, to their motion for summary judgment.

3

V.     The Declarations of ██████████ ("Amy"), ██████████ ("Maureen"), ██████████ ("Sarah"), ██████████ ("Lily" aka "Vicky"), and ████ ("Jenny").

**1.     The Court should strike and exclude from the evidence to be considered in support of Plaintiffs' Motion for Summary Judgment documents identified in Categories II through IV pursuant to Fed. R. Civ. P. 37 and Fed. R. Evid. 602 and 801.**

The initial, automatic disclosures required by Fed. R. Civ. P. 26(a) ensure that the parties can evaluate their case at an early stage, and map out their litigation plan to address the claims and defenses at issue.  *See also* Schwarzer, *In Defense of Automatic Disclosure in Discovery*, 27 Georgia L. Rev. 655 (1993).  These disclosures are so important, the federal rules address the appropriate response to a party's later attempt to smuggle witness testimony and documents not timely disclosed: they forbid it.  Fed. R. Civ. P. 37(c)(1).  More directly, Rule 37(c)(1) (emphasis added) provides that where:

> a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party *is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial,* unless the failure was substantially justified or is harmless.

As Judge Mendez ruled, "Rule 37(c)(1) was designed to be self-executing in order to produce a strong incentive for disclosure of material that the disclosing party would expect to use as evidence whether at trial, at a hearing, or on a motion, such as one under Rule 56."  *Johnson v. Kriplani*, 2008 WL 2623078 (E.D. Cal. July 2, 2008) (Mendez, J.).

Unsurprisingly, the Ninth Circuit directs the strict enforcement of these bright-line rules.  As the Court explained in *Yetti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) when affirming the exclusion of untimely disclosed evidence: "Rule 37(c)(1) gives teeth to these [Rule 26 disclosure] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."  *See also Hoffman v. Constr. Protective Services, Inc.*, 541 F.3d 1175, 1179-80 (9th Cir. 2008) (same, and excluding untimely disclosed evidence pursuant to Rule 37(c)(1)).

Plaintiffs' discovery conduct here compels exclusion of their untimely disclosed evidence from their pending motion, and from trial.  In response, Plaintiffs may contend either that they "timely" supplemented their disclosures, or that their failure to disclose their witnesses and

4

materials was "substantially justified." No such assertions would have merit.

It is clear that "Rule 26(e)(1)(A) requires disclosing parties to supplement their prior disclosures 'in a timely manner' when the prior response is 'incomplete or incorrect.'" *Hoffman*, 541 F.3d at 1179. Here, Mr. Laws completed his San Francisco evidence review in July 2020, and it is reasonable to infer that he updated Plaintiffs on his findings shortly thereafter. But while Plaintiffs hatched a revised plan to try to save their crumbling case, they opted to keep that secret, and only disclosed their new plan on October 28, when it was far too late for Defendant to effectuate a discovery plan in response. So too, when Plaintiffs reversed course from disclosing next-to-nothing in August 2019 to flooding Defendant with 32 new witnesses, as well as new evidence, at the close of discovery, they made sure to bury the six law enforcement witnesses they now rely upon in that much broader list, so as to further frustrate Defendant's ability to respond appropriately, and on time. And, quite obviously, Defendant was prejudiced by Plaintiffs' 23rd hour disclosures; no reasonable person could contend that Defendant could have marshalled through the evidence and assess 32 new witnesses and their potential impact at trial on the last day of discovery, develop a discovery plan, and execute it before discovery closed. Indeed, Plaintiffs' plan ensured that Defendant would have no response.[3]

In sum, nothing about Plaintiffs' course of conduct was "timely" or "substantially justified." Rather, it demonstrates sharp practice in violation of the rules. The Court should enforce Rule 37 and exclude *all* of Plaintiffs' untimely disclosed evidence.

> **a.** **The Category III witnesses were not disclosed timely, and the witnesses offer expert testimony that was never disclosed; the Court should exclude the declarations for both reasons.**

Beginning with the Category III witnesses, Plaintiffs failed to disclose these six active or retired law enforcement agents until the evening before discovery expired. Plaintiffs proffer these six declarants as fact witnesses. None were timely disclosed as fact witnesses, and none have

////

---

[3] In addition, Defense counsel had other obligations scheduled for October 29, 2020, as one would expect. Specifically, that was the due date for an Opening Brief in the Ninth Circuit, which counsel timely filed. *See United States v. Mendoza*, 19-50092, docket entry 22.

DEF. OPP. TO PL. MOT. FOR SUMMARY JUDGMENT
19 CV. 2184 PJH

ever been disclosed as expert witnesses.  The Court should disregard this proffered evidence pursuant to Fed. R. Civ. P. 37(c)(1).

The Court should separately strike Paragraph 12 of the Rothrock declaration, Paragraph 6 of the Behymer declaration, paragraph 11 of the Findley declaration, paragraph 13 of the Shepherd declaration, and the entire declaration signed by Corporal Adelle Brown (captioned "Declaration Re: Mya/Sweet Pink Sugar and Pia/Sweet White Sugar") as undisclosed expert testimony.  *See* Balogh Decl. ¶ 2 & F.  Plaintiffs were required to provide notice of expert witnesses by November 30, 2020.  ECF 74 & 87.  They didn't provide any such notice for the Category III witnesses.  *See* Balogh Decl. ¶ 2 & Ex. F.  The Court should thus exclude consideration of the undisclosed expert testimony for this additional reason.

### b.   The Category IV witnesses were not disclosed timely, and some offer fact testimony based on hearsay; the Court should exclude the declarations for both reasons.

Plaintiffs failed to disclose timely as potential witnesses the six adults—persons claiming to be biological, adoptive, or foster parents of Plaintiffs—who provided declaration in support of Plaintiffs' Motion to Summary Judgment (the "Category IV witnesses").  The Court should disregard the declarations from these untimely disclosed witnesses pursuant to Fed. R. Civ. P. 37(c)(1).[4]

In addition, ████████ identification relies upon hearsay evidence regarding photographs obtained by an unnamed caseworker at an unstated time, *see* Declaration of John Doe ¶ 4, and he bases his identification testimony on information provided to him by others, and thus his testimony should be excluded pursuant to Fed. R. Evid. 602 (personal knowledge requirement) and 801 (hearsay bar).  (And, of course, Plaintiffs failed to disclose those photographs or produce them in discovery, and thus ████████ cannot rely on that undisclosed evidence in support of his declaration now.  *See* Fed. R. Civ. P. 37(c)(1).)  ████████ declaration

---

[4] In addition, at no point during the discovery litigation did Plaintiffs establish that it would present any burden for the Category IV witnesses to sit for deposition.  *See* ECF 94 & 127. Plaintiffs thus avoided discovery by withholding notice that they intended to reply on these persons as trial witnesses.  Rule 37 compels their exclusion now.

6

likewise bases her identification on hearsay information provided by an unnamed social worker at an unstated time, and other photographs not timely disclosed; she likewise bases her identification testimony on information provided to her by others, and thus her testimony should be excluded pursuant to Fed. R. Evid. 602 and 801.  *See* Declaration of Jane Doe ¶ 3-4.  (And, of course, Plaintiffs failed to disclose timely those photographs or produce the paragraph 3 photographs at all; thus ███████ cannot rely on that undisclosed evidence in support of her declaration now. *See* Fed. R. Civ. P. 37(c)(1).)

Additionally, the Court should exclude the Declaration of Jane Roe because it is unsigned, the declarant does not present her identity, and even the version she signed does not establish that the entire declaration was reviewed and executed; rather, this unidentified "witness" signed some version that contained the same ending paragraphs, without demonstrating it encompassed the other parts of the declaration, formatted differently, and establishing a different document.

      **c.**      **The Coffren Affidavit (Exhibit 7 to the Hepburn Declaration (a Category II document)) was not disclosed timely; the Court should exclude it pursuant to Fed. R. Civ. P. 37(c) and Fed. R. Evid. 801, and should also exclude Exs. 4 and 5 to the Hepburn Declaration pursuant to Fed. R. Evid. 801.**

The same application of Rule 37(c) compels exclusion of the Exhibit 7 to the Hepburn Declaration—a declaration of Lauren Coffren—that Plaintiffs failed to timely disclose.

In addition, the Court should exclude the Coffren affidavit for the additional reasons that it is inaccurate on its face, and that the exhibit she presents constitutes hearsay.  Coffren attests that she attaches to her affidavit, as Exhibit 1, "[a] true and redacted copy of ECO Technical Assistance Request Report #l00850[.]"  And that is true: Exhibit 1 begins with the three page ECO Technical Assistance Request Report #l00850.  But thereafter, Plaintiffs have appended 18 pages from a 207 page "Child Identification Report[,]"—Plaintiffs include two copies of page 1 of that report—to Coffren Exhibit 1, which the witness neither authenticates nor otherwise establishes the *bona*

DEF. OPP. TO PL. MOT. FOR SUMMARY JUDGMENT
19 CV. 2184 PJH

*fides* of that excerpted, hearsay exhibit.[5]

Similarly, Exhibits 4 and 5 to the Hepburn Declaration constitute inadmissible hearsay pursuant to Fed. R. Evid. 801.  The Court should thus exclude those documents when addressing Plaintiffs' motion for summary judgment.

**2.      The Court should strike and exclude from the evidence to be considered in support of Plaintiffs' Motion for Summary Judgment the declaration of Kevin Laws; Mr. Laws is not an expert on identification, lacks personal knowledge of the key predicate facts, and relies on hearsay and untimely disclosed and undisclosed documents to support his "expert" opinion that he located photographs of Plaintiffs in electronic media allegedly possessed by Defendants.**

Plaintiffs offer Mr. Laws as an expert on two subjects: (1) computer forensics related to searching the media in the Government's possession,[6] and (2) identifying Plaintiffs when they were infants, toddlers, or children as a result of meeting them once as adults.  Balogh Decl. Ex. C at XXX.  Defendant objects to the second proffered "expert testimony" because it is *not* expert testimony, as Mr. Laws readily admitted:

> Q.      One of the things you've done in this case is you talked about, in your declaration, recognizing the plaintiffs from their photographs. Do you recollect that testimony?
>
> A.      Yes.
>
> Q.      Did you have any special training regarding your ability to identify people?
>
> A.      No.  So I mean it's pretty easy if you have a photo and you have another photo. You just compare the photos.
>
> Q.      So that's not -- withdrawn. So you have just, if I understand your testimony, a layman's ability to compare photography, you think you have that skill. Is that a fair and accurate statement?

---

[5] Plaintiffs do not rely on the Technical Assistance Request Report authenticated by Ms. Coffren, and instead rely upon the unauthenticated, partial Child Identification Report.  *See* ECF 140 at 6:13-7:10.  The Court should exclude that evidence in full.

[6] As Mr. Laws established, "[c]omputer forensics is the field where [he] learned how to search media using various software that's normally employed by law enforcement to examine a digital forensic copy of other people's media in search for illicit contraband with child pornography[.]"  Balogh Decl. Ex. C at 23:5-12.

8

A.      That's fair and accurate, yes.

Q.      For each of these plaintiffs that you had these interviews with, you met them -- except for the sole exception, which you can't remember her name, you met with family members but not the plaintiff herself, you met each of them once and only once; is that correct?

MS. HEPBURN:      Objection to the extent misstates the testimony.  You may answer.

THE WITNESS: Yes.[7]

Mr. Laws went further to prove this proffered testimony does not require or involve expertise, and only reflects his lay opinion.  Mr. Laws admitted he had no training with respect to identifying victims of childhood sex abuse by using pictures provided to him, had taken no classes on this subject, and had no specialized knowledge on it either.  Balogh Decl. Ex. C at 119:16-121:22.  So too, Mr. Laws's testimony established he doesn't possess scientific knowledge or technical knowledge enabling him to make the identifications he offered, that he followed no methodology to arrive at his identifications, he is unaware of any other expert so testifying or existing, and unaware of any scientific literature or any publications on this subject, and that this presentation cannot be tested by an error rate, it has not been subjected to peer-reviewed studies, and there are no clinical studies available to verify the propriety of such expert testimony.  Balogh Decl. Ex. C at 156:2-160:7, 160:14-161:20, & 159:12-163:12.

In simplest terms, Mr. Laws's proffered identification testimony fails every test for reliability, *see Murray v. Southern Route Maritime SA*, 870 F.3d 915, 922 (9th 2017), and thus may not be considered pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Because Mr. Laws's proffered testimony about identifying Plaintiffs in photographs

---

[7] Mr. Laws testified that his entire methodology was to (1) obtain a photograph of the Plaintiff, ask her to identify her counsel, and then to "show [her] the picture and ask the obvious question: 1 Who is this in the picture?  [and] [a]t what age were you during the time that this photo was taken?"  Balogh Decl. Ex. C at 78:15-79:2.  Then, Mr. Laws asked her to "produce[] an identification[,] which he neither photographed nor documented by copying the alleged identifying information, after which he and the witness "signed and dated the picture[.]"  *Id.*, at 79:3-10 & 83:10-21.

DEF. OPP. TO PL. MOT. FOR SUMMARY JUDGMENT
19 CV. 2184 PJH

depicting childhood abuse presents lay testimony, he may not rely on hearsay to render such an opinion. *United States v. Gadson*, 763 F.3d 189 (9th Cir. 2014) ("lay opinion testimony may not convey or rely on hearsay"); *United States v. Freeman (Kevin Freeman)*, 498 F.3d 893, 904-05 (9th Cir. 2007) (same).[8]

With respect to the media upon which Mr. Laws grounded his testimony, Mr. Laws (1) relied on S/A Popper's hearsay, *see e.g.*, Balogh Decl. Ex. C at 94:5-96:18, and (2) failed to investigate the chain of custody materials even to attempt to establish this preliminary, necessary factual predicate. *See id.* Plainly, Mr. Laws lacks "personal knowledge" as to whether the media he examined was, in fact, seized from Mr. Curtis, and remained unaltered until the time of Mr. Laws's examination of it. *See* Fed. R. Evid. 602.[9] In addition, "the relevance of [Mr. Laws's] evidence depends on whether a fact exists[,]"—*viz.*, whether the media S/A Popper provided was, in fact, seized from Mr. Curtis, and remained unaltered until the time of Mr. Laws's examination of it. *See* Fed. R. Evid. 104(b). But Mr. Laws didn't then, and Plaintiffs haven't now, established those critical facts either. And Mr. Laws made clear he was relying hearsay when forming his lay opinion. *See* Balogh Decl. Ex. C at 151:6-11 & 18-21; 153:5-19. The Court should thus reject Mr. Laws's identification evidence pursuant to *Gadson* and *Freeman*.[10]

For all of these reasons, the Court should reject Mr. Laws's testimony about the identification question. That ruling dictates that the Court deny Plaintiffs' motion for summary judgment, and on these grounds, permit the jury to resolve the claims presented at trial.

---

[8] Plaintiffs distract when they argue that Mr. Laws's lay opinions are actually "methods of authentication" for computerized records pursuant to Fed. R. Evid. 901. *See* ECF 140 at 24:28-25:20. Mr. Laws's testimony presents nothing of the sort, and Fed. R. Evid. 901 does not authorize his lay opinion testimony.

[9] Likewise, Mr. Laws lacks "personal knowledge" as to whether the photographs Plaintiffs provided him were, in fact, actual photographs of them during the relevant time period, and Rule 602 forbids that testimony too.

[10] Mr. Laws also made clear that he accepted Plaintiffs' statements at face value and did not assess their credibility. Balogh Decl. Ex. C at 165:23-1:66:2.

1

2

> **a.      Even if the Court considered Mr. Laws's declaration, it is insufficient to support summary judgment, and the Court should permit the jury to address the factual conflicts he has presented on this case.**

3

4

As Mr. Laws testified, Attorney Hepburn—and not Mr. Laws—"prepared [his expert declaration] and then [he] read it and signed it."  Balogh Decl. Ex. C at 53:11-17.[11]  For Plaintiffs

5

6

Violet, Sierra, Skylar, Savannah, Sally, and Mya, Attorney Hepburn wrote in the declaration she presented to Mr. Laws, he swore a substantially-similar averment following his act of locating a

7

8

particular image on the media S/A Popper ascribed to Defendant: "This image depicts [named Plaintiff]" and he "recognized her from the photo given [him] by her mother and meeting her in

9

10

person."  Laws Decl. ¶¶ 9(a), 9(b)(i) ("I recognized her from meeting her and from the photo given me by her parents"); 9(b)(ii) (same); 9(b)(iii) (same); 9(b)(iv) (same); 9(c) ("I recognized

11

12

Mya from meeting her in person and from the picture provided by her mother of her at younger age"); *see also id.*, ¶ 9(d) (declining to identify Lily aka Vicky, but asserting that he saw "her

13

resemblance as an adult to [the] childhood photos she supplied" to him).

14

15

But at deposition, Mr. Laws established that this proclaimed memory was not true.  Mr. Laws first explained that he could not remember when he met Amy, where he met her, or

16

17

anything else about that interview.  Balogh Decl. Ex. C at 79:14-80:14.  Or as Mr. Laws established: he "remember[ed] that [he] interviewed her, but [he could] not provide any other

18

19

specifics with respect to the substance of the actual interview."  *Id*.  Likewise, Mr. Laws testified that he could not recollect where or when he interviewed Erika, and confessed he had no

20

"recollection of the interview of Erika at all[.]"  *Id*. at 80:15-81:3.

21

22

After Mr. Laws confessed that he had no "specific memory of interviewing any of plaintiffs in this case[,]" that he couldn't name the Plaintiffs in this case, couldn't describe what

23

24

they looked like or even approximate their ages now, *id.*, at 82: 1-23, Mr. Laws explained his failure of recollection was intentional:

25

26

> I've looked at some of these images hundreds, you know, sometimes thousands of times, unfortunately.  I purposely didn't

27

28

[11]  The sole edit Mr. Laws recollected making to the declaration Attorney Hepburn prepared, which Mr. Laws deemed "material," was to add his middle initial to his name.  *Id*. at 53:23-54:1.

11

> want to remember a series name or someone's name, because
> there's enough stuff in my mind, you know, triggering PTSD that I
> don't want to remember, if that makes sense.

*Id.*, at 104:20-25.  Mr. Laws went on, and explained:

> I don't remember the specifics, the names and stuff like that.  And I
> purposely don't try to remember that stuff.

*Id.* at 105:7-10.  And Mr. Laws wanted to make this purposeful lack of memory clear:

> Q.   So when you see the child pornographic images, you can't, based on memory,
>       identify who they are; is that right?
>
> A.   That's right.  And I specifically don't commit that to memory.

*Id.* at 107:23-108:2.[12]

Most directly, Mr. Laws testimony disproves his contrary claims in his declaration, and

sufficiently so, to create a dispute of material fact sufficient to require trial.[13]  And there's more.

Mr. Laws testified that he obtained photographs from the Plaintiffs during 2019 and 2020,

and Defendant prepared as Laws Deposition Ex. 48 a collection of these photographs, with the

identifiers redacted.  Balogh Decl. Ex. C2 (Laws Depo Exs. at 319 (Pia), 320 (Jessica), 321

(Sierra, Skylar, Savannah, and Sally), 322 (Mya), 323 (Jessica) and 324 (Jenny)); *compare id.*,

Ex. 49 (containing identifiers).  But when asked to identify these pictures purportedly from

Plaintiffs' youth, Mr. Laws admitted he could not do so.  Balogh Decl. Ex. C at 171:11-174:22.

Mr. Laws attempted to make an identification of the photograph from the fourth page of Ex. 48,

////

---

[12] Mr. Laws further explained that, while he has not been diagnosed with Post Traumatic Stress Disorder ("PTSD"), he believes he suffers from it based on his longstanding exposure to and review of child pornography, and has thus adopted this intentional forgetfulness approach. *Id.*, at 111:4-112:6.

[13] Understanding the devastating nature of Mr. Laws's admissions, Plaintiffs' counsel tried to rescue this deposition by establishing that Mr. Laws recognized some identified "portion [of his declaration] as being [from his] reports." *See id.*, at 263:10-19.  But—and quite critically—those reports, *see* Balogh Decl. Ex. F at 58-223, do *not* include any claim that Mr. Laws, at the time of his review, "recognized" any Plaintiff from memory, as Attorney Hepburn presented to Mr. Laws in the declaration she crafted.  Attorney Hepburn also prepared other affidavits for Mr. Laws to sign.  *See e.g.*, *id.*, Ex. C at 113:11-114:12 & Ex. C1 at 61-62 (Depo Ex. 15); *see also id.* at 49-65 (Depo Exs. 9-16).

12

but rather than correctly identify Mya, *compare id.*, Ex. C2 (Laws Depo Ex. 49 at 322), he

testified it was Lily.  Balogh Decl. Ex. C at 173:16-25.

      Nor was Mr. Laws's memory better when addressing how Plaintiffs look today.

Defendant presented to Mr. Laws as Laws Depo Ex. 47, an array of photographs with identifiers

redacted, that showed the following Plaintiffs' photographs obtained from social media:

Maureen, *see* Balogh Decl. Ex. C2 (Laws Depo Exs. at 309-10); Amy, *see id.* (at 311); Jessica,

*see id.* (at 312), and Sarah, *see id.* (at 313-318).  Although Mr. Laws was retained to meet with

them, had done so in the summer of 2019 and the winter of 2019/2020, Mr. Laws recognized

none of them.  Balogh Decl. Ex. C at

      Mr. Laws contradicted the declaration crafted for him in additional ways too.  The crafted

declaration swore that "[d]uring the summer of 2019, [Mr. Laws] met with each of the firms'

clients who are plaintiffs in this matter."  Laws Decl. ¶ 6.  Mr. Laws then testified that "that

statement was false."  Balogh Decl. Ex. C at 243:14-25.  Likewise, the declaration crafted for Mr.

Laws swore that "[i]n each of these meetings . . ., [he] obtained photos of the minor or adult

individual which were taken during the time period of their sexual abuse."  Laws Decl. ¶ 6.  But

again, Mr. Laws testified that he did *not* obtain the photographs ascribed to Sierra, Skylar,

Savannah, and Sally, as he had sworn under penalty of perjury, and in fact, was given that

photograph by Attorney Hepburn.  Balogh Decl. Ex. C1 at 178:13-23 & Ex. C2 Ex. 49 (Laws

Depo. Ex. at 347).

      And to be sure, Mr. Laws has demonstrated *how* he makes these mistakes: he appears to

scan documents rather than read them.  When Attorney Hepburn asked Mr. Laws to review the

declaration before answering her questions at the deposition, defense counsel acted as "trial

director" and presented the exhibit on the screen.  *See* Balogh Decl. Ex. C at 262:6-263:8.  As

reflected in the video of that exchange, Mr. Laws didn't read the declaration; rather, he quickly

scanned through it, while directing counsel to turn the pages quickly.  *See id.*, at C-2 (262.06).

      It is this type of *review* that assuredly led him to adopt Attorney Hepburn's demonstrably

false assertion that "[d]uring the summer of  2019 I met with each of the firms' clients who are

13

plaintiffs in this matter[,]" or that he obtained all of the photographs from Plaintiffs during the meetings.  Laws Decl. ¶ 6.  So too, these repetitive errors reflect an expert trying to please counsel rather than assessing closely the materials they prepared for him.

Equally important, the challenges of making such identifications are real, which is why this case should be tried to a jury.  As Attorney Mabie attests, even the United States Department of Justice errs in this regard.  The DOJ misidentified client ▓▓▓▓▓▓ as a person whose images were found on Defendant's media, but in fact were not.  Declaration of Margaret Mabie ¶ 4 & Ex. 1 thereto.  Similarly, Erika and Tori's biological mother could *not* differentiate photographs of her own children.  Declaration of Jane Smith [▓▓▓▓▓▓] RE: Erika/Pinkheartsisters1 and Tori/Pinkheartsisters2 in Support of Summary Judgment ¶¶ 6 and 7.  Likewise, the Government first determined that no photograph of Savannah was found in Defendant's media, *see* Balogh Decl. ¶ 3, after which Government counsel asserted she believed otherwise, and ascribed the error to the fact that Savannah and Skylar look alike.  *See* Hepburn Decl. Ex. 6 (at RSCURTIS 00135).  And Mr. Laws affirmatively established he could not identify Jessica or Sarah in the media ascribed to Defendant.  Balogh Decl. Ex. C2 (Ex. 26 at Laws Depo Ex. 168-89).

Last—and critical to Plaintiffs' motion—because Mr. Laws could not identify the majority of Plaintiffs, he offers a "series of heavily redacted images" that correspond to some unidentified number of images he reviewed."  Laws Decl. ¶ 11.  He claims these images "depict all victims discovered on the seized digital media" without identifying the foundation for the statement.  *Id*.  Worse, that sentence *doesn't establish* that the redacted images he recites reflect *images* seized from Defendant's media, and Plaintiffs misdirection is concerning.  (So too, Mr. Laws already made clear that *images* of minors found on the media ascribed to Defendant— including images ascribed to Plaintiffs—do not *necessarily* constitute child pornography.  *See e.g.*, Balogh Decl. Ex. C at 71:13-72:2.  Because Mr. Laws did not present competent evidence to demonstrate these redacted images were found on Defendant's media (and he presented no such testimony in his disclosed expert materials, *see* Balogh Decl. D), the Court should reject his

14

testimony, and reject Exhibits 4-13 attached to his declaration as incompetent and lacking foundation.

In sum, Plaintiffs' presentation demonstrates inattention and insufficient proof to obtain an award of summary judgment.  The Court should deny Plaintiff's motion.

> **b.      During his review, Mr. Laws was unable to identify contraband for nine Plaintiffs, creating a dispute of material fact sufficient to warrant a trial for those nine.**

Mr. Laws provided forensic reports wherein he claimed to identify child pornography depicting Violet, Sierra, Savannah, Skylar, Sally, and Jenny in the media S/A Popper ascribed to Defendant.  Balogh Decl. Ex. C2 at 0001-0048.  As Mr. Laws explained, for any Plaintiff for whom he did not prepare a forensic report seeking to establish her identity *and* Defendant's alleged possession of child pornography of her, he "couldn't identify [that particular Plaintiff] or the picture [of that Plaintiff] wasn't there."  *Id*. Ex. C at 127:20-108:2; *see also id.*, at 127:7-12 "If there wasn't a forensic report, then that image did not appear in my examination"); *id.* at 129:1-4 (same); 150:8-12 (for the Plaintiffs for whom Mr. Laws did not provide a forensic examination report it is "true that [he] would not be able to testify in a court of law that Mr. Curtis possessed child pornography images of those" Plaintiffs).

As a result, the lack of forensic reports from Mr. Laws for Amy, Erika, Tori, Sarah, Maureen, Jessica, Lily, Pia, and Mya, *see* Balogh Decl. Ex. C2, establishes that their "image[s] did not appear in [Mr. Laws's] examination.  This testimony alone establishes insufficient evidence to award summary judgment to any of these nine Plaintiffs, and at a minimum, the Court should deny summary judgment to them and to require their claims to be decided by a jury.

> **c.      The solitary photographs ascribed to Sally and Violet do not constitute child pornography, and the Court cannot resolve this conflict on this record.**

18 U.S.C. § 2256(2)(B) defines "sexually explicit conduct" as:

> **(i)** graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited;
>
> **(ii)** graphic or lascivious simulated;

15

(**I**) bestiality;

(**II**) masturbation; or

(**III**) sadistic or masochistic abuse; or

(**iii**) graphic or simulated lascivious exhibition of the anus, genitals, or pubic area of any person[.]

Section 2256(2)(B)(8) (emphasis added) defines "child pornography" to "mean[]:

> any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where--(**A**) the production of such visual depiction involves *the use of a minor engaging in sexually explicit conduct*; (**B**) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (**C**) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

With respect to Sally and Violet, Mr. Laws claims that he found one—and only one—photograph of each of these to Plaintiffs in the media S/A Popper ascribed to Mr. Curtis.  Laws Decl. ¶¶ 9(a) & 9(b)(iv).  Those pictures do not implicate section 2256(2)(B)(i) or (ii), *see id.*, and thus whether these photographs constitute child pornography depends on two questions: do these two photographs reflect (1) "lascivious exhibition of the anus, genitals or pubic area of any person[,]" *see* 18 U.S.C. § 2256(2)(B)(iii), and (2) the use of [the] minor *engaging in sexually explicit* conduct."  18 U.S.C. § 2256(2)(B)(8)(A).  Neither photograph so qualifies.

Before getting there, Defendant notes that courts look to several factors to consider when determining "whether a visual depiction of a minor constitutes a 'lascivious exhibition of the genitals or pubic area[,] including "(1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; [and] (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer."  *United States v. Dost*, 636 F.Supp. 828, 832 (S.D. Cal. 1986).

16

//// 

Unsurprisingly, Mr. Laws testified as to these factors, as follows:

Q.      And tell me what constitutes child pornography.

A.      Lewd -- lewd and -- lewd and lascivious display of the genitals or actual or simulated sexual contact. And that's the short version.

Q.      Give me the most exact version you're capable of, please.

A.      That's it.  Lewd and lascivious display of the genitals, meaning the focal point of the camera is on the genitals, or actual or simulated sexual conduct.

Q.      When you say "the focal point," does that mean that there's something about the photograph, the way it's posed, that brings the viewer's attention to that's what they should focus on?

A.      Yes.

Q.      Okay. And so can you give me an example of a nude photograph that would have that focal point on the genitals and give me an example of a nude photograph that wouldn't.

A.      One of the -- one of the images in this case, the little girl is bent over at the waist, her feet are planted on the ground, her palms are in front of her, and the focal point is from behind.  So focusing on the anus and the vaginal area of the girl.  So when you look at the photo, that's immediately what you are drawn to.  As opposed to that would be what I'd classify as a nudist shot.  One that I can remember distinctly, there's a young boy and he's completely naked, merely sitting in a tree.

Q.      So would it be a fair description to the definition you are adopting of the focal point assessment is some pictures, by their posing, call attention to that they are supposed to be sexual photographs on display, if you would, legs spread, touching the genitals, it brings the viewer clearly to focus on the pubis versus

A.      It doesn't –

Q.      Go ahead. You can correct me.

A.      It doesn't have to be -- it doesn't have to be the pose.  It could be -- it could be an innocuous pose from a child, but then whoever is taking the photo, you know, zooms in on the genitals or

Q.      Okay.  So the focal point could be caused by the fact the way that a photograph is cropped, it's only a picture of the pubis, it's not a full body shot, and it's obvious that the photographer is trying to exhibit that portion of the child as opposed to a picture of the child.  Would you agree?

17

1    MS. HEPBURN:  Objection. Objection.  Misstatement of testimony.

2    BY MR. BALOGH:

3    Q.  Would you agree with that?

4    A.  Basically, yes.

5 Balogh Decl. Ex. C at 131:5-133:10.  Mr. Laws then amplified his expert opinion by explaining

6 "there's other ways to take a photo to draw your attention to the -- to the pubic area of a child[,]"

7 which he explained by example:

8     Say, for instance, someone is taking a picture from the top down,
9     and it's a boy, and you can see the -- see the erection.  Or it's taken
      from, you know, from the top again.  The child is sitting in the
10     bathtub.  *Rather than seeing the picture from the side like, you*
      *know, all this is -- this is my child splashing around in the tub*, it's
11     taken from the top, so it's a clear indication that the reason they are
      taking the photo is to display the genitals.
12

13 *Id*. at 133:12-134:6.

14    With respect to Sally, the one photograph Mr. Laws ascribes to her, *see* Laws Decl. ¶

15 9(b)(iv) & Ex. 5 (labeled "Declaration of Kevin Laws in Support of Pltfs MSJ—58)

16 (capitalization altered), does not constitute "sexually explicit conduct" and does not show the

17 minor "engaging in sexually explicit conduct."  While Mr. Laws describes that photograph as set

18 forth next, his description is not accurate:

19
20     This image shows Sally completely naked with her hair wet and
      pulled to the back of her head. She is standing in a bathtub partially
21     full of water. The focal point of the photo is her pubic/vaginal area.

22 Laws Decl. ¶ 9(b)(iv); *but compare* Laws Decl. Ex. 5 at 58.  This photograph is simply of a child

23 in a tub.  She's standing naked, and it's a full body shot; the focal point is her entire person, *not*

24 the genitals.  In sum, this image constitutes the prototypical "picture from the side" that Mr. Laws

25 contends does *not* constitute child pornography.  Put simply, review of this sole photograph does

26 not establish it constitutes child pornography, and thus Sally is not entitled to summary judgment

27 at all.

28

The photograph of Violet admittedly presents a closer call, but the record is insufficient to establish her entitlement to summary judgment based on this one picture.  *See* Laws Decl. ¶ 9(a) & Ex. 4 (at 52).  Violet is fully clothed in the photograph, and *she* is not "engaging in sexually explicit conduct."  *See id*.  While Mr. Laws's attestation that a penis appears in this photograph may constitute "lascivious exhibition" of genitals, the image fails under the second, required definition from section 18 U.S.C. § 2256(2)(B)(8)(A) because *the minor* is not shown to be "*engaging* in sexually explicit conduct." (emphasis added).  At bottom, this record is insufficient to support summary judgment now, and a jury should be permitted to resolve this challenging fact question.

**3.     The Court should reject Hepburn Declaration Exhibit 6 as hearsay statements made in settlement negotiations, and it should be excluded pursuant to Fed. R. Evid. 408 & 801.**

Plaintiffs also craft their pursuit of summary judgment on hearsay letters, addressing settlement, exchanged by the prosecutor (AUSA Garcia) and defense counsel (Attorney Halbert) from the criminal case.  Hepburn Declaration, Ex. 6; *see* ECF 140.  Plaintiffs have previously argued that statements by the attorneys who participated in the criminal prosecution and defense are hearsay, and cannot considered by the Court.  ECF 121 at 6:22-7:4.  So too, the attorney's statements pursuing negotiated compromise—which Exhibit 6 plainly presents—are not admissible in any case pursuant to Fed. R. Evid. 408.  The Court should thus strike and otherwise disregard Ex. 6 and the statements contained therein.

**4.     The Court should exclude the Declarations of ▮▮▮▮▮▮▮ ("Amy"), ▮▮▮▮▮▮▮ ("Maureen"), ▮▮▮▮▮▮▮ ("Sarah"), ▮▮▮▮▮▮▮ ("Lily" aka "Vicky"), and ▮▮▮▮▮▮ ("Jenny").**

Finally, the Court should exclude the declarations from the five Plaintiffs that submitted them.  Each supplied a declaration that sets forth her abuse and the injuries she asserts arose from Defendant's conduct.  But, at Plaintiffs' urging, the Court abrogated Defendant's Fed. R. Civ. P. 30 rights and ordered that Defendant could not depose any Plaintiff.  ECF 131. Defendant contends it is fundamentally unfair, and violation of due process under the Fifth Amendment, to

now consider their testimony when they refused to be subjected to examination at all, and their declarations are the definition of *ipse dixit*.  *See e.g.*, *Ching v. Mayorkas*, 725 F.3d 1149 (9th Cir. 2013).

**B.    Plaintiffs' proof is insufficient for additional reasons.**

As Defendant has briefed, *see* ECF 142, he maintains that Plaintiffs must prove and plead actual damages, and personal injury arising from Defendant's conduct, and Plaintiffs' failure of pleading and proof supports judgment for Defendant.  In any case, he raises that challenge here in support of the argument that Plaintiffs have failed to prove either actual damages or personal injury caused by Defendant such that the Court cannot properly award summary judgment to Plaintiffs on this record.

**CONCLUSION**

For the reasons set forth above, the Court should deny Plaintiffs' motion for summary judgment.

Respectfully submitted,

DATED:  January 29, 2021          COLEMAN & BALOGH LLP


*/s/ E A Balogh*
ETHAN A. BALOGH
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
(415) 391-0440

Attorneys for Defendant
RANDALL CURTIS