**COLEMAN & BALOGH** LLP

235 Montgomery Street, Suite 1070  |  San Francisco, California 94104  |  T: 415.391.0441  |  F: 415.373.3901

ETHAN A. BALOGH
eab@colemanbalogh.com

**VIA ECF SYSTEM**

February 10, 2021

The Honorable Robert M. Illman
United States Magistrate Judge

      RE:     "*Amy,*" et al., *v. Randall Curtis*, Case No. 19 Cv. 2184 PJH

Dear Magistrate Judge Illman:

We write with respect a subsequent discovery dispute and ask the Court to resolve it as soon as practicable, and hopefully in advance of the 2/25/21 dispositive motions hearing Judge Hamilton.

**Defendant's Position:**

**FACTS**

On October 29, 2020, the last day on which a party could propound fact discovery, Defendant served his Request for Production of Documents, Set Two ("RFPs Set Two"), that set forth four requests aimed at obtaining documents Plaintiffs exchanged with members of Congress with respect to their years-long efforts to have Congress amend the statute, and then amend it again. *See* ECF 156-1, Ex. F (RFPs and Plaintiffs' response).[1]

Plaintiffs' presentations regarding their desire to change the statute is relevant to this case. *See* ECF 142 at 12:9-13:18 (arguing against bills of attainder); *see also id.*, at 10:11-17:10 (arguing that the presumption against retroactivity makes the predecessor version of the statute—"Masha's law"—applicable to Defendant, rather than the current version of the statute that was amended in 2018, *viz.*, *after* Defendant's conduct, *after* Defendant's conviction, *after* Plaintiffs received notice that Defendant may have possessed images of them, and *after* Plaintiffs had raised claims against Defendant). According to Plaintiffs, they and their counsel were instrumental in amending the statute with respect to Masha's law, and amending it again with respect to the current version of the statute; this evidence includes:

---

[1] The parties agreed to the form of RFPs Set Two so that Defendant could direct each request at al l5 Plaintiffs on one pleading, and Plaintiffs thereafter could respond in one pleading.

>James R. Marsh, *Masha's Law: A Federal Civil Remedy for Child Pornography Crimes*, 61 Syracuse L. Rev. 459, 461 (2011) (Plaintiffs' counsel declaring: "In late 2005, I was instrumental in enhancing the federal civil legal rights of children who are victims of child pornography" and claiming credit for enactment of Masha's Law);
>
>ECF 94-5 (Declaration of James Marsh claiming that "[i]n 2017, I assisted Senator Diane Feinstein in updating 18 U.S.C. 2255")[;] and
>
>ECF 96-2 at Ex. 16 (at AMY000060) (In 2014, "Amy" lamenting her loss in *Paroline v. United States*, 572 U.S. 434 (2014), and expressing "hopes [that] the lingering problems will be solved by the legislation that Mr. Marsh is working on."

To be sure, Mr. Marsh's comments on this subject ultimately have assisted Defendant. For example, Plaintiffs' counsel admitted in the referenced law review article that Defendant's reading of Masha's law is correct, and that section 2255's elements requiring proof that any particular Plaintiff (1) was a victim of a violation of 14 predicate offenses *and* (2) who suffers personal injury as a result of such violation are *different*, and each must be proven to obtain damages, including the $150,000 "floor." Marsh, *supra.*, at 494-95. In a section counsel helpfully labeled "The Personal Injury Requirement[,]" he (1) admitted that "[i]n order to obtain statutory damages, a plaintiff must show that she suffered 'personal injury' as a result of the defendant's predicate act[,]" which he recognized is "much more difficult to conceptualize and prove" in possession cases, amongst others, (2) agreed that plaintiffs must "prove[] personal injury" before being entitled to damages, including the $150,000 "floor[;]" and (3) discussed his "*theory* that child pornography in and of itself causes personal injury" (citing *Ferber*). *Id.*, at 494-95 (emphasis added).

But when Plaintiffs' responses to Defendant's RFPs Set Two seeking this evidence came due on Monday, December 1, 2020, *see* Fed. R. Civ. P. 34, Plaintiffs did not even respond, much less produce responsive documents. Then, when Defendant inquired of Plaintiffs in January 2021, Plaintiffs' counsel suggested that because Defendant did not respond to an email query about the RFPs following service, Plaintiffs' query by email somehow served to excuse Plaintiffs' obligations under Fed. R. Civ. P. 34. But that is not the law. And after conference, Plaintiffs refused to provide *any* responsive documents based on the following objections:

>Objection: beyond the scope of permissible discovery as not likely to lead to any admissible evidence; violative of Plaintiffs' First Amendment rights to petition Congress as the compelled disclosure of communications as requested exerts a chilling effect on the exercise of those rights. Further, Defendant's request is violative of California Code of Civil Procedure 425.16 which prohibits actions ". . . against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California constitution in connection with a public issue . . ."

*See* ECF 156 ¶¶ 2-5 & ECF 156-1 (Ex. F).

Magistrate Judge Robert M. Illman
February 10, 2021
P a g e | 3

## ARGUMENT

The Court should compel production here for two reasons.

*First*, Plaintiffs failure to respond timely to Defendants RFPs Set Two leads to one clear result: waiver of all objections, *including* claims of privilege and work product. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992). Thus, Plaintiffs' untimely objections may not be considered, and the Court should strike them as waived, and direct Plaintiffs to produce all responsive documents forthwith and without exception.

*Second*, Plaintiffs' objections are frivolous. After bragging in multiple fora about their efforts to amend existing law, Plaintiffs claim—without citation to any case—that producing the documents reflecting their interpretation of the old versions of section 2255 and the need for serial amendments, Plaintiffs are suddenly shy, and claim that producing evidence in a matter they brought would violate their First Amendment rights to petition the Government. That is sophistry at best, and just plain obstruction. Nothing in Defendant's RFPs Set Two infringes on Plaintiffs' rights, and Plaintiffs present zero authority to support their waived objections.

So too, the notion that these non-Californians can invoke California state court procedural rules to avoid producing discovery in this federal matter borders on the absurd, which also explains Plaintiffs' lack of supporting authority. Similarly unsustainable is the notion that Defendant's RFPs Set Two constitute an "action[] … against a person" arising from their speech. Rather, RFPs Set Two are simply requests for documents in Plaintiffs' position that inform the litigation of this matter.

James Marsh represents multiple Plaintiffs in this case and communicated with Congress on behalf of those Plaintiffs with respect to amending the statute at issue. In sum, he was Plaintiffs' agent at all relevant times respecting these requests. The Court should compel a complete production forthwith.

**Plaintiff's Position**

## FACTS

The Case Management Order as amended on July 18, 2020 set the non-expert **discovery cutoff** as October 29, 2020. S*ee* Dkt. 87. On October 29, 2020, Defendant served a second set of discovery requests. Plaintiffs did not agree to and could not have possibly responded to Defendants' untimely requests before the close of discovery. Defendant did not file any motion requesting an extension of the discovery cut-off prior to the deadline. Arguably there is no duty to respond however, Plaintiffs objections were served January 22, 2021.

Defendant discovery requests are well beyond the scope of permissible discovery—a pure fishing expedition.. On October 30, 2020 Plaintiffs' counsel emailed defense counsel inquiring as to the relevancy of the requests. No response was ever received.

Defendant seeks the communications of attorney James R. Marsh. Marsh is not a party in this case; Marsh is not record counsel in this case. Indeed, none of the Plaintiffs in this case possess any communications between Plaintiffs and Congress. Mr. Marsh has an attorney client relationship with a portion, *and only a portion,* of the Plaintiffs in this matter. Mr. Marsh has confirmed for purposes of this letter that none of his communications with Congress had anything to do with either Mr. Curtis or this case. Finally, James R. Marsh has not received a subpoena from Defendant at any time. Even were a subpoena served, the search for such communications would be daunting given the time span involved and number of communications with others (such as co-counsel) concerning Sec. 2255. No request has been sent to Congress as far as we know.

Should communications by Plaintiffs themselves or any attorney representing CSAM victims be compelled, then future exchange of the sensitive information about the traumatizing impact of these crimes on the victims would be unavailable to lawmakers. The inability to communicate without disclosure inherently limits communications about such personal and sensitive information, depriving Congress of the benefit of the sometimes-shaking voices they need to hear from.

Moreover, Defendant fails to acknowledge that the United States Congress (*not* James R. Marsh and *not* Plaintiffs) amended 18 U.S.C. 2255 on four separate occasions since enactment in 1986. Congress amended Section 2255 in 1998, in 2006, in 2013, and in 2018. Defendant's references to a decade-old law review article written by James R. Marsh in 201. 1remains both outdated and entirely irrelevant to this case. The article predates even the version of the statute that Defendant claims applies (the 2013 version.) Moreover, Defendants' self-serving propositions entirely misread the content of said article—which ultimately supports Plaintiffs' claims "that child pornography in and of itself causes personal injury". James R. Marsh, *Masha's Law: A Federal Civil Remedy for Child Pornography Crimes*, 61 Syracuse L. Rev. 459, 494-95 (2011).

## ARGUMENT

"Most federal courts hold that responding parties have no duty to respond . . ." where written discovery is served just before the cutoff. *Wyles v. Sussman*, 445 F. Supp. 3d 751, 756–57 (C.D. Cal. 2020). *See also, Gluck v. Ansett Australia Ltd.,* 204 F.R.D. 217, 219-21 (D.D.C. 2001) (protective order proper where "Plaintiff served his requests for admissions a matter of days before the discovery deadline" but sought no "extension of the discovery deadline to allow the thirty days for ... responses"); *Toone v. Federal Express Corp.*, 1997 WL 446257, at *8 (D.D.C. July 30, 1997) (motion to compel responses denied because "plaintiff waited until the eleventh hour to serve discovery which could not be completed prior to discovery cut-off"); *Nicholson v. City of Los Angeles*, 2017 WL 10574522, at *5-6 (C.D. Cal. Jan. 11, 2017) (denying motion to compel responses filed after deadline for discovery motions)."

Further, courts need not condone the use of discovery to engage in a fishing expedition. *Rivera v. NIBCO, Inc.,* 364 F.3d 1057, 1072 (9th Cir. 2004); *See, e.g., Exxon Corp. v. Crosby–Mississippi Resources, Ltd.,* 40 F.3d 1474, 1487 (5th Cir.1995). Defendants' requests are trifling, superficial, and irrelevant. Federal discovery as a casting rod for expeditions based on mere speculation. *Rivera v. NIBCO,* 364 F.3d 1057, 1072 (9th Cir. 2004) (rejecting employer's attempt to use discovery to interrogate former employees about their immigration status).

The compelled disclosure of political associations was held to have a chilling effect on First Amendment rights in *Perry v. Schwarzenegger,* 591 F3d 1147 (9th Cir. 2010) ("*PerryI*"). There the district court ordered production in discovery of internal campaign strategy documents and advertising of a group taking action against California's Proposition 8. The RFP in question asked for "All versions of any documents that constitute communications referring to Proposition 8, between you and any third party, including, without limitation members of the public or the media." In objecting the respondents argued relevancy, but even if relevant that the interests in their First Amendment right to association outweighed the opponents' need for the information. The appellate court held that where even the unintended effect of a compelled disclosure "would have the practical effect 'of discouraging' the exercise of constitutionally protected political rights. . ." "exacting scrutiny" must be applied. *Perry, supra* at 1156-57, 1159-1160.

Here, it is clear that the right to petition government is a First Amendment right. Plaintiffs' need only show some probability that disclosure of statements would lead to a chilling effect of exercise of their rights. *Black Panther Party v. Smith,* 661 F.2d 1243, 1267-68 (DC Cir. 1981). If the Plaintiff child sex abuse victims had summoned up the bravery to contact their legislators about amendments to the statute, it would be yet another invasion of their privacy by a child sex abuse offender to allow him access to their communications with elected representatives. This intrusion would perforce chill their willingness to reach out to Congress again or to pursue their rights in a court of law. *Black Panther* recognized that compelled disclosure is a restraint on First Amendment rights and that privacy was particularly important in that case where the group seeking protection was unpopular—so too where the subject matter of the disclosure is intensely personal. *Id.* at 1265. Defendant must show that the burden placed on the individual is outweighed by factors such as the import of the litigation, the "centrality" of the information sought, that the communications are "highly relevant," a higher bar than the "ordinary" Rule 26 relevancy. *See, PerryI* at 1161.

Defendant claims this information pertains to his Bill of Attainder argument. Yet, Defendant has not explained how amendments to 18 USC 2255 singled him out subjecting him to the equivalent of a "trial by legislature." He is not so important to be specifically named in any communication.

Defendant seeks to assail Plaintiff CSAM victims with statements of an attorney who represents a *portion* of them outside of this litigation. If the court even considers this far-flung expedition, multiple questions are raised. Does a lawyer no longer have any individual identity

Magistrate Judge Robert M. Illman
February 10, 2021
P a g e | **6**

apart from his clients when it comes to issues of public importance? Were statements sought made on behalf of clients who are not parties to this action? How influential were the statements of a single lawyer to an action taken by the 535 combined Senators and Members of Congress? How can any Marsh statements be held against Plaintiffs in this matter with whom he has no relationship? In what way are any such statements "highly relevant" to the issues in this case? Defendant has failed to show any level of relevancy let alone the high level required to overcome Plaintiffs' First Amendment protections. His requests should be denied, and Plaintiffs' objections sustained.

Respectfully submitted,

*/s/ E A Balogh*
ETHAN A. BALOGH
Attorney for Defendant


*/s/ Carol Hepburn*
CAROL L. HEPBURN
DEBORAH BIANCO
JOHN KAWAI
Attorneys for Plaintiffs