1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

"AMY," et al.,

                    Plaintiffs,

        v.

RANDALL STEVEN CURTIS,

                    Defendant.

Case No.  19-cv-02184-PJH

**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Re: Dkt. No. 142

        Defendant Randall Steven Curtis' motion for judgment on the pleadings, or in the alternative, summary judgment or partial summary judgment, came on for hearing before this court on February 25, 2021.  Defendant appeared through his counsel, Ethan A. Balogh.  Plaintiffs appeared through their counsel, Carol L. Hepburn and John A. Kawai. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, the court hereby DENIES defendant's motion, for the following reasons.

I.      **Background**

        Fifteen plaintiffs, proceeding under pseudonyms, collectively bring this civil action against defendant Randall Curtis based on Curtis' possession of child pornography.  See 18 U.S.C. § 2252(a)(4)(B) (criminalizing possession of child pornography).  Plaintiffs assert a single cause of action under Title 18 U.S.C. § 2255(a) ("Section 2255"), which allows victims of child pornography to recover civil damages against people who have committed a violation of certain enumerated statutes, including § 2252(a)(4)(B).

Plaintiffs Amy, Erika, Tori, Jenny, Jessica, Lilly, Sarah, Skylar, Savannah, Sally, Sierra, Maureen, Violet, Pia, and Mya each allege that they were victims of childhood sexual abuse depicted in images of child pornography (alternatively referred to herein as "child sexual abuse material" or "CSAM") seized from defendant's possession.[1]  See FAC ¶¶ 3-30, Dkt. 81.  On September 6, 2016, the defendant was indicted in the U.S. District Court for the Northern District of California for knowingly possessing and transporting child pornography in violation of §§ 2252(a)(1) and (a)(4)(B), respectively.  FAC ¶ 35. Defendant pleaded guilty to these offenses on July 13, 2017, and he was sentenced with a judgment entered against him on June 8, 2018.  FAC ¶ 36.

Plaintiffs filed this civil action on April 23, 2019.  Dkt. 1.  Defendant filed his motion to dismiss under Rule 12(b)(6) on July 22, 2019.  Dkt. 25.  The motion to dismiss was denied by this court on August 30, 2019.  Dkt 42.

Plaintiffs sought leave of court to file a First Amended Complaint ("FAC") that eliminated their original claims for punitive damages, added no new claims, eliminated many factual allegations of the original complaint, and corrected an error pointed out by defense counsel.  Dkt. 77.  The court granted leave to file the FAC (Dkt. 80), and plaintiffs did so (Dkt. 81).  Defendant filed his amended answer to plaintiffs' FAC on April 10, 2020. Dkt. 82.  In response, plaintiffs filed a motion to strike portions of the answer.  Dkt. 97. The court granted plaintiffs' motion to strike nine of defendant's affirmative defenses. Dkt. 130.  On the same day as the order on the plaintiff's motion to strike affirmative defenses, the court entered a separate order regarding a discovery dispute.  Dkt. 131. The court ruled that plaintiffs need not establish actual damages to prevail on their Section 2255 claim, they need only to establish that they are victims of defendant's crime. Id.

---

[1] The term "child pornography" remains a legal definition, but the court alternatively refers to the subject materials in this case as "CSAM" to avoid trivializing the abuse of children. See Child Sexual Abuse Material (CSAM), NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN, https://www.missingkids.org/theissues/csam (last visited 3/4/2021); Appropriate Terminology, INTERPOL, https://www.interpol.int/en/Crimes/Crimes-against-children/Appropriate-terminology (last visited 3/4/21).

United States District Court
Northern District of California

On January 19, 2021, defendant filed the present motion for judgment on the pleadings.  Dkt. 142.

## II.    Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings "challenges the legal sufficiency of the opposing party's pleadings."  William Schwarzer et al, Federal Civil Procedure Before Trial ¶ 9:316 (2014).  The legal standards governing Rules 12(c) and 12(b)(6) are "functionally identical," Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011), as both permit challenges directed at the legal sufficiency of the parties' allegations.  Thus, a judgment on the pleadings is appropriate when the pleaded facts, accepted as true and viewed in the light most favorable to the non-moving party, entitle the moving party to a judgment as a matter of law.  Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1301 (9th Cir. 1992); see also Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).  The standard articulated in Twombly and Iqbal applies equally to a motion for judgment on the pleadings.  Chavez v. United States, 683 F.3d 1102, 1108-09 (9th Cir. 2012); Cafasso, 637 F.3d at 1054-55 & n.4; see also Lowden v. T-Mobile USA, Inc., 378 Fed.Appx. 693, 694, 2010 WL 1841891 at *1 (9th Cir., May 10, 2010) ("To survive a Federal Rule of Civil Procedure 12(c) motion, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face'" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  Indeed, "a plaintiff's obligations to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations and quotations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

United States District Court
Northern District of California

III.    **Analysis**

   A.    **Whether the version of Section 2255 in effect at the time of defendant's 2016 conviction should apply or whether the version of Section 2255 in effect at the time of plaintiffs' 2019 initiation of this suit should apply**

   The parties dispute whether the application of the 2018 amendments to Section 2255 in this case would be improperly retroactive.  Defendant argues that application of the version of Section 2255 adopted after his conviction would be an unfair, retroactive application of the law, while plaintiffs argue that the version of Section 2255 in effect at the time they initiated this civil suit should apply.

   The Supreme Court addressed the issue of retroactive application of a statute in Landgraf v. USI Film Products, 511 U.S. 244 (1994).  The Court started by acknowledging the "apparent tension" between the rule that "a court is to apply the law in effect at the time it renders its decision," and the axiom that "retroactivity is not favored in the law."  Id. at 264 (internal citations omitted).  The Court also made clear that "[a] statute does not operate retrospectively merely because it is applied in a case arising from conduct antedating the statute's enactment," but "[r]ather, the court must ask whether the new provision attached new legal consequences to events completed before its enactment." Id. at 269-70.

   When a court is assessing whether a party seeks impermissible retroactive application of a statutory provision, it first looks to see whether Congress indicated its intent that the statute applies retroactively.  Landgraf, 511 U.S. at 280.  The plain language of a statute provides the best evidence of legislative intent.  See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987); see also Royal Foods Co. Inc. v. RJR Holdings, Inc., 252 F.3d 1102, 1108 (9th Cir. 2001) ("There is a strong presumption that the plain language of the statute expresses congressional intent, which is 'rebutted only in rare and exceptional circumstances, when a contrary legislative intent is clearly expressed'" (citation omitted)). Under the second step of the analysis, the court asks whether the new statute has a retroactive effect.  Landgraf, 511 U.S. at 280.  A law has a retroactive effect if it (1) impairs rights a party possessed when the party acted; (2)

4

1   increases a party's liability for past conduct; or (3) imposes new duties with respect to

2   transactions already completed. Id.

3          Here, defendant argues that the application of the 2018 version of Section 2255,

4   particularly the provision for liquidated damages in the amount of $150,000 per victim,

5   cannot apply to him because the acts giving rise to plaintiffs' claims, along with

6   defendant's criminal conviction, took place in 2016.  In 2016, the relevant portion of the

7   statute in effect provided that the victims of the enumerated child sexual abuse crimes

8   "shall be deemed to have sustained damages of no less than $150,000 in value" instead

9   of liquidated damages.  18 U.S.C. §2255 (2006).  Defendant suggests that some

10  language in the preface of the 2018 amendments ("An Act *[t]o prevent* the sexual abuse

11  of minors…" (emphasis by defendant)) announces the lack of retroactive intent for the

12  amendment.  Plaintiffs do not suggest that Congress specifically indicated that the statute

13  should apply retroactively.  Plaintiffs instead focus on the second step of the analysis

14  from Landgraf.  Plaintiffs argue that the 2018 amendments do not alter defendant's civil

15  liability, create new burdens for him, nor alter his "relative role in the causal process that

16  underlies the victim's general losses."  Paroline v. United States, 572 U.S. 434, 458

17  (2014).  Defendant counters that the liquidated damages provision substantially changes

18  his legal rights by creating new legal consequences for previous conduct.

19         First, neither party provides clear indication that Congress intended the statute to

20  apply retroactively.  Defendant's emphasis on Section 2255's preamble's reference to the

21  prevention of child sexual abuse does not amount to a sufficiently clear statement that

22  the 2018 amendments only apply to conduct following enactment, particularly for a

23  statute that remains substantially the same as previous versions.

24         Second, in the absence of clear indication of Congressional intent that the statute

25  applies retroactively, the Landgraf test must provide the answer. The amendments do not

26  change, much less impair, a right possessed by defendant.  Defendant was prohibited

27  from possessing and transporting CSAM well before the 2018 amendments.  See, e.g.,

28  United States v. Curtis, CR-16-00510-001 SI, Plea Agreement (July 13, 2017).  The

1    change from a statutory minimum or presumed damages of $150,000 to liquidated

2    damages of $150,000 cannot be said to increase defendant's liability nor create any new

3    legal consequences for past conduct.  And the 2018 amendments impose no new duties

4    with respect to transactions already completed. Defendant provides no support for his

5    implied premise that a $150,000 statutory minimum penalty leaves him on substantially

6    different legal footing compared to $150,000 liquidated damages penalty.  Based on

7    these considerations, the 2018 amendments did not have any retroactive effect to

8    preclude their consideration here.  Thus, the court applies the liquidated damages clause

9    to this case because the statute as amended in 2018 is the law in effect at the time the

10   court renders its decision.[2]

**B.    Whether plaintiffs must allege both injury and causation in accordance with tort principles**

13          The retroactivity debate covered in the previous section lies at the center of both

14   sides' arguments regarding the need for plaintiffs to plead actual damages.  Defendant

15   argues that under the version of Section 2255 in effect at the time of his 2016 conviction,

16   plaintiffs' First Amended Complaint is deficient—it does not include allegations that

17   plaintiffs suffered any "actual damages."  Plaintiffs counter that the 2018 amendments are

18   not retroactive in nature and should thus be applied to the present case.  They assert that

19   because plaintiffs may proceed under a theory of liquidated damages, they need not

20   allege actual damages.

21          Defendant's arguments regarding plaintiffs' failure to plead damages reprise some

22   of his earlier arguments already rejected by the court, reaching back to defendant's

23   motion to dismiss, plaintiffs' motion to strike defendant's affirmative defenses, and even

24   more recent discovery disputes.  This time, defendant relies on the Supreme Court's

25   analysis in <u>Doe v. Chao</u>, 540 U.S. 614 (2004), in which the Court considered whether a

26

27

28

_____

[2] Moreover, even if it had applied the version of Section 2255 in effect in 2016, the court's decision on this motion would be the same.  Plaintiffs' pleadings are sufficient to state a claim that they are victims, as discussed in the next section.

United States District Court
Northern District of California

1   plaintiff must establish actual damages prior to entitlement to statutory minimum payment

2   for violation of the Privacy Act.  There, the Court rejected a plaintiff's attempt to collect

3   statutory minimum damages where the statute established liability of the United States to

4   a person whose privacy was intentionally or willfully violated in the amount of "actual

5   damages sustained by the individual as a result of the refusal or failure, but in no case

6   shall a person entitled to recovery receive less than the sum of $1,000."  Chao, 540 U.S.

7   at 619 (citing 5 U.S.C. 522a(g)(4)(A)).  The Court focused first on the plain language of

8   the statute before backing up its reasoning with general principles of torts.  Id. at 620-21.

9        Defendant argues that the damages provision available to plaintiffs in the version

10  of the statute in place prior to the 2018 amendments similarly requires plaintiffs to

11  establish actual damages before they can rely on a statutory minimum.  However,

12  defendant's reliance on Chao ignores the more factually relevant decision in Doe v.

13  Boland, 698 F.3d 877 (6th Cir. 2012), as well as this court's previous reliance on Paroline

14  v. United States, 572 U.S. 434 (2014).  Both Boland and Paroline distinguish child

15  pornography offenses from other types of torts.  With respect to demonstrating actual

16  damages, the Boland court acknowledged that most tort plaintiffs must demonstrate

17  actual damages but Section 2255's purpose and provision of statutory damages

18  differentiates it from an ordinary tort.  Boland, 698 F.3d at 882.  "The point of a minimum-

19  damages requirement is to allow victims of child pornography to recover without having to

20  endure potentially damaging damages hearings."  Id. (based on the pre-2018 version of

21  Section 2255).

22       As discussed in this court's order granting plaintiffs' motion to strike, (Dkt 130 at 8-

23  9), and order on discovery, (Dkt. 131 at 2-3), a Section 2255 plaintiff need not show that

24  he or she is a victim *and* that they suffered a personal injury.  If plaintiffs appropriately

25  allege that they are victims, then they necessarily suffered a personal injury.  Further, a

26  plaintiff that elects liquidated damages under Section 2255 need not demonstrate that he

27  or she suffered actual damages.  See Boland, 698 F.3d at 882.

28

7

Regarding causation, defendant repeats his argument that plaintiffs fail to sufficiently plead his possession of CSAM caused their injury.  This court previously discussed at length how "but-for" causation is not required in Section 2255 cases.  Dkt. 42 at 7-8.  Courts have "departed from the but-for standard where circumstances warrant, especially where the combined conduct of multiple wrongdoers produces a bad outcome."  Paroline, 572 U.S. at 451.  As defendant correctly points out, with respect to child pornography offenses, "the Paroline Court recognized that it would be virtually impossible to show that the defendant possessor was a but-for cause of any particular portion of the victim's losses 'where the defendant is an anonymous possessor of images in wide circulation on the Internet.'"  United States v. Rothenberg, 923 F.3d 1309, 1325 (11th Cir. 2019) (quoting Paroline).  Nevertheless, "it is [also] indisputable that [the child pornography possessor] was a part of the overall phenomenon that caused [the victim's] general losses."  Paroline, 572 U.S. at 456-57; see also id. at 449 ("[T]he victim's cost of treatment and lost income . . . are direct and foreseeable results of child-pornography crimes, including possession . . .").  That combination, inter alia, led the Court in Paroline to reject the argument that Section 2259 (the criminal restitution analog to Section 2255's civil damages provision) required but-for causation: "It would be unacceptable to adopt a causal standard so strict that it would undermine congressional intent where neither the plain text of the statute nor legal tradition demands such an approach."  Id. at 457-58. This court therefore rejects defendant's arguments that plaintiffs are required to plead actual damages and causation in accordance with general tort principles because of the applicability of Boland and Paroline as well as the substantively different nature of child pornography cases compared to more traditional torts.  Plaintiffs' FAC, relying solely on liquidated damages under Section 2255, alleges enough facts to state a claim to relief that overcomes defendant's motion under 12(c).

C.      **Whether Section 2255 is invalid as unconstitutional**

In defendant's motion for judgment on the pleadings, he argues that Section 2255 is unconstitutional, both facially and as applied to him.  Defendant filed a notice of

1  constitutional questions with the government pursuant to Federal Rule of Civil Procedure

2  5.1 and Civil Local Rule 3-8 on February 3, 2021.  Dkt. 153.  The time for the government

3  to intervene has not yet expired, but the court rejects each of the constitutional

4  challenges.  See Fed. R. Civ. P. 5.1(c).  Each of defendant's four arguments are

5  considered in turn.

6
7  **1.    Whether the $150,000 statutory penalty violates Eighth Amendment protections against Excessive fines**

8        Defendant argues that the civil penalty of $150,000 payable to each plaintiff is so

9  great as to far exceed constitutional boundaries.  The limitations of the Excessive Fines

10  Clause of the Eighth Amendment to the Constitution are applied only to fines "directly

11  imposed by, and payable to, the government" and only to fines constituting punishment.

12  See, e.g., Austin v. United States, 509 U.S. 602, 607 (1993) (citation omitted); see also

13  Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 264-65 (1989)

14  (excessive fines clause is implicated only when a party must make "a payment to a

15  sovereign as punishment for some offense").

16        Defendant cites Austin for the premise that the Eighth Amendment's protection

17  against excessive fines is not limited to criminal cases.  Defendant's reliance on Austin is

18  misplaced.  While the Supreme Court did acknowledge that the Eighth Amendment's

19  protections against excessive fines applied to civil proceedings, it did so in the context of

20  a government-initiated in rem civil forfeiture proceeding resulting from criminal

21  prosecution.  The Court did not identify that the Excessive Fines Clause applied to wholly

22  civil proceedings intended to compensate victims.  This case does not involve a fine.

23  This case involves civil damages liability to private victims, not to the government, and

24  therefore does not implicate the Eighth Amendment.  The court therefore rejects this

25  constitutional challenge.

26
27  **2.    Whether a $150,000 damages provision violates Fifth Amendment Due Process principles of the proper ratio of punitive to actual damages**

28  Defendant argues that the statutory minimum or liquidated damages award of

9

$150,000 for violation of child pornography statutes violates the Fifth Amendment's Due Process requirement of "proportionality" between civil penalties and actual damages. Defendant cites a string of cases regarding the disproportionality of punitive damages awards, arguing that a civil penalty of $150,000 is disproportionate to his offense of "simple possession" of CSAM.  See, e.g., State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408, 416 (2003); BMW of North America, Inc. v. Gore, 517 U.S. 559, 580-84 (1996).

Defendant's reliance on these cases is also misplaced. These cases involve the invalidation of punitive damages awards in addition to and far exceeding the compensatory damages awards involved.  But the statutory damages involved here are only compensatory, not punitive.  Describing a minimum statutory award as a "penalty" (as defendant does repeatedly) does not transform that award into punitive damages subject to the same test of proportionality owed under the Fifth Amendment.  Therefore, Section 2255 does not violate the Fifth Amendment's Due Process clause.

### 3. Whether the statute is void for vagueness, both facially and as applied

Defendant argues that Section 2255 is void for vagueness, both facially and as applied to this case.  The "void-for-vagueness" doctrine is rooted in due process principles.  Nunez v. City of San Diego, 114 F.3d 935, 940 (9th Cir.1997).  The relevant inquiry is whether the law is "'so vague and indefinite as really to be no rule or standard at all,' or whether a person of ordinary intelligence could understand" what the law requires.  Fang Lin Ai v. United States, 809 F.3d 503, 514 (9th Cir. 2015) (quoting Boutilier v. Immigration & Naturalization Serv., 387 U.S. 118, 123 (1967)).  "Courts 'apply the void-for-vagueness doctrine outside of the First Amendment context only rarely.'" Prime Healthcare Services, Inc. v. Harris, 216 F.Supp.3d 1096, 1124 (S.D. Cal. 2016) (quoting American Iron & Steel Inst. v. OSHA, 182 F.3d 1261, 1277 (11th Cir. 1999)). The vagueness inquiry is less strict in the civil context and where the law does not inhibit the exercise of constitutionally protected rights. See United States Telecom Ass'n v.

United States District Court
Northern District of California

1    F.C.C., 825 F.3d 674, 736 (D.C. Cir. 2016); Vill. of Hoffman Estates v. Flipside, Hoffman

2    Estates, Inc., 455 U.S. 489, 498-99 (1982).

3         Defendant argues that Section 2255 is vague as to (1) who may sue him, (2) the

4    predicates for such a person to sue, and (3) the basis for identifying him as a person who

5    may be sued.  He cites to one of the court's earlier orders highlighting some of the

6    ambiguity in the statute, particularly that the statute's language was unclear as to who a

7    victim may sue.  See Dkt. 42 at 5:22-6:1.  The cases defendant relies upon all involve the

8    government taking punitive action against an individual.  See Sessions v. Dimaya, 138

9    S.Ct. 1204 (2018) (involving immigration removal proceedings); Johnson v. United

10   States, 576 U.S. 591 (2015) (involving sentencing for being an armed career criminal in

11   possession of a firearm).  Defendant does not clearly distinguish between his facial and

12   as-applied challenges to the statute.  He argues that plaintiffs' arbitrary enforcement of

13   Section 2255 (revealed by plaintiff Violet's lack of knowledge regarding the suit, some

14   group of these plaintiffs' agreement to split a settlement in an entirely separate case, and

15   plaintiffs' financial motives) is similar to the government's arbitrary enforcement of

16   punitive measures involved in Dimaya and Johnson. Plaintiffs push back that Section

17   2255 is not facially vague as was the statute in Dimaya because 2255 includes a clear list

18   of the statutes proscribing the criminal conduct underlying civil liability.  Further, they

19   argue, the vagueness analysis in a civil action for liquidated damages does not require

20   the same level of scrutiny compared to statutes that implicate civil liberties.

21        Defendant's argument regarding vagueness seems to suggest that, had he known

22   of the civil liquidated damages available to victims under Section 2255, he would not

23   have engaged in the criminal activity underlying victims' claims here.  It is true, this court

24   has acknowledged some ambiguity in the language of the statute. Dkt. 42 at 5:22-6:1.

25   But there is not so much ambiguity that there was no standard for defendant to bring his

26   behavior within the boundaries of the law.  There is not so much ambiguity that defendant

27   was unaware he may be liable to victims for civil damages.  Particularly when viewed with

28   the lesser scrutiny owed to civil statutes that do not implicate "the exercise of

United States District Court
Northern District of California

constitutionally protected rights," Section 2255 is not unconstitutionally vague.  The court

rejects this constitutional challenge as well.

### 4.   Whether the 2018 amendments to the statute amount to a bill of attainder against defendant

Defendant alleges that the 2018 amendments to Section 2255 amount to a "bill of

attainder" against him, particularly arguing that James Marsh, counsel for some of the

plaintiffs in separate matters, successfully lobbied Congress for the amendment of

statutory minimum damages to liquidated damages after learning of defendant's criminal

plea.

A bill of attainder is a "law that legislatively determines guilt and inflicts punishment

upon an identifiable individual without provision of the protections of a judicial trial."

Nixon v. Administrator of General Services, 433 U.S. 425, 468 (1977).  To be viable, a bill

of attainder claim needs three ingredients: "[1] specification of the affected persons, [2]

punishment, and [3] lack of a judicial trial."   Selective Serv. Sys. v. Minn. Pub. Interest

Research Grp., 468 U.S. 841, 847 (1984).  Further, the Supreme Court has also

identified the following "necessary inquiries" that would indicate whether or not a

particular law inflicts "punishment" in this context: "(1) whether the challenged statute falls

within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in

terms of the type and severity of burdens imposed, reasonably can be said to further

nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a

congressional intent to punish.'"  Id. at 852 (quoting Nixon, 433 U.S. at 473, 475-76, 478);

see also Fowler Packing Co. v. Lanier, 844 F.3d 809, 816-18 (9th Cir. 2016).

First, no part of Section 2255 or the remainder of its statutory scheme specifies

defendant to single him out for punishment, as is necessary to constitute a bill of

attainder.  Second, as described above, the statutory minimum civil damages permitted

under Section 2255 is meant as compensation to victims, not as a fine or other

punishment owed to the government.  These statutory damages can reasonably be said

to further the nonpunitive legislative purpose of compensating victims and permitting

them to pursue their claims without subjecting themselves to potentially re-traumatizing damages hearings.  Boland, 698 F.3d at 882 ("The point of a minimum-damages requirement is to allow victims of child pornography to recover *without* having to endure potentially damaging damages hearings. . . . Congress could rationally conclude that all children depicted in [] pornography are seriously injured and deserve a high threshold amount of damages") (emphasis original, internal quotations omitted).  Section 2255 fits within a larger scheme of criminalizing and penalizing the production, transfer, and possession of CSAM; however, the legislative record that focuses on this particular provision reveals a focus on compensation for victims of child sexual abuse.  See 164 Cong. Rec. S589-02, 164 Cong. Rec. S589-02, S590 ("[T]he bill strengthens the law that allows victims of sex abuse to file suits against those who abused them to commit crimes such as sex trafficking, sexual exploitation, and child pornography. It clarifies, for example, that victims of child sex crimes are entitled to statutory damages of $150,000, as well as punitive damages, due to the heinous nature of the crimes." (Statement of Sen. Feinstein)).  Lastly, defendant does not lack the opportunity for a judicial trial.  He remains actively engaged in the present litigation.  Because none of the elements are met, the court rejects defendant's argument that Section 2255's 2018 amendments amount to a bill of attainder against him.

## CONCLUSION

For these reasons, including the applicability of liquidated damages to plaintiffs' claims and the court's rejection of defendant's constitutional challenges, the court DENIES defendant's motion for judgment on the pleadings, or in the alternative summary judgment or summary adjudication.

**IT IS SO ORDERED.**

Dated: March 8, 2021

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge