Pages 1 – 39

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**Before The Honorable PHYLLIS J. HAMILTON, Judge**

| | | |
|---|---|---|
| "AMY," ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | No. C-19-2184 PJH |
| | ) | |
| vs. | ) | Thursday, February 25, 2021 |
| | ) | |
| RANDALL STEVEN CURTIS, | ) | Oakland, California |
| | ) | |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

**REPORTER'S TRANSCRIPT OF ZOOM PROCEEDINGS**

**APPEARANCES:**

For Plaintiffs:               CARPENTER ZUCKERMAN & ROWLEY
                              407 Bryant Circle, Suite F
                              Ojai, California 93023
                         **BY:   JOHN A. KAWAI, ESQUIRE**

                         **CAROL L. HEPBURN, ESQUIRE**
                              P.O. Box 17718
                              Seattle, Washington 98127


For Defendant:                COLEMAN & BALOGH LLP
                              235 Montgomery Street, Suite 1070
                              San Francisco, California 94104
                         **BY:   ETHAN A. BALOGH, ESQUIRE**


Reported By:                  Diane E. Skillman, CSR 4909, RPR, FCRR
                              Official Court Reporter

        TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

| | |
|---|---|
| 1 | Thursday, February 25, 2021                    2:05 p.m. |

2                    P R O C E E D I N G S

3                           o0o

4           THE CLERK:  Calling Civil case 19-2184 PJH, Amy, et

5    al. versus Curtis.

6        Counsel in this case, please raise your hand.

7           MR. KAWAI:  Good afternoon, Your Honor.  John Kawai

8    for plaintiffs.

9           THE COURT:  Good afternoon.

10          MR. KAWAI:  Carol, you are muted.

11          MS. HEPBURN:  Sorry.  Good afternoon, Your Honor.

12   Carol Hepburn for plaintiffs.

13          THE COURT:  Good afternoon.

14          THE CLERK:  Mr. Balogh, can you please start your

15   video?

16          MR. BALOGH:  I am trying to do that now.

17       Good afternoon, Your Honor.  Ethan Balogh.  At least I'm

18   not a cat.  Let me see if I can figure out how to fix this.

19   I'm having some trouble.  Pardon me for a second.

20                   (Pause in the proceedings.)

21          THE COURT:  There should be a little camera on the

22   bottom left --

23          MR. BALOGH:  Got it.  Thank you, Your Honor.  Thank

24   you very much.

25          THE COURT:  Okay.

1          **MR. BALOGH:**  Good afternoon, again.  Ethan Balogh on

2     behalf of defendant Randall Curtis.

3          **THE COURT:**  All right.  Good afternoon.

4     All right.  I only have until 3:00 o'clock so -- so I

5     would like us to focus on the issues that I need to decide.

6          You inundated me with paper.  I'm not sure what to make of

7     all of this paper, and I don't really understand the

8     plaintiffs' filings.  I have a hard time navigating our own

9     dockets just trying to find everything.

10         But it appears that most of what I am looking for is in

11    Docket 139-4.  I think that's where most of the evidentiary

12    support is.

13         We have two motions pending:  Motion for Summary Judgment

14    filed by plaintiffs and a Motion for Judgment on the Pleadings

15    filed by the defendant.  Let's start first with the Motion for

16    Summary Judgment.

17         Putting aside the evidentiary objections that Mr. Balogh

18    has raised -- I'll let him spend his time on those if he

19    wishes to do that -- but with regard to my questions of

20    plaintiffs on your motion, it's not entirely clear to me what

21    you all think needs to be proven in this case.  To me, it

22    looks -- it's fairly straightforward, but I have all these

23    various different lists and different showings, and I'm just

24    not entirely clear what you think needs to be shown.

25         I think what needs to be shown in this case, under the

1      statute, it's under the statute, you've got a predicate

2      violation of 2242, which Mr. Curtis entered a plea of guilty

3      to and which gives rise to this claim, and the person has

4      to -- the plaintiff has to show that they were a victim of a

5      violation of one of these sections.  And the section is 2242

6      in this case, and that seems to me to be -- particularly since

7      the damages question has been taken out of the case by the

8      amendment of the complaint and the withdrawal of the request

9      for punitive damages.  Seems as though the plaintiffs have

10     elected to stand on just the liquidated damages which are

11     afforded by the statute.  So without the damages portion in

12     the case, the question is whether or not the person, while a

13     minor, was a victim.

14         Okay?  That has a component of identity whether or not

15     we're talking about child pornography, right?

16             **MS. HEPBURN:**  Yes.

17             **THE COURT:**  What you need to establish is that each

18     of the 15 plaintiffs was a victim of this child sexual abuse

19     which gave rise to, which enabled the manufacturer of the

20     pornography, pornographic images, still or video, right?  That

21     those images, because this is a possession and transportation

22     that Mr. Curtis pled guilty to, that those images were on his

23     computer.  Okay?

24         Now, I don't understand a lot of how you all have, in the

25     chart that you provided in the reply brief to the Motion for

1  Summary Judgment, I am just not exactly sure how I come to

2  that determination because as part of that calculus, the image

3  itself has to fit within the definition of child pornography.

4      **MS. HEPBURN:**  Yes.

5      **THE COURT:**  Which doesn't necessarily mean sexual

6  activity.  It has to be pornographic in nature.

7      **MS. HEPBURN:**  Yes.

8      **THE COURT:**  Okay?

9      So it has to be the plaintiffs in a pornographic image

10  that's found on the defendant's computer.

11      **MS. HEPBURN:**  Yes.

12      **THE COURT:**  That's it.  Okay.

13      So, this -- the expert that you use, Mr. Laws, I'm not

14  exactly sure what he did, so I need a further explanation.

15      **MS. HEPBURN:**  Sure, Your Honor.

16      **THE COURT:**  Is -- his job was not to identify the

17  plaintiffs.  There's all this discussion about who he knew, he

18  can look at the picture and tell that's them as an adult.

19  That's not his job.

20      As far as I can tell, his job was to conduct a forensic

21  analysis and to determine if certain series, which all have

22  names, were on the defendant's computer.

23      My question is, does the existence of the series on

24  Mr. Curtis' computer necessarily require the conclusion that

25  the individual plaintiffs' images were on the computer?

1    Are they -- is it synonymous with having the plaintiffs'

2    image if the series is on the computer?  I mean, you've got 15

3    plaintiffs.  That's 15 images on one computer.

4    Why is it so -- it should not be difficult to establish if

5    there are -- if there's one image of each of these plaintiffs

6    that's pornographic in nature on Mr. Curtis' computer.

7    I have seen a number of these series previously in person.

8    I mean, I handle child pornography cases on my criminal

9    docket.  I am familiar with some of these.  I mean, once you

10   have seen them, you don't really forget them.  So I know

11   that -- but I have no idea if I've actually seen any of these

12   particular plaintiffs.

13   So how do you prove -- how are you expecting to prove

14   this?  What in this very, very dense record will point me to

15   exactly what I need, which is, an image for each plaintiff

16   that's pornographic in nature and was found on the defendant's

17   computer?

18          MS. HEPBURN:  Your Honor has mentioned the chart that

19   we put in the reply brief, and that is the shortcut to this.

20   And we believe that we have submitted more than Your Honor

21   needs.

22   I certainly agree with the elements that you've set forth

23   there.  And a number of the difficulties and perhaps the

24   reason that we have overdone it, if we have in this case, is

25   because of the constraints of dealing with contraband.  And

1    also because, Your Honor, this is the first case in the

2    country, I do believe, in which we have brought to court --

3    anyone has brought to court, plaintiffs who have exercised

4    their right under the new statute 18 U.S.C. 3509(m)(3) that

5    was passed December of 2018 which provided victims the

6    opportunity to view their own images or to send in a

7    representative to view their own images in a criminal case.

8         This has never been done before.  Agent -- Retired Agent

9    Laws did allude to that in his reply declaration when he said

10   we had to go to Homeland Security and develop a protocol

11   because they weren't just going to turn over the evidence in

12   the case to me.

13        So the link that we have is the case agent, Agent Jason

14   Popper, has provided under that statutory procedure the clone

15   of the materials taken from Mr. Curtis.  There were several

16   USB drives.  These are all listed in the criminal

17   investigation report that Mr. Curtis' lawyers got during the

18   criminal case discovery and which was then produced by

19   Mr. Curtis to us in our civil discovery, and this correlates

20   with the identification of the materials which were provided

21   by Agent Popper to retired Agent Laws.

22        And Retired Agent Laws, then using law enforcement grade

23   software, looked at these materials on a dedicated forensic

24   laptop and found himself, via hash value and identifying file

25   names, the images of a number of these series; not all of

1    them.  And despite all the sermon drama about whether Agent

2    Laws is -- Retired Agent Laws is credible, I would submit that

3    the fact that he didn't say I found each and every image is an

4    indicia of credibility, Your Honor.

5        But he did that.  And then he also got after that

6    evidence, review sanitized images because, of course, we can't

7    have the unredacted images.  And we showed those to our

8    clients who were up for looking at them.  Because remember,

9    this is an injurious process.  And they have provided to Your

10   Honor their own identification of themselves saying, yes, I

11   was sexually abused.  I was -- I understand my images are

12   labeled as the "Vicky Series," the "Lighthouse One Series," or

13   whatever, and that's me in that picture.  So that's another

14   level of proof we provided you.

15       We've also provided the Court with the declarations of the

16   law enforcement points of contact.  Now, these are the men and

17   women in law enforcement who were largely among those teams

18   that rescued these kids when they were still being abused and

19   they met the children.  Some of them have kept in touch with

20   them.  They have, since that time, been called upon multiple

21   times to testify in courts of law identifying the image,

22   testifying to the name and the birthdate.  Certainly some of

23   these have come before Your Honor in trials on child

24   pornography cases.

25       We showed the redacted images to those points of contact,

1      and as you indicated, once you've seen these images, you don't

2      forget them.  And they identified the images, they identified

3      the plaintiffs.  They testified to the sexual content which

4      goes to the other element Your Honor mentioned we need, which

5      we certainly acknowledge, that there must be a pornographic

6      content to this, and our chart speaks to that.

7          We don't --

8               THE COURT:  There are two that don't, Jessica --

9          MS. HEPBURN:  Yes.

10              THE COURT:  -- doesn't speak to that.

11         MS. HEPBURN:  Yes, Your Honor.  And also I think

12     Erika and Tori is in doubt as well.

13              THE COURT:  Right.  So there are two for -- that

14     particular element is missing in what you've given me.

15         MS. HEPBURN:  And so we ask the Court to allow us to

16     subpoena Case Agent Popper to bring those images to the Court.

17     Certainly we know we don't have a right to live testimony on a

18     motion without Your Honor allowing that, but, again, the

19     constraints of dealing with a case that involves contraband

20     require us to make do as best we can and to ask the Court if

21     we can take this extra step to have the case agent bring the

22     images to Court so Your Honor can unfortunately look at them

23     and see the genitals in the picture and determine that what is

24     depicted is, in fact, pornographic.

25              THE COURT:  I would consider that.

1          MS. HEPBURN:  Because none of these plaintiffs have

2     control or the ability to make that element in each and every

3     circumstance.  And these are innocent young women, and they

4     should not be deprived of the opportunity to make that

5     element.

6          You have abundant evidence of identification, I would

7     submit, and so then with the additional element of sexual

8     activity, we should be shown to have brought to the Court

9     enough to make the summary judgment.

10         I can speak a little bit to some of the particular issues

11    that Mr. Balogh raises if Your Honor wishes.

12              THE COURT:  We have time.

13              MS. HEPBURN:  Okay.

14         I think all of his complaints about lack of disclosure or

15    timely disclosure are really a false flag because he can't --

16    he has no defense to the substance of a plaintiff or a parent

17    coming in and saying, yes, that is me in that redacted image,

18    that's my child.

19         And we had provided Your Honor with yet another chart in

20    the Exhibit 5 to the declaration of my paralegal, Michelle

21    Sparks, which gives you chapter and verse on the production of

22    all of the documentation that we provided, which is quite

23    ample and which provides a lot of this contact information,

24    the identification, includes law enforcement points of

25    contact.

1        I would note that defendant himself listed a number of

2   the -- listed all the plaintiffs and the parents in his own

3   initial disclosure, and I would say that this case has had a

4   bit different posture with the discovery issues brought up.

5   And I would point out that within two days of this Court's

6   order on October 26th, 2020, which narrowed down the discovery

7   issues and framed more precisely the issues, we submitted a

8   supplemental initial disclosure which provided all of the

9   information which had previously been provided in a different

10  form, but then set it forth in the initial disclosure.

11       I would also note that defendant complains in this setting

12  of discovery issues.  And these are issues for which he did

13  not largely ask for a meet and confer, did not bring to the

14  Court to request some help.  We haven't had an opportunity to

15  work anything out in terms of a remedy.  There's been no

16  request for the depositions of the law enforcement points of

17  contact.  The last ditch written discovery which defendant did

18  serve us with was about getting correspondence or documents

19  exchanged with Congress about amendment of the statute.  So

20  that was the issue he was pursuing, not the issues that he

21  complains about today.

22       We have cited to the Court the *Liaw* -- if I am pronouncing

23  that right, spelled L-I-A-W, case out of the Northern District

24  and also *IBM versus Fasco* which make clear that the very

25  drastic remedy of striking testimony is the last ditch thing

1      that should be considered.  And there are many other things

2      which might be considered before that as a remedy to a

3      situation.  Which, again, we haven't had a chance to work with

4      defendant and try and figure something out.

5          In particular, defendant complains about the law

6      enforcement points of contact.  He claims falsely that we

7      didn't include them in our expert disclosure.  We did, in

8      fact, and we provided that to Court.  A copy of our expert

9      disclosure and exhibit to the declaration of Michelle Sparks,

10     the paralegal, shows that we did disclose the law enforcement

11     points of contact as experts.

12         We did that out of an abundance of caution because, just

13     like you might disclose a treating physician in a case,

14     because they are a doctor, they might get asked a medical

15     question at the time of trial.  You never know, but, you know,

16     the points of contact are really testifying based upon their

17     observations and personal experience, rescuing the children,

18     knowing the children, seeing the images, testifying in the

19     intervening years about the images; therefore, the images are

20     in their memory so they can identify them for the Court here

21     today.

22         And then some have kept in touch with the victims and have

23     seen them grow up, and have that basis for identification as

24     well.  And they all speak to their name and dates of birth,

25     Your Honor.

1        That is the gist of my presentation.  I would also point

2   the Court in terms of the hearsay objections of counsel to

3   Federal Rule of Evidence 807 which talks about the elements of

4   what are the reasonable efforts of the proponent of the

5   evidence and what are the indicia of reliability in this

6   situation.

7        One of the things that defendant complains about is

8   Mr. Laws' reliance upon the assertion of Case Agent Popper

9   that these are images that came from Mr. Curtis' computer.

10  Well, the indicia of reliability is that we have gone through

11  a statutory procedure.  We worked out a protocol with Homeland

12  Security.  Agent Popper is the case agent as shown in the

13  criminal report, and the file references of the media are the

14  same, the SanDisk Cruzer, the Transcend USB Drive, these are

15  all the same.

16       And, really, this is the most reasonable effort that

17  plaintiffs could do in this regard when they cannot possess

18  the evidence.  When we have a case where counsel can't possess

19  a photograph of the evidence, can't show a witness the

20  evidence, I can't call the agents and say, hey, bring that

21  over to my office and let's work with it.

22       So given the contraband nature of the case, not only is

23  this the most reasonable effort that plaintiffs could make,

24  it's really the only effort that they could make to deal with

25  the contraband.

1     So in light of that, I think the evidence that we provided

2     the Court -- perhaps it's too much.  I'm sorry, but, again, we

3     didn't have a template for how to present this to the Court.

4     We do believe it's sufficient.

5          Thank you.

6          **THE COURT:**  The defendant, though, argues that there

7     is a lack of contraband confirmed on the defendant's computer

8     for 9 of the 15 plaintiffs.

9          **MS. HEPBURN:**  He is saying that Agent -- Retired

10    Agent Laws did not identify those, but for those victims, we

11    have the identification through the redacted images by the

12    plaintiffs themselves, by the parents, by the law enforcement

13    POCs.  So that number refers to Agent Laws' -- Retired Agent

14    Laws' testimony, Your Honor.

15         **THE COURT:**  Okay.  All right.

16         Mr. Balogh.

17         **MR. BALOGH:**  Good afternoon, Your Honor.

18         I'll start with the last point because it's just

19    incorrect.  The way to get the testimony would have been to

20    subpoena on Agent Popper, supply a letter pursuant to

21    regulations setting forth the bases of the need for law

22    enforcement testimony, cite to 3509 and the need for law

23    enforcement testimony.  Have him attend a deposition.  Take an

24    oath.  Prepare -- answer questions, identify the information

25    they want to later rely on, subject him to cross-examination,

1    and then you have prior testimony which is not subject to the

2    hearsay rule at this stage of the proceedings.  And they could

3    have relied on that to prove their case.  Instead they did

4    something different.

5        And the second part of that answer, I will add, is they

6    suggest it was a timing problem.  And they cite that the

7    Statute 3509 was amended in 12/18.  Before that time they

8    already raised claims against Mr. Curtis without reviewing any

9    of the documents, without doing any pretrial investigation.

10   They have letters in there they claim each of them is owed

11   this money.

12       And when they disclosed Agent Popper in April of '19 --

13   excuse me, Agent Laws, Retired Agent Laws in April of '19, he

14   waited almost a year before he had his first contact with HSI.

15   So any delay is on them by how they decided to proceed in the

16   case.

17       Let me go back to the beginning now and further clarify

18   that, because that's how you prove this case.  And I think a

19   big part of this case is based on two things:  One is an

20   education.  Fortunately enough for plaintiffs, because as you

21   know, in every other case, the defendant in a criminal --

22   preceding criminal prosecution, usually stipulates to

23   restitution and agrees that the claimants, some who are

24   plaintiffs were, in fact, victims.

25       This is the only case of all the cases that these

1    plaintiffs have brought where that was not the case.  And the

2    reasons are rather obvious.  They sent a threatening letter to

3    Mr. Curtis before the restitution stage in the criminal case,

4    and that resulted in a stipulation where the proof that they

5    needed was not given in the case, the need to obtain here;

6    they delayed in that.

7        Let me go to your first question.  The first thing you

8    asked her, Your Honor, is if a series is on his computer, does

9    that answer the question.  And the answer is no.

10       Series are comprised of multiple images.  Any they all

11   have varying numbers.  Some of them are pornographic, others

12   are not pornographic.  And Mr. Laws testifies to this at his

13   deposition.  He found one picture where he determined it

14   wasn't a pornographic picture.  I think that's Sally who you

15   were mentioning.

16       So possession of a photograph doesn't mean possession of

17   child pornography.  And Mr. Curtis is alleged to have had a

18   subset of certain series.  Not the entire series, not every

19   piece.  It's whatever he downloaded and maintained on his

20   computer.  Some of those may be child porn.  Some of them

21   certainly are child porn.  Not necessarily of these

22   plaintiffs, but they supported the conviction because he plead

23   guilty to possessing and transporting child pornography.

24       But having a name series picture with nothing more doesn't

25   answer the question.

1      The second point I'll make is, I respect and disagree with

2  you, as Mr. Laws testified, the plaintiffs told him his job

3  was to identify the plaintiffs.  And before he contacted HSI

4  to arrange for a view, the first pass while he delayed that

5  task was to travel throughout America and to meet the

6  individual plaintiffs.  He went to Canada to get photographs

7  of them, and to try to obtain their identity.  That's what he

8  testified his retained expertise was for and that's what they

9  disclosed him as an expert for in part.

10     What he also testified to, as my colleague just conceded,

11  is that for nine of these plaintiffs, he could not locate any

12  images of them on Mr. Curtis' media.  Full stop.  And that's

13  what's going to cause the late disclosure later because they

14  didn't anticipate that he would fail in what they thought he

15  would be able to achieve.  So for those nine, he wasn't able

16  to identify that he had any images on there.

17     That relates to the nature of the identification

18  testimony.  His expertise is as a lay witness.  And under

19  *Gadson*, he is not allowed to testify based on hearsay.  He

20  can't testify that Popper told me these images were located in

21  a certain place.  That's not permitted by black letter Ninth

22  Circuit law which the Court is obligated to enforce.

23     One of the things Ms. Hepburn said is he found the hash

24  values.  That's not completely accurate.  His testimony at

25  deposition, and as Your Honor knows, we submitted the entire

1    deposition, is that he created his own hash values over time

2    to help identify plaintiffs in this case.  But those weren't

3    confirming hash values, that's him proposing that these hash

4    values were matched.  But even then, he says he found six

5    plaintiffs on there and he contended that all six were child

6    pornography.

7         With respect to two of them, we have shown you -- and this

8    is a good example that one of them, I believe it's Sally, we

9    have the picture for you.  I can give you the page number.

10   She's -- it's not a pornographic image.  It's a child in a

11   tub.  This picture may be shown, the sanitized version, as

12   Laws' declaration -- the citation is, Laws' declaration

13   Exhibit 58.  That's contained in my -- in the declaration I

14   filed.

15        And the picture of Violet, there's another picture of

16   Violet where it's a closer call, but she's dressed.  And it is

17   unclear whether it meets the statutory definition of engaging

18   in sexually explicit conduct, and sexually explicit conduct

19   that has a specific definition, and that's 18 U.S.C.

20   2256 (2)(B)(8)(A).

21        So even for those six, two of them are in question, but

22   then for the other nine, he didn't locate them anywhere.  When

23   you get back to his declaration -- actually I should go there

24   now.

25        The most important part of his declaration is

1    paragraph 11, Your Honor, when he couldn't find the nine

2    girls -- now most of them are women, adults.  He -- they set

3    out to do this work around.  And I will read the declaration

4    because I think there's follow-up questions for plaintiffs

5    because I think it misleads.

6        First sentence.  "As part of my work on this charge, and

7    after my time -- after the time of my review of the evidence

8    in July 2020, HSI Group Supervisor Christina Barfuss emailed

9    me a series of heavily redacted images.  The file names on the

10   redacted images correspond to a number, but not all, of those

11   images viewed by me in the course of my evidence review in

12   that matter."

13       So it's intentionally vague.  What it means is, how it was

14   named by Barfuss matches some of the files, images he read.

15   No more, no less.

16       The next sentence.  "The file names of the redacted photos

17   correspond as well to file names listed in the NCMEC report

18   for the various sets."

19       Again, intentionally vague.  It doesn't establish that

20   each of these images were on his computer.  Mr. Barfuss isn't

21   claiming that, and it doesn't allege that each of these images

22   contains child pornography.

23       The last sentence:  "These redacted images depict all

24   victim (sic) discovered on the seized digital media from

25   Curtis and related to my examination."

1          Again, it's saying -- first of all, the foundation of how
2     it depicts all victims when he's testified under oath and the
3     reports say under oath that he couldn't identify 9 of the 15.
4     So it appears that he's -- he was citing Barfuss' claim but
5     even that is unclear and doesn't establish that these images
6     are child pornography and these images are child pornography
7     of the plaintiffs in this case.
8          The last part is he describes the folders they were sorted
9     into and each folder contained at least one redacted image
10    from the respective child exploitation series.  Again, it
11    doesn't establish that those were from his computer or they
12    were child pornography, and then he lists the series.
13         So, respectfully, that's all the dodge that's designed to
14    avoid addressing clearly, which they should have done in their
15    Motion for Summary Judgment, of he didn't find 9 of the 15.
16    If you want to talk about credibility and candor with the
17    Court, you address it forthright and say here's the problem
18    and here's how we developed evidence to prove otherwise.  They
19    didn't do that.
20         And a closer review of Paragraph 11, key paragraph, shows
21    he cannot establish and does not establish sufficient to
22    require summary judgment at this stage.  And he hasn't -- he
23    hasn't made all the predicate facts there such that they can
24    be accepted by the Court.
25         The next thing I want to talk about, if I may, Your Honor,

1    is I think plaintiffs' counsel doesn't understand our

2    objections.  This case is not -- we are not asking for

3    terminating sanctions, we are not asking for sanctions at all.

4        Rule 37(c)(1), Federal Rules of Civil Procedure, is

5    required to be enforced under *Yetti by Molly* and *Hoffman*.  And

6    that case says, if you don't timely disclose witnesses and

7    evidence you're going to use to let your opponent develop his

8    or her discovery plan they're barred from any motion for any

9    trial.  Full stop.

10       These aren't terminating sanctions at all.  What

11   Ms. Hepburn has said, we made these disclosures two days after

12   we got your order.  But that's not the -- more important, it

13   was the day before the discovery deadline.  There was no way

14   on God's green earth that receiving this list of 32

15   witnesses -- they even buried the POCs in there, they only

16   relied on six of them, they disclosed 32; that I could have a

17   discovery plan in response to it.

18       It is not my responsibility to ask for an extension of

19   time.  It was not my responsibility to ask for a revised

20   schedule.  The Court had revised the schedule once.  And I

21   believe this Court's comment at the Case Management Conference

22   was, it wouldn't reset trial dates except for extraordinarily

23   good cause.  That wasn't my job.  They were worried about my

24   objection or Rule 37, which is clear on its face.  They could

25   have said, we just got this discovery order, we want to change

1    the order.

2        They were perhaps hopeful that I wouldn't raise the

3    objections I've raised, but these aren't terminating

4    sanctions, and the cases they cite about sanctions are

5    inapposite.  This is straight forward application of

6    Rule 37(c)(1) which *Yetti by Molly* and *Hoffman* and the Ninth

7    Circuit say are enforced strictly self-executing rules that

8    are designed to do this.

9        At the end of discovery, after I've spent my money on the

10   case and developed my case, I was informed of 32 witnesses and

11   a host of documents that the plaintiffs think I should have

12   been able to have -- issue more discovery and issue on.

13       One thing they've said, and I will quote this to you, in

14   the discovery motion, which we did file, it's pending before

15   your Court -- which are pending before this Court, the

16   Magistrate Judge declined to give effect to their waiver by

17   failing to respond timely.  They just ignored it.  So we

18   contend it's a waiver.

19       Equally important is plaintiffs' argument, and this is

20   Document 160 at page 4 where they argue that you can't serve

21   discovery that is not going to be -- if the answer doesn't

22   come due before the discovery deadline.

23       And so by their -- forgetting their waiver, their position

24   in this case is, even though they served this discovery

25   October 28th, the Ninth Circuit case law says I could not have

1    filed interrogatories for that, I could not have sought

2    depositions for that.  I can do nothing.  This is their

3    argument.

4           **THE COURT:**  Mr. Balogh, I think the rule is you can't

5    propound discovery.  You can't -- without there being

6    sufficient time, you cannot, for instance, serve a set of

7    interrogatories for which an opposing party gets 30 days to

8    respond if you do so in fewer than 30 days before the close of

9    discovery.

10       I don't think there's a corresponding timeline on

11   supplementing your disclosures.

12          **MR. BALOGH:**  The rule says -- I've said that.  You're

13   making my point for Your Honor.

14       The day before discovery closed, they served me notice of

15   32 new witnesses and identified new document (sic).  I could

16   not, in that 24-hour period, when the next day I had a Ninth

17   Circuit brief due, and under the case law you just cited to

18   me, I couldn't do anything about those 32 witnesses.  It was

19   too late.  The barn door had closed.

20          **THE COURT:**  Did you not serve discovery at the end of

21   discovery as well?

22          **MR. BALOGH:**  I did, and they didn't respond.

23          **THE COURT:**  Okay.  So you are both in the same

24   position.  You didn't --

25          **MR. BALOGH:**  No, we are not in the same -- because

1    I'm not -- this motion is about Rule 37.  And Rule 37 says if

2    you don't timely disclose witnesses or exhibits, you cannot

3    rely on any of those witnesses or any of those exhibits at any

4    motion --

5            THE COURT:  How are you contesting that Rule 37

6    describes timely disclosures?  They have an ongoing duty to

7    supplement any prior disclosures up to the time of trial.

8    They are required to disclose whenever it becomes unknown to

9    them.

10       So what are you -- where is the rule that defines that

11   their disclosures were untimely?

12           MR. BALOGH:  Well, just what you said.  The point of

13   the disclosures is timely so the opposing party may conduct

14   discovery with respect to those disclosures.  And disclosing

15   something --

16           THE COURT:  That doesn't -- that's not the rule.

17           MR. BALOGH:  I would --

18           THE COURT:  That is not the rule.  That's not the

19   rule.  The rule I was talking about is for -- is for

20   discovery -- that rule applies to discovery requests.

21           MR. BALOGH:  Right.  I understand that.

22       My point is, if you served -- if you give notice of

23   witnesses and documents at a time I can't depose them, seek

24   the documents, or propose interrogatories, that is not timely.

25   I can't do anything about them in the disclosures.  I've been

1    blocked out.

2         THE COURT:  Okay.  Okay.  I understand your argument

3    now.

4       You should move on.  You don't have much time left.

5         MR. BALOGH:  That's -- I respectfully suggest the

6    Court read *Hoffman* -- *Yetti by Molly* and *Hoffman* which say

7    exactly what I'm saying.  They would have to come back and

8    show substantial justification for their late disclosures, and

9    no prejudice to the defense.  And the fact that I could not --

10        THE COURT:  What's the -- what is the section of

11   Rule 37 that you are relying on?

12        MR. BALOGH:  Federal Rule of Civil Procedure

13   37(c)(1).

14        THE COURT:  (c)(1)?  Okay.  I'll take a look at that.

15      Go ahead.

16        MR. BALOGH:  And then the last thing I'll say,

17   obviously I respectfully -- I think the Court's answer says,

18   the damages question was resolved, and I don't think that's

19   true.  They are trying to enforce the statute that's not

20   retroactive.

21      So the statute that applies to Mr. Curtis is a statute

22   that was in effect at the time of his conduct, and that

23   statute requires a showing of actual damages under *Chao v.*

24   *Doe* -- excuse me, *Doe v. Chao*.  That's a Supreme Court case

25   which was then followed up by *FAA v. Hoffman*, another Supreme

1   Court case that says exactly that.

2       And because the statute is not retroactive, they can't

3   apply the new statute to us.  This Court previously addressed

4   the personal injury prong of the statute, but no one has

5   briefed the actual damages prong until this point.  And they

6   have to prove actual damages under *Doe v. Chao*.  And by

7   failing to plead them before we get to my motion, that's a

8   problem for them.

9       I want to talk -- let me take one look.  I think that

10  might be my responses to them.  I -- the last thing I will say

11  is, they say that -- they disclose the POC witnesses as

12  experts.  I guess my objection wasn't clear enough.

13      That's true, when they amended the statute, amended their

14  disclosures, before they gave that information, they were

15  potential experts, but then there was an expert disclosure

16  date of November 30th to produce expert reports whereby the

17  parties would actually identify and provide the reports for

18  expert discovery.

19      Every expert that was disclosed and report served was

20  deposed by the other side.  None of these persons was

21  disclosed in that way.  We didn't get expert reports from any

22  of them.  So we -- that showed us that these were not experts

23  for trial because they weren't -- they didn't produce expert

24  reports.

25      So it is, again, incorrect to suggest I had a duty to

1  depose as experts persons for whom they did not provide expert

2  reports.  By deciding not to provide expert reports, they

3  signaled to the defense we will not be using them as experts

4  at trial.  But once they didn't do that, they cannot smuggle

5  in lay opinion testimony and they can't have witnesses based

6  on hearsay because hearsay is barred.

7      They complained that at Summary Judgment I'm objecting to

8  evidence to avoid a finding of Summary Judgment, and that's

9  exactly what the rules contemplate a lawyer is supposed to do.

10  To obtain Summary Judgment, they have to offer evidence in

11  conformity with the rules of evidence.  And a failure to do

12  so, relying on hearsay -- their entire case is based on Popper

13  said this, and later they told you, in fact, it's Barfuss said

14  some of it, and we have never had an opportunity to confront

15  those witnesses.

16      If -- definition of "hearsay," it's out-of-court

17  statements for the truth of the matter asserted being relied

18  on by lay witnesses to support a conclusion, and 801 says

19  that's a no go.

20      Again, I started my conversation by showing how clearly

21  this was a very easy case to present.  It required a subpoena

22  on the agent and a letter pursuant to *Touhy*, and that's what

23  they should have done.  At this late stage of the day, by

24  failing to do their job to obtain Summary Judgment, all that

25  means is, we get a trial, which is the standard.  This is the

1   exception to the rule.

2       If you've done such a great job that your presentation of

3   evidence is unimpeachable and pursuant to rules of evidence

4   that it establishes your absolute right to judgment such that

5   no jury need be called, then you can get this bonus.  But the

6   failure to do that, all that means is, they get to have a

7   trial where they prove their case.  And Mr. Curtis asks for

8   that trial.

9       That is my complete response to their motion for Summary

10  Judgment.

11          **THE COURT:**  All right.  Thank you.

12      We just have a few more minutes.  Did you wish to respond,

13  Ms. Hepburn?

14          **MS. HEPBURN:**  Only to say that there were no reports

15  from the POCs.  We can't get a report from an active agent,

16  and the -- Agent Popper was disclosed in the very initial

17  disclosures which were done in 2019.

18      That's all I would say, Your Honor.

19          **THE COURT:**  Okay.

20      I'm having some difficulty here.  I don't agree that

21  Mr. Balogh's characterization as to how you should plead your

22  case is, indeed, the only way you can plead your case.  That's

23  his view as to how you can plead your case.  I might have a

24  difficult view than that.

25      The difficulty I'm having is that there are the identity

1   issues --

2            **MS. HEPBURN:**  Yes.

3            **THE COURT:**  There are the sexual conduct issues.

4            **MS. HEPBURN:**  Yes.

5            **THE COURT:**  There are the -- whether or not it

6   resides on the defendant's computer.

7            **MS. HEPBURN:**  Yes.

8            **THE COURT:**  All right?  I've got all these various

9   separate pieces that I'm expected to put together to make a

10  determination for something that, it seems to me, should be

11  very easy to do, one way or the other.

12      The identification evidence I find is sufficient.  I think

13  it's absolutely sufficient that an individual victim and/or

14  their parent identifies them as being reflective in a

15  particular image.  But the other two -- the other two

16  components are not so clear to me.

17      I'm not sure just by a series being found on Mr. Curtis'

18  computer, if that's enough to establish that the specific

19  pornographic image of a particular child victim was on his

20  computer.  I don't know that they are synonymous.

21            **MS. HEPBURN:**  Does Your Honor have issue with the

22  description of the sexual content of the images that is

23  provided by the points of contact?

24            **THE COURT:**  I don't think I have such descriptions

25  for every single one of them.

1          **MS. HEPBURN:**  Well, maybe that goes with the filing

2     issue that Your Honor alluded to at the beginning, and maybe,

3     you know --

4          **THE COURT:**  I want something much simpler than this.

5     There's a couple of things going on.

6          Mr. Balogh raises a lot of issues about the time crunch.

7     First of all, I don't find Rule 37 has been violated by their

8     disclosure.  It's if a party fails to disclose.  They didn't

9     fail to disclose it.  They disclosed it within the discovery

10    cutoff period.  I'm certainly concerned about both sides

11    having an adequate amount of time to prove their case before

12    trial.

13         Moreover, Summary Judgment is used, at least by me, to

14    test the case before a case is put before a jury.  And,

15    frankly, I couldn't even begin to tell you how a case like

16    this is to be put before a jury when the evidence itself is

17    contraband.

18         You say this is the first case that's gotten this far, so

19    I guess that's probably why I couldn't find any jury

20    instruction on it this morning when I looked.

21         **MR. KAWAI:**  That's why we needed the best judge.

22         **THE COURT:**  But the bottom line is, I don't know how

23    this case gets put before a jury.  But I do know that I need

24    to be assured one way or the other about what the facts of the

25    case are.  And I'm not exactly sure what they are.

1          And I think that what I want is, what I want to know is,

2     assuming the accuracy of the IM, assuming I am going to credit

3     the accuracy of the identification, I'm not satisfied with

4     just the identification of a series on Mr. Curtis' computer.

5          I want to know that an image of the people who have been

6     identified by themselves or their parents is -- was on Mr. --

7     is/was on Mr. Curtis' computer.  The fact that it's part of a

8     series is useful information but is not dispositive.

9          **MS. HEPBURN:**  We are not relying on that, Your Honor.

10         **THE COURT:**  Well, then you are not making it clear to

11    me.  I want a chart that tells me -- if it's already in the

12    evidence, that's fine.  I want a chart that tells me this -- I

13    think I have it with regard to the identity issue.

14         With regard to whether or not it's on the computer, on

15    Mr. Curtis' computer, you need to point me to specifically

16    what docket entry, what document tells me where I can find

17    evidence that it is -- that a particular image, not a series,

18    but an image is on the computer.  And then with regard to

19    whether or not the images are pornographic, you have -- your

20    chart has a description of it for everyone except Erika, Tori,

21    and I don't know, Sally?

22         **MS. HEPBURN:**  Jessica.

23         **THE COURT:**  Jessica.

24         **MS. HEPBURN:**  Yes.

25         **THE COURT:**  You have someone else's determination

1    that it fits the definition?

2              MS. HEPBURN:  No.

3              THE COURT:  What do you have?  What do you have?

4              MS. HEPBURN:  Your Honor, in the declarations of the

5    POC –– may I step away and get the declarations so I can read

6    one or two of them?

7                        (Pause in the proceedings.)

8              MS. HEPBURN:  For instance, for Maureen.  The

9    declaration of Thomas Rothrock, who is the point of contact

10   who was on the team that rescued her as a child –– and I

11   apologize for not having the docket entry on that.

12        He gives, in paragraph 7, her name and date of birth.  He

13   talks on Paragraph 11, the photo attached hereto is Exhibit 1

14   is a photo of Maureen taken during the sexual abuse she

15   endured as a child.  The unredacted photo shows an erect male

16   penis in her mouth and she is apparently giving fellatio to

17   the adult male.

18             THE COURT:  And Rothrock is the officer who

19   investigated the underlying crime.

20             MS. HEPBURN:  The production case, yes, Your Honor.

21             THE COURT:  And, and we know that this particular

22   image is on Mr. Curtis' computer how?

23             MS. HEPBURN:  From Agent Popper who gave all of the

24   images to Retired Agent Laws and Agent Barfuss who is a

25   supervisor for Agent Popper who gave the redacted images to

1    Laws.

2         And so for this link, yes, this is where we need to be

3    able to have Agent Popper bring the contraband to court and

4    establish this for Your Honor.

5              **THE COURT:**  Yes, you do.

6              **MS. HEPBURN:**  Yes.

7              **THE COURT:**  Where is he?  Where is he located?

8              **MS. HEPBURN:**  San Francisco.

9              **THE COURT:**  All right.  I want him to bring one

10   image -- whichever one you've referred to in -- I guess it's

11   in your chart that's in the reply brief?

12             **MS. HEPBURN:**  Yes.

13             **THE COURT:**  I want to see one image taken from

14   Mr. Curtis' computer of each of the 15 women.

15             **MS. HEPBURN:**  All right.

16             **THE COURT:**  Unredacted.

17             **MS. HEPBURN:**  Yes.

18             **THE COURT:**  And if they -- I am assuming they will

19   match -- see, you haven't -- I don't know how you've

20   identified these.  You haven't identified them by -- I don't

21   know how you have identified them in your papers.  I mean,

22   some of these are identified by the declaration of Laws, but

23   he just lists the series in the declaration paragraph 11.

24             **MS. HEPBURN:**  We attached the redacted images to the

25   declarations of either the child -- excuse me, plaintiff

1    themselves, the parent, or the point of contact, Your Honor.

2    Beyond that, we didn't put a number on them or anything.

3    That's true.  They do have file names which correlate with the

4    National Center for Missing and Exploited Children Report, the

5    Child Identification Report which were also correlated by

6    Retired Agent Laws and the ones that he could identify.

7            **THE COURT:**  Okay.  Ones that you've chosen to rely on

8    in your briefing --

9            **MS. HEPBURN:**  Yes.

10           **THE COURT:**  -- the ones I want to see.

11           **MS. HEPBURN:**  Do you --

12           **THE COURT:**  I will determine if they are sufficient

13   or not.

14           **MS. HEPBURN:**  Okay.

15           **THE COURT:**  And if not, then your motion is not going

16   to be granted, at least as to the ones that you cannot

17   establish that they are, indeed, pornographic images.

18           **MS. HEPBURN:**  Okay.

19           **THE COURT:**  So prepare another chart and identify it

20   in some way so I have a number to compare it with.  And tell

21   the -- Agent Popper?

22           **MS. HEPBURN:**  Yes.

23           **THE COURT:**  He's with?

24           **MS. HEPBURN:**  HSI.

25           **THE COURT:**  HSI to contact Ms. Collins, my courtroom

1   deputy, to set up a time when I will be in my chambers and he

2   can -- I'll do an in-camera review.

3            **MS. HEPBURN:**  Okay.  Will do.

4            **MR. BALOGH:**  May I be heard on that issue, Your

5   Honor?

6            **THE COURT:**  Yes.  I have to leave in four minutes, so

7   make it quick.

8            **MR. BALOGH:**  I guess we won't touch on my motion, but

9   I want to object to the notion of ex parte conduct with an

10  agent outside the presence of counsel where the Court will do

11  a review based on hearsay from an agent if I'm not there.

12      I would like to object that this was the time for summary

13  judgment, and based on the Court's statements, plaintiffs have

14  failed in their burden.  And based on their failure of burden,

15  Mr. Curtis is entitled to a trial on those -- on both those

16  things.

17      And the third objection I continue to make, as I made in

18  my reply declaration paragraph 7, I still do not have an

19  actual copy of the unredacted filing, and you cited as 139 and

20  139-4.  I've had a conversation with Deb Bianco, I've written

21  to Mr. Kawai, I've written to Ms. Hepburn, I've put it in a

22  declaration, and I am here arguing against a motion that is

23  not only not decided, I don't possess the actual complete

24  motion, proof of service, and these are all improper bases,

25  and those are my objections.

1          I ask that the motion be denied.

2               **THE COURT:**  Okay.

3               **MR. KAWAI:**  That was Dropboxed.  I'm sorry, Counsel.

4               **THE COURT:**  The matter is submitted.  I'm not sure

5     what I will do with this case.  Your motion, I'm not ruling on

6     it one way or the other right now.

7          What did you have to say, Mr. Kawai?

8               **MR. KAWAI:**  Oh, no, simply that I Dropboxed it.  If

9     he wants me to upload a proof of service for that, I can do

10    that.

11              **MR. BALOGH:**  What I put in my declaration was,

12    Dropbox is some internal form for your office because it

13    doesn't have all the other information.  There's things

14    missing from it.  That's what I wrote you about, that's what I

15    talked to Ms. Bianco about, and that's what I wrote

16    Ms. Hepburn about --

17              **MS. HEPBURN:**  No.

18              **MR. BALOGH:**  -- which you said you gave me, and I

19    raised my hand --

20              **THE COURT:**  You guys -- you guys can talk about this

21    on your own time.

22         All I have is what's on the docket.  I don't have

23    anything -- there's only a redacted version on the docket.  I

24    don't have an unredacted version of anything.

25              **MR. KAWAI:**  Your Honor, I don't know what happens

1    when you file an administrative motion to seal, but the

2    unredacted version was a single document.  The reason I did

3    that is because it had to be -- the unredacted version had to

4    be filed as an exhibit as to the Motion to Seal.

5        So if there is an issue, I can email that to the -- email

6    that to the Court.  I assumed that when you upload it with

7    your motion, that even though it's not publicly accessible,

8    that Your Honor would have access to it.  And I apologize if

9    that's not the case.

10            **THE COURT:**  Okay.  All right.  Like I said, I have to

11   adjourn at 3:00 o'clock --

12                    (Simultaneous colloquy.)

13            **THE COURT:**  Your objections are noted, Mr. Balogh.

14   I'm not sure what I'm going to do with this motion, but I do

15   need to be able to see that the elements have been met.  And

16   I'm not sure if it's just the way that everything has been

17   filed, but I also know that I need to see the unredacted or

18   un-sanitized versions of these things in order to be able to

19   make a decision.

20       I understand they are contraband and there are all these

21   rules about who gets to see them.  I know they are shown to

22   judges all the time when we are on criminal cases, and we do

23   see them on an ex parte basis, Mr. Balogh.  Neither attorney

24   are permitted to -- when I look at them, I don't have a

25   conversation with the agent.  I simply just look at the images

1    and I don't have either attorney there present with me, at

2    least not in recent years.  I did at the very beginning, but

3    in recent years I don't.

4        In any event, I will let you know what I'm going to do.

5    With regard to the trial date, we have a trial date in June.

6    I'll just tell you, our Court is continuing to kick down the

7    road jury trials because of the numbers, although they are

8    trending in the right direction, but because this is a civil

9    case, it will not be given priority.

10       We are doing one trial at a time per division, and it is

11   not likely that this case will go in June for trial just

12   because we are going to be doing criminal trials before we do

13   civil trials.  So I'm not sure when I will be able to let you

14   know.  I will let you know before you start your pretrial

15   preparations so that you don't spend time on that needlessly.

16       Kelly, can you tell me when the Pretrial Conference date

17   for this case is?

18           **THE CLERK:**  May 27th.

19           **THE COURT:**  Okay.  So I would certainly -- I'll be

20   back in touch with you guys sometime in March probably after I

21   look at this review and give a little more thought about how I

22   would like to resolve this case.

23           **MR. KAWAI:**  Thank you, Your Honor.

24       In the meantime, I will email the unredacted version of

25   the Motion for Summary Judgment but that does not include the

1    unredacted imagery which is the contraband that we are

2    addressing with the subpoena.

3         **THE COURT:**  Right.  I have the unredacted version

4    that has yellow highlighting on it.

5         **MR. KAWAI:**  Okay.  Okay.

6         **THE COURT:**  The Summary Judgment Motions, I have

7    those.  But anyway, anyway I've got to adjourn now.

8         **MR. KAWAI:**  Thank you.

9         **THE COURT:**  Matter is submitted.  I will be in touch

10   about what the next step will be.

11        **MS. HEPBURN:**  Thank you so much.

12        **MR. BALOGH:**  Thank you.

13

14              (Proceedings concluded at 3:02 p.m.)

15

16                 **CERTIFICATE OF REPORTER**

17        I, Diane E. Skillman, Official Reporter for the

18   United States Court, Northern District of California, hereby

19   certify that the foregoing is a correct transcript from the

20   record of proceedings in the above-entitled matter.

21

22              *Diane E. Skillman*

23        DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

24              Tuesday, March 16, 2021

25