Pages 1 - 57

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Phyllis J. Hamilton, Judge

| | |
|---|---|
| "AMY," ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| VS. | )    **NO. CV 19-2184-PJH** |
| | ) |
| RANDALL STEVEN CURTIS, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Oakland, California
Thursday, March 25, 2021

**TRANSCRIPT OF PROCEEDINGS HELD VIA ZOOM WEBINAR**

**APPEARANCES**:

For Plaintiffs:
                    CAROL LYNN HEPBURN
                    P.O. Box 17718
                    Seattle, WA  98127
            BY:  **CAROL L. HEPBURN, ESQUIRE**

                    CARPENTER, ZUCKERMAN & ROWLEY
                    407 Bryant Circle - Suite F
                    Ojai, CA  93023
            BY:  **JOHN A. KAWAI, ESQUIRE**

                    DEBORAH A. BIANCO, PLLC
                    P.O. Box 6503
                    Bellevue, WA  98008
            BY:  **DEBORAH A. BIANCO, ESQUIRE**

Reported By:     Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
                 Official Reporter

APPEARANCES CONTINUED:

For Defendant:
                          COLEMAN & BALOGH LLP
                          100 Pine Street, Suite 1250
                          San Francisco, CA  94111
                   **BY:  ETHAN A. BALOGH, ESQUIRE**

| | |
|---|---|
| 1 | **<u>Thursday - March 25, 2021</u>**                          **1:10 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 |     **THE CLERK:**  Calling CV 19-2184, "Amy," et al. vs. |
| 5 | Curtis. |
| 6 |    Counsel, please identify yourselves, starting with |
| 7 | plaintiffs' counsel. |
| 8 |         **MS. HEPBURN:**  Carol Hepburn here for plaintiffs. |
| 9 |         **MR. KAWAI:**  John Kawai for plaintiffs. |
| 10 |         **MS. BIANCO:**  And Deborah Bianco for plaintiffs. |
| 11 |         **MS. MABIE:**  And Margaret Mabie be for plaintiffs. |
| 12 |         **THE COURT:**  All right.  Good afternoon. |
| 13 |         **MR. BALOGH:**  Good afternoon, Your Honor.  Ethan Balogh |
| 14 | for the defendant. |
| 15 |         **THE COURT:**  Good afternoon. |
| 16 |    Okay.  Thank you all for making yourselves available on |
| 17 | such short notice, but I needed to have further discussions |
| 18 | based upon the more recent filings that you all have made. |
| 19 |    The supplemental chart that plaintiffs submitted as well |
| 20 | as the set of objections that Mr. Balogh has filed have been |
| 21 | very helpful in elucidating for me exactly what you guys are |
| 22 | doing.  I am having a hard time understanding how you all |
| 23 | believe the case should be litigated, and I -- and the chart |
| 24 | and the objections did help me to focus in on what we need to |
| 25 | focus in on now, which are the details.  All right? |

1       We've had lots of motions over the last year on lots of

2   different things.  A lot of things have been disposed of, and I

3   don't want to hear more argument on things that I've already

4   decided.  There's a motion pending before me now that still

5   needs to be decided, and I need more help than I have been

6   given in understanding your positions and trying to figure out

7   what the right thing to do is.

8       Your filings, while helpful, have raised many more

9   questions.  I have four pages of questions that I have for you

10  all today as I'm trying to understand what you all are

11  attempting to do, both in this motion and if the case goes

12  further.

13      Now, as I've said before, this case suffers from having no

14  identified legal standard.  It's very rare that there is a

15  civil case that's prosecuted in our court for which there --

16  the parties are simply working from the statute itself.  There

17  are generally elements that have been determined by the

18  appellate courts for each cause of action that are easy to

19  identify, and the dispute is whether or not the evidence meets

20  those elements, but here we don't have that.

21      But given all the other rulings that I've made and

22  particularly eliminating the damages, what's left in this case

23  when we look at the statute is proof that the victims were

24  indeed victims of this particular defendant's crime.

25      Now, I indicated in one of the orders entered after our

1    last hearing what I have determined to be the three elements

2    that need to be established in order to prove that part of the

3    case, and that's what this motion is supposed to be about and

4    it's clearly what any trial would be about.  And those elements

5    I set forth are the identification of the plaintiffs in a

6    particular image or images; two, that are pornographic in

7    nature, and that is as defined in 18 U.S.C. Section 2256.  It's

8    not at all clear to me that people are hewing to that

9    definition.  And that those images were in possession by the

10   defendant, in other words, if they resided on his computer.

11        Those are the three things that need to be proven.  I

12   would like -- I have lots of questions on the second and third

13   element, and that's what we are going to spend our time on this

14   afternoon, but I have a couple -- I have some preliminary

15   questions before we get to element number 2, which is where we

16   are going to start.

17        Defense counsel says in his supplemental brief that he was

18   never served with a copy of Docket No. 139.4.  I don't really

19   understand what that means.

20        Mr. Balogh, that docket number is on the website.  It's on

21   PACER.  It's in the ECF system.  And I'm not sure what you mean

22   because when I pull it up -- when I look at the docket, I see

23   139.4 -- dash 4, which is the unredacted -- I forget what it

24   is -- declaration of something or another, and it's available

25   to me.  Are you saying that it is not available to you?  You

1   cannot pull that up?

2        **MR. BALOGH:**  Yes.  It's a sealed document, but I'll

3   withdraw that objection.  The copy that Mr. Kawai gave me after

4   I complained had more pages than the redacted copy, which is

5   why I objected to that, which is I don't have the carbon copy

6   because one is different than the other.

7       I've gone through and done a page-by-page comparison, and

8   I see where the supplemental copy that Mr. Kawai provided me

9   has extra pages in it, but they're not truly extra pages.  What

10   happened was when he scanned it or whoever scanned it,

11   sometimes the scan creates a copy of the back of a page because

12   the scan is just reading whether there is text on it and it's

13   not differentiating between intentional text and text that has

14   bled through the back, and after I made those comparisons page

15   by page, I have been able to confirm that I do -- while it's

16   not 139.4 per se, I do have a complete set.  I withdraw that

17   objection.

18        **THE COURT:**  Okay.  Thank you.  That takes care of

19   that.

20       I'm talking to the lawyers on both sides.  Have any of you

21   had any prior trial experience with this particular code

22   section, 2255?  There is a dearth of any case law on this

23   particular section given these civil remedies to victims of

24   these various different offenses, so I want to know, have any

25   of you ever had a trial involving 18 U.S.C. Section 2255?

1      **MS. HEPBURN:**  I have not.

2    Margaret, has your firm had one?

3      **MS. MABIE:**  I don't believe we have, no.

4      **THE COURT:**  Okay.

5    Mr. Balogh, have you ever tried one of these?

6      **MR. BALOGH:**  Oh, I have not, but I would note -- and I

7  think the record should be clear -- plaintiffs have brought

8  double digit cases like this.

9      **THE COURT:**  Okay.  Okay.  But litigating the case is a

10  little bit different than trying it.

11    How about criminal trials?  Mr. Balogh, you're a criminal

12  lawyer.  Have you tried 2252 cases?

13      **MR. BALOGH:**  No.  Never.

14      **THE COURT:**  Okay.  Those are just the straight child

15  porn cases like Mr. Curtis went through.  I know Shawn Halbert

16  represented him in the trial court proceedings.

17      **MR. BALOGH:**  My familiarity with the statute is

18  solely -- I have done a bunch of these cases to the Court of

19  Appeals, but I have never tried any sort of 2241, 2255, the

20  typical 1591.  I have had appeals on all of those types of

21  cases, but I have never actually tried one in the district

22  court.

23      **THE COURT:**  Have you represented people charged with

24  2252 in the district court?  That's the possession of child

25  porn.

1      **MR. BALOGH:**  I'm trying to think.

2          Yeah.  I had one case, but it was on remand after a

3      successful appeal, and we resolved it, but I haven't tried it.

4      I have never tried a child -- any sort of sexual abuse case

5      involving minors.  I have only had appellate experience.

6          **THE COURT:**  Okay.  All right.  So we're sort of the

7      blind leading the blind here.

8          All right.  So another question, is there any dispute

9      among you all that the preponderance of the evidence is the

10     appropriate standard for the three elements that I have

11     assessed are at issue in this case?  Is there anyone aware of

12     authority requiring clear and convincing evidence?

13         **MR. BALOGH:**  There is case law which would suggest

14     clear and convincing evidence.  Originally civil fraud was

15     always on that standard.  There is, I think, an 1896 Supreme

16     Court case which suggests that a case involving fraud or -- has

17     that standard, and there is an argument to be made that it

18     could be applied here, but I have never seen a case that would

19     apply to this particular statute, and we are proceeding under

20     the standard of it's a civil case, preponderance is the normal

21     standard.

22         **THE COURT:**  Yes.  This isn't a fraud case.  So --

23         **MS. HEPBURN:**  Plaintiffs have no understanding of any

24     such authority for anything other than preponderance standard,

25     Your Honor.

1          **THE COURT:**  Okay.  That's my view as well.

2      Is there any dispute -- now, I have set these three

3  elements; right?  You all know what they are now.  The chart

4  and the objections deal with those three elements.

5      Is there any dispute that if the Court is unable to grant

6  summary judgment on any one of the elements for any one

7  individual plaintiff, that a trial would be warranted?

8          **MR. BALOGH:**  I'm not understanding the question,

9  Your Honor.  I think -- my understanding is trial is default,

10  and a party can avoid a trial to the extent they present

11  concrete evidence that establishes they win as a matter of law,

12  and in the absence of that party sustaining their burden, trial

13  is the default mechanism to resolve a claim brought by a

14  plaintiff in a federal court.

15          **THE COURT:**  That's not really my question.  The

16  typical summary judgment standard applies.  Plaintiffs have to

17  bring forth the evidence to prove their case.  The defendant

18  has to -- I'm sorry.  In this case, the plaintiff is actually

19  the moving party.  It's usually the other way around, but the

20  plaintiff has to establish their case, and the defendant has to

21  bring forward evidence that raises a triable issue,

22  notwithstanding the evidence raised by plaintiff.  That is the

23  summary judgment standard here.

24      My question, though, is there are three elements for this

25  offense, and each plaintiff has to meet each of those three

1    elements.  If a plaintiff does not meet each of the three but

2    only meets two of the three, is there any doubt -- is there any

3    dispute that a trial would be necessary if there's one missing

4    element that has not been proven on summary judgment?

5            **MR. BALOGH:**  I think --

6            **MR. KAWAI:**  As to that -- I'm sorry.  As to that

7    plaintiff, Your Honor?

8            **THE COURT:**  Pardon me?

9            **MR. KAWAI:**  I'm sorry.  On a plaintiff-per-plaintiff

10   basis?

11           **THE COURT:**  On a per plaintiff basis.

12           **MS. HEPBURN:**  Your Honor, plaintiffs would assert that

13   Your Honor can find any of the three elements for each

14   plaintiff on this motion, and, yes, if you find for, instance,

15   for Amy, that she has established sexual content and connection

16   to or that it was the -- the image was possessed by Defendant

17   Curtis but she hasn't established, for instance, identity, then

18   we would acknowledge that she should go forward to trial on the

19   issue of identity, but we do believe the Court has the power to

20   find and dispense with any elements that you find the proof is

21   sufficient on on this motion.

22           **THE COURT:**  Well, of course.  I mean, the Court can

23   adjudicate any of the issues and elements, but my question was

24   if there was any dispute whatsoever that if the Court cannot

25   adjudicate each of the three elements for each of the

1    individual plaintiffs, that a trial would be had?

2         **MS. HEPBURN:**  Yes.

3         **MR. BALOGH:**  I think trial would be had.  I also think

4    that the plaintiffs did not move for summary adjudication.

5    They've waived that.  And I think under *Sineneng-Smith*, you

6    can't give relief they haven't sought, and they made their

7    motion.  They didn't seek that.  They had the opportunity to

8    make such a motion.  They didn't seek it.  We didn't brief it.

9    And they went for everything.  If they come up short of one

10   element, I think we get a trial on all elements as that's the

11   state of the case.  They can't get more relief than they

12   sought, and they didn't seek that in any of their briefing to

13   date.

14        **THE COURT:**  That's not generally how I proceed, but

15   what's your response?  What's the plaintiffs' response?

16        **MS. HEPBURN:**  As the Court said, we believe the Court

17   can adjudicate any of the issues before it for which it finds

18   there is sufficient evidence and to streamline the process for

19   trial.

20        **THE COURT:**  Okay.

21        **MR. KAWAI:**  I believe that if the Court does not grant

22   all the relief requested by the motion, it can still enter an

23   order stating that any material fact not genuinely in dispute

24   and treat it as established in the case under Rule 56.

25        **THE COURT:**  That's what civil lawyers are always

1    asking me to do.

2              **MR. KAWAI:**  Yes.

3              **THE COURT:**  Okay.  Thank you.  That helps.

4        Is there any dispute that the trial would be before a jury

5    unless both sides consent?

6              **MR. BALOGH:**  No dispute.

7              **MS. HEPBURN:**  No dispute.

8              **THE COURT:**  No dispute?

9              **MR. KAWAI:**  Correct.

10             **THE COURT:**  Okay.  Great.  Those are all my

11   preliminary questions.

12       Now, let's talk about the elements.  The element that is

13   giving me the most concern is the content.  Now, Section 2252,

14   the section under which Mr. Curtis was convicted, criminalizes

15   the possession of material if the material includes the visual

16   depiction of a minor engaging in sexually explicit conduct.

17   That's what 2252 criminalizes.  Section 2256 defines what

18   "sexually explicit conduct" is.

19       Which sections of 2256 -- I've had occasion to look at it

20   very, very closely.  Which sections of 2256 do the plaintiffs

21   rely on?  And it could be different for each image.  But I

22   don't see the use of 2256 throughout the briefing in this case,

23   so I'm not exactly sure what the position of the plaintiffs are

24   with respect to how they meet those definitions.

25       The Court -- or if a jury is trying it or if the Court is

1    trying it -- isn't going to just look at an image and determine

2    this is or is not child pornography.  It's going to have to be

3    compared to the definition of "child pornography."

4         So what are plaintiffs proceeding under?

5         **MS. HEPBURN:**  I think it's different for each image,

6    Your Honor, and we would need to go through.  I mean, I know

7    off the top of my head, lascivious exhibition of the genitals

8    refers to the image of Mya, for example.  There are other

9    certain images that show sexual intercourse.  There are images

10   that show masturbation, and there are those that show the

11   connection or the content -- excuse me -- contact between oral

12   and genital or anal and genital of the offender or -- excuse

13   me -- of the perpetrator or the adult in the image and the

14   child.  I think we just have to look at each individual image,

15   and, again, we're a little bit hamstrung with the contraband

16   nature of it, but, you know --

17        **THE COURT:**  Where am I supposed to find that?  I've

18   got this motion pending before me, and you want me to determine

19   that the images -- and we'll talk about how that is supposed to

20   happen, but ultimately on this motion, the Court would have to

21   determine that that element of the pornographic nature has been

22   met, and I have no idea.  Laws doesn't say in his declaration

23   which section the particular image fulfills.  Who decides that?

24        And another thing, I'm actually struggling a little bit

25   with 2256.  Maybe you all who have more experience with it can

1  elucidate.  There are two provisions that you've just --
2  three -- you have just mentioned three.  There are five ways in
3  which one can show sexually explicit conduct.  Five ways.  One
4  is the sexual intercourse, including various different genital
5  to genital or oral/genital, anal/genital, etc., of any two
6  people -- between persons of the same or opposite sex.  One is
7  bestiality, one is masturbation, one is sadistic or masochistic
8  abuse, and one is the lascivious exhibition of the anus,
9  genitals, or pubic area of any person.
10      Now, how do you all interpret that last one?  What is the
11  lascivious exhibition of the genitals of any person?  It
12  doesn't say minor.  So would the exhibition of the adult male
13  member with the minor -- would that count as a lascivious
14  exhibition of the pubic area of any person?
15      You see my point.  There isn't anything in the record that
16  goes with this kind of specificity.  Frankly, I don't really
17  know what you guys are attempting to do here.  I mean, how do
18  you find -- how does any fact-finder find that this definition
19  is met, which you have to meet in order to establish liability
20  without answering those questions, knowing which section
21  applies and why.
22      Okay.  So the only answer I received so far is there
23  are -- various different sections within 2256 apply, depending
24  upon the image.
25      **MS. HEPBURN:**  If I can add to that, Your Honor, and

1    picking up on the example that you just gave of whether -- the

2    question of whether the display of adult genitalia does

3    satisfy, I would think that looking at the display of genitalia

4    and the context in which it occurs with, for example, the

5    display of an adult erect penis in close proximity to, A, the

6    genitals of a child, B, the mouth of a child, C, with the

7    evidence of ejaculate in the picture, looking at what may be

8    the context -- surrounding context, that is, is it a bedroom,

9    how is the child dressed, all of those kinds of things go into

10   making up whether or not this is lascivious, i.e., focused upon

11   sex.

12       **MS. MABIE:**  I would just like to add, Your Honor,

13   there is a case that -- *U.S. vs. Dost*, 636 828 Southern

14   District of California, 1986, which does have a six-factor

15   analysis for how you would determine whether or not an image is

16   lascivious.

17       **THE COURT:**  What was that citation again?

18       **MS. MABIE:**  It's *United States vs. Dost*, 636 Federal

19   Supplemental 828, Southern District of California, 1986.

20       **THE COURT:**  636 Fed Supp --

21       **MS. MABIE:**  828 SD Cal 1986.  "Dost" is spelled

22   D-O-S-T.

23       **THE COURT:**  Okay.  636 Fed Supp, page?

24       **MS. MABIE:**  828, Your Honor.  I apologize.  I was on

25   mute.

1      **THE COURT:**  Okay.  Thank you.

2      All right.  Now, that leads -- Mr. Balogh, do you have

3  anything to say about that?

4      **MR. BALOGH:**  I think we briefed *Dost*.  I think both

5  parties did.  I think it's -- I think those factors aren't

6  obviously binding to the district court case, but I think that,

7  you know, in this case at this stage, the plaintiffs had the

8  opportunity to depose Popper, to prepare this evidence and

9  bring it forth, and Mr. Laws had the opportunity to view what

10  he believes was the media, was representative of the media, and

11  he didn't provide it, and so I think there is just a failure of

12  proof at this stage, and that's where we land, which is they

13  didn't bring forth the evidence that they needed to sustain

14  their burden.

15      **THE COURT:**  Next question:  Who decides if an image

16  qualifies as child pornography within the meaning of 2256?

17      **MR. BALOGH:**  The jury would.

18      **THE COURT:**  Hold on.  In two instances.  Who decides

19  on this motion and at trial, if the matter proceeded to trial?

20      I'd like your thoughts on that with regard to both.

21      Mr. Balogh?

22      **MR. BALOGH:**  I think it's a fact-finder question in

23  both cases because it's an element of the offense which gets

24  decided by the fact-finder.  At the summary judgment stage, the

25  Court determines whether there is evidence before it that the

1   evidence is such in dispute it can make a finding without

2   offending someone's trial rights because there is no dispute of

3   material fact.

4        And this case I think is -- as I've just sort of alluded

5   to, it's more of a failure to prove.  It's not that they've

6   come forward -- I think for one picture, the Sally question,

7   for example, there is a photograph of Sally.  They claim it's

8   of Sally.  She is in a shower.  She is standing up smiling sort

9   of as I am in this image to you.  And it's just -- and it's

10  redacted below the collar bone, but I will assume for the

11  purpose of discussion that she's naked in the photograph.

12  That -- we would contend, for example, like that that even if

13  they could show it's Sally and even if they could show that

14  image was possessed by Mr. Curtis, which I don't believe

15  they've done, that that picture on its face is not -- doesn't

16  meet the definition because -- even under the *Dost* factors

17  because it's just a picture of a naked child.  There is no lewd

18  and -- there is no lascivious display of the genitals.  There

19  is no intercourse.  There is no bestiality.  There is no

20  masturbation.  There is none of the things in the statutory

21  definition.  And if the plaintiffs wanted to claim, *Well,*

22  *Mr. Balogh, you are incorrect* and they wanted to have a

23  contrary argument, the Court would have to decide that, whether

24  it believed it met the definition, and I think the Court at

25  summary judgment would have the photograph in front of it and

1    could.

2        But this is a failure-of-proof defense mostly because

3    they've not shown that it was on Mr. Curtis's computer, and

4    they haven't --

5        **THE COURT:**  Hold on.  I don't want you to get into all

6    that.  I have dozens of questions.  Let's do one thing at a

7    time.

8        **MR. BALOGH:**  All right.

9        **THE COURT:**  My question now is specifically who

10   decides on summary judgment and at trial if an image --

11   assuming there is a dispute between plaintiffs and defendant as

12   to whether or not an image is or is not pornographic, who

13   decides that?

14       **MR. BALOGH:**  It's a question of fact unless the Court

15   determines it can decide it as a matter of law, something as a

16   matter of law, that it's within the Court's purview.  In the

17   absence of finding something as a matter of law, it's for the

18   fact-finder; may not be decided by the Court at summary

19   judgment.

20       **THE COURT:**  Okay.  Now, I have conducted an in camera

21   review of the unsanitized images on that -- that appear on the

22   chart, so that means there is just 15 of them.

23       **MR. BALOGH:**  We've noted our objection to that because

24   how do we know that that's what you viewed?

25       **THE COURT:**  Well, you don't know except that that's

1   what I'm telling you I viewed --

2           **MR. BALOGH:** And that's my respectful objection.

3   That's like star chamber stuff. I'm not present. I don't --

4           **THE COURT:** Well, regardless of how you wish to

5   characterize it, Mr. Balogh, I have conducted an in camera

6   review because I made the assumption that all of you have seen

7   the images and I'm the only person who didn't see it and I have

8   no idea what you're even talking about. But now that I've read

9   the papers, it doesn't seem to me that you all have seen the

10  images.

11          **MR. BALOGH:** That's correct.

12          **THE COURT:** Am I correct about that, that you have not

13  seen the images?

14          **MR. BALOGH:** I saw images from his hard drive,

15  unrelated necessarily to any of these plaintiffs, something

16  like two-and-a-half, three -- actually three years ago. So

17  since this case has been brought, have I reviewed any specific

18  images that plaintiffs claim apply to them? No. Plaintiffs

19  sought no discovery. They didn't bring it forth. I have zero

20  idea and can't confirm or deny any of these images --

21          **THE COURT:** Mr. Balogh, please, just quit all of the

22  commentary. Okay? We are going to get to that. I'm just

23  trying to get through my questions one at a time.

24      Have plaintiffs' counsel seen the unsanitized images?

25          **MS. HEPBURN:** Not all of them.

1          **THE COURT:**  Have you seen some of them?

2          **MS. HEPBURN:**  I have seen some of them.  I don't think

3    my colleagues have.

4          **THE COURT:**  Well, how do you know which images qualify

5    as child pornography if you haven't seen them?

6          **MS. HEPBURN:**  Looking at the sanitized images and

7    relying upon the descriptions by the POCs, the law enforcement

8    points of contact who have seen them and their descriptions.

9          **THE COURT:**  How did you select the images that are on

10   your chart?

11        First of all -- I'm getting beyond myself.  I didn't get

12   an answer for my question about who decides the motion, at --

13   who decides if the photos qualify as child pornography on the

14   motion and at trial.

15        Mr. Balogh, you didn't give me an answer to the second

16   part.

17        **MR. BALOGH:**  Oh, I thought I did.  It's a fact-finder

18   question always.  This Court can only make a determination at

19   this point if it qualifies as a matter of law.  In the absence

20   of such a finding that the image qualifies as a matter of law,

21   it's a fact question for the jury that may not be decided at

22   summary judgment.

23        **THE COURT:**  Okay.  I could probably decide as a matter

24   of law.

25        And at jury trial, if there is a jury trial, does the jury

1    see the images and make a decision or does the jury just listen

2    to what other people say about it and make a decision based

3    upon other people's characterizations?

4         **MR. BALOGH:**  The jury sees the image and makes a

5    determination.

6         **THE COURT:**  The unredacted, unsanitized images?

7         **MR. BALOGH:**  Yes.

8         **THE COURT:**  Okay.

9       Ms. Hepburn?

10        **MS. HEPBURN:**  I'm in agreement with that, Your Honor.

11   I do believe that you can decide this on summary judgment,

12   whether the images that you've seen constitute child

13   pornography under the statutory definition, and if not, then,

14   yes, it's a jury question, and, yes, the jury should see the

15   unsanitized images.

16        **THE COURT:**  Okay.

17      How did you select the images for the chart?

18        **MS. HEPBURN:**  Well, in a couple of cases, there was

19   only a single image of a plaintiff so those were easy.  We

20   attempted to select ones for which there was not a large

21   question about whether it was a pornographic image given the

22   descriptions that we had.  Those were the major guiding

23   principles, you know, ones where we had a clear ID from either

24   the parent or the plaintiff.

25      We tried to put together those three elements that the

1   Court had and find those images that most clearly fit that --

2   each element.

3        THE COURT:  Okay.  Now, my next question was -- I'm

4   not exactly sure what your intent is.  Are plaintiffs relying

5   upon Mr. Laws, who is your designated 3509 expert, to make the

6   determination about which images are pornographic and which

7   ones aren't?  And if that's the case, what about the images

8   that Laws doesn't address?  There are images on your chart that

9   he doesn't address at all.

10       MS. HEPBURN:  We do not rely on him to make that

11  determination, Your Honor.  And he -- his process was one where

12  he did not as ask Agent Popper to just "pull out the images of

13  plaintiffs and show me where they are."  Mr. Laws felt it most

14  important for him to have the media as a whole and take it

15  through his forensic software and define the images, if he

16  could.

17       He could not find all of the images for each of the

18  plaintiffs on this, and we submit that that also goes to

19  bolster his credibility because he wasn't just a rubber stamp

20  for plaintiffs' assertions in the case.

21       And so for those ones which Mr. Laws did not find and so

22  we don't have his declaration about that, that's where we rely

23  on the POCs and we rely on the sanitized images and we rely on

24  the declarations of those plaintiffs or their parents that were

25  able to identify them from the sanitized images.

1          **THE COURT:**  Okay.  But we're talking about two

2    different identifications.  One is the identification of the

3    girls as being the person depicted.  The other is

4    identification of the image as being pornographic within the

5    definition of 2256.  You've got -- you're kind of all over the

6    place on it.

7          I did a quick summary this morning, and you've got -- on

8    your chart, you've got Laws as the person identifying the

9    content as pornographic for five of the fifteen plaintiffs.

10   Then you've got the Court's in camera review for three of the

11   plaintiffs.  You've got -- four plaintiffs appear to identify

12   the pornographic nature of the image themselves in four of

13   them.  Two of them are in conjunction with one or more POCs,

14   and one is in conjunction with the Court when you don't really

15   know what my construction is so I don't even know how you can

16   rely upon me having come to the conclusion that they're all

17   pornographic images.  And then you've got two identified by

18   POCs alone.  And then you've got one on your chart that isn't

19   identified by anybody at all.  So to the extent that the chart

20   was intended to be helpful, it's just caused me more confusion.

21   Take a look.  Take a look at the chart that you gave me.

22         How is it that Amy, for instance, who you on the chart say

23   identifies the pornographic nature -- how is it that she is

24   able to identify if something fits within the definition of

25   2256?

1    **MS. HEPBURN:**  She testified in her declaration,

2    Your Honor, that her abuser would put her on the sheets, which

3    are shown in the sanitized images; that he would have her pose

4    in such a way to show her vaginal area; and that she would have

5    her legs spread apart, raised up in the air, and he would take

6    a picture of her unclothed vagina.

7    **THE COURT:**  Okay.  But I think maybe you're not

8    understanding my point here.

9    The point is not that she identifies herself as the person

10   that's depicted but that that fits within the def -- there is

11   this rigor that has to be applied to these elements, and one is

12   that something is child pornography as defined by 2256; right?

13   **MS. HEPBURN:**  Yes.

14   **THE COURT:**  And I don't know that it's appropriate for

15   a plaintiff herself to make that determination.

16   **MS. HEPBURN:**  We're not purporting to have her make --

17   I think that's a legal determination, Your Honor, as to whether

18   the facts put before the Court satisfy the definition of 2256.

19   Our position is that a closeup shot of the unclothed

20   vagina of a child on a bed with her legs up in the air is a

21   lascivious display of a child's genitals, and we believe that

22   fits the definition.  We weren't intending to have Amy make

23   that assertion to the Court.

24   **THE COURT:**  Okay.  So you've got -- so if Amy doesn't

25   make the assertion to the Court, who does?

1   **MS. HEPBURN:**  I think that's a conclusion, Your Honor.

2   Amy puts the facts before the Court, and plaintiffs say these

3   facts add up to a lascivious display of the genitals.  And so

4   as a matter of law, that falls within the definition of Section

5   2256.  And there -- where we ask the Court to make that -- to

6   agree with us and to say yes, that the display of -- a closeup

7   of a naked child's vagina is a lascivious display of the

8   genitals.

9   **THE COURT:**  Why on some of these, then -- why the

10   inconsistency throughout?  On some of them you have the police

11   officers, the points of contact; some of them you have

12   Mr. Laws; some of them you have, like I said, the plaintiffs

13   themselves; and on some of them, you're relying upon the Court.

14   I don't quite understand -- if you think that all that has to

15   be established -- that there does not have to be an expert

16   opinion that they do amount to -- I think that's what you're

17   saying, that no expert is necessary to establish that they do

18   amount to child pornography.

19   **MS. HEPBURN:**  It's kind of that old saying we all

20   heard in law school, "I know it when I see it," when it, you

21   know, applies to obscenity, Your Honor.  And the reason that we

22   don't have, for instance, a POC for each and every plaintiff

23   is, frankly, there is difficulties in getting to and getting a

24   declaration out of those law enforcement agents who are

25   currently employed by the federal government.

1          I know defense will say, "Well, just send them a *Toohey*

2    letter and that will suffice."  Well, frankly, I have done that

3    in the past and languished over two years having sent my *Toohey*

4    letter and being politely persistent in trying to get to an

5    agent who is currently working.

6          In those circumstances where we were lucky enough to be

7    able to contact a retired agent who remembered the images or

8    who was still serving as a secondary or, in the case of the

9    Lighthouse series, he stepped in upon the -- excuse me -- Agent

10   Rothrock -- retired Agent Rothrock stepped in when Agent

11   Beyers was injured in a terrible accident, they're still

12   serving and so --

13          **THE COURT:**  Yeah.  I don't want to get into that.

14          **MS. HEPBURN:**  So there are different circumstances for

15   each of the plaintiffs, Your Honor, and that's why we couldn't

16   marshal the proof identically for each plaintiff.

17          **THE COURT:**  Okay.  I'm just sort of at a loss as to

18   how you have an expert with regard to some of these identifying

19   the information as child pornography, and presumably that would

20   be presented if I weren't persuaded by it -- indeed, I have my

21   own opinion as to which ones qualify and which ones don't, but

22   I don't understand how it is that -- first of all, I'm not

23   going to use my opinion as to whether or not they meet or don't

24   meet as long as you're relying upon experts.

25          If, indeed, all you were doing were putting these images

1    before the trier-of-fact -- and, like I said, I thought

2    everybody had seen them and that I was going to have to figure

3    out which one -- because there are objections as to the nature

4    of the images to some of them, and actually Shawn Halbert's

5    letter points out a number of ones that she didn't believe were

6    child pornography.

7         But if you're relying upon experts and points of contact,

8    then it's not obviously up to the Court to determine if they

9    are or if they are not.  It's up to the experts.  But let me

10   get to that.  I have lots of questions about the experts.

11        Did the -- how does this work?

12        Mr. Balogh, I'm going to return to you on this.  Do you

13   have a designated expert who will opine that the images are not

14   child pornography?

15        **MR. BALOGH:**  I have not designated any rebuttal expert

16   at this time.

17        **THE COURT:**  Okay.  So on a motion for summary

18   judgment, though, if I accept -- let's take one of the Laws's

19   ones because that is more -- it's easier.

20        If Mr. Laws designates something as child pornography and

21   you object to it, well, what evidence do you have if you, one,

22   haven't seen it, and, two, don't have an expert yourself that

23   says it's not child pornography -- how do you object to it and

24   how does that overcome summary judgment?

25        **MR. BALOGH:**  Respectfully, I think the question is

backwards.  My objections have been to the sufficiency of their

showing, and our objection is it's insufficient.  I don't

have --

     **THE COURT:**  So --

     **MR. BALOGH:**  I don't have to overcome it.  If they

have sufficient evidence, I'm going to -- if they have

sufficient evidence under the Rules of Evidence of Civil

Procedure that proves their case, I lose.

     **THE COURT:**  Right.

   Let's assume that Mr. Laws has identified one as

pornographic and I've seen it and I agree that it's

pornographic --

     **MR. BALOGH:**  I'm fine with that.

     **THE COURT:**  -- and you object that it's not

pornographic.

     **MR. BALOGH:**  Well, I -- well, I don't think -- I

don't -- I would -- actually, we have a chart and we have

objections to it, so if we can actually go to an actual case,

because I don't think that objection exists except for Sally

and Violet.  We do on Sally or Violet, but I don't think I have

raised that specific objection.

   Erika and Tori the objection is the mother couldn't

identify which one is the other so they can't prove by a

preponderance it's either one of them because the birth mother

says --

1     **THE COURT:**  Hold on.  Are you saying then that there

2  are only two that you object to?

3     **MR. BALOGH:**  No.  I objected to everything, but I

4  objected on different grounds to different showings.

5     **THE COURT:**  On different grounds.

6     On this ground.  I'm still concentrating on this ground,

7  the pornographic nature of it.  That's one of the elements.

8  I'm doing my best to try to separate the elements so that I can

9  deal with them one at a time.

10     **MR. BALOGH:**  And my objection is to -- except for two

11  of them were to the sufficiency of the showing of pornographic

12  content, not disputing it.  And there is -- I'm saying they

13  haven't put forth -- they have not put forth evidence that

14  meets the statutory definition, and they suffer a failure of

15  proof.  That's the objection for most --

16     **THE COURT:**  Is your objection more to the third

17  element, that they haven't established the possession by your

18  client as opposed to the pornographic nature of the image?

19     **MR. BALOGH:**  It's not -- I wouldn't say "more" to any.

20  I have made specific objections to each plaintiff, and I'm

21  resting on every objection I've raised to each plaintiff.

22     **THE COURT:**  Let's look at Sally.

23     **MR. BALOGH:**  Let's look at Sally.

24     **THE COURT:**  I believe that you objected to Sally,

25  Violet and Erika and Tori on identification by --

1  non-identification by parents, and Sally and Violet I thought
2  that you objected to both of those as to the content of the
3  image.
4        **MR. BALOGH:**  That was one of the objections I raised
5  to both of those plaintiffs, yes.
6        **THE COURT:**  That's the objection I'm dealing with now,
7  not all of the other objections you've raised.  Let's deal with
8  one at a time.
9        **MR. BALOGH:**  Okay.
10        **THE COURT:**  All right.  Now, with regard to Sally and
11  Violet --
12        **MR. BALOGH:**  Right.
13        **THE COURT:**  -- Mr. Laws, actually on both, says he
14  identifies the content of both of those images as pornographic.
15        **MR. BALOGH:**  That is correct.
16        **THE COURT:**  Okay.  You've objected to the content.
17        **MR. BALOGH:**  That is correct.
18        **THE COURT:**  Okay.  Do you have an expert that -- and
19  let's assume I agree with -- let's assume I agree with his
20  characterization of Sally and Violet as being pornographic
21  images.
22        **MR. BALOGH:**  Let's stay with Sally for now.  Let's do
23  one at a time.
24     Sally -- I say that picture that they presented in
25  unredacted format, even assuming it's Sally and even assuming

1   it's on his computer, isn't child pornography under 2256.  That

2   no fact-finder could lead to that conclusion.  And, thus, I

3   contend they failed to prove their case with respect to that

4   one image of Sally, assuming the other predicates have been

5   met, which I have also disputed.

6              **THE COURT:**  Okay.  Okay.

7        Sally is a tough one for you all, plaintiffs, given that I

8   believe that you describe her as a voyeur --

9              **MS. HEPBURN:**  Yes.

10             **THE COURT:**  -- watching her sister.

11             **MS. HEPBURN:**  Yes.

12        And I think that counsel is thinking of a different image

13   of Sally, which is a nude full frontal shot of her standing and

14   smiling at the camera, but we identified in our chart the one

15   where Sally is a voyeur, yes, Your Honor.

16             **MR. BALOGH:**  And the problem with that, Your Honor --

17   I want to make sure this objection was clear -- the one they're

18   discussing now wasn't disclosed during expert discovery.  The

19   full frontal bathtub shot we discussed at deposition.  That was

20   the basis for the opinion.  Now that I've attacked that, they

21   are all of a sudden at the chart stage substituting a different

22   image that's not part of their expert disclosures that's

23   Exhibit D -- their expert disclosures were attached.  They are

24   in the Court's possession.  Expert indeed to my opposition

25   filing on January 29.  So they are substituting.

1          So Laws came forward and said the full frontal bath

2     shots -- he says that is pornographic.  We discussed at

3     deposition.  That's what they brought summary judgment on.  We

4     opposed saying that doesn't meet the definition.

5          In the chart for the first time, they're substituting a

6     new image that's not part of his expert disclosures and not

7     part of his declaration, and it cannot be considered for an

8     independent reason because they did not make that an opinion

9     they were putting forward when they were obligated to disclose

10    their expert reports by the expert discovery cutoff, so they

11    can't even rely on that photograph at this stage because it's a

12    flimflam now that was never previously disclosed.  It shows up

13    in their chart in this case for the first time, and I object

14    for that independent reason.

15          **THE COURT:**  They weren't supposed to put anything in

16    the chart that wasn't already in the record.  Are you telling

17    me that this wasn't already in the record?

18          **MR. BALOGH:**  There was descriptions of photographs

19    with Sierra in the record because she -- they are supposedly

20    sisters, but in neither Laws's expert -- neither his

21    declaration nor his expert disclosures does the voyeur theory

22    or the voyeur image -- it doesn't exist in this case until now.

23    And I didn't get notice of that at the expert discovery stage.

24    It wasn't litigated in the motion.  It's a new image they're

25    claiming meets the definition after briefing is closed, after

1    discovery is closed.  It's an independent objection.

2              **THE COURT:**  Okay.

3         Ms. Hepburn, where did this come from?

4              **MS. HEPBURN:**  He is simply wrong.  If you look at our

5    initial filing on this motion, Declaration of John Doe, who is

6    the father of Sally, the image attached there that he

7    identifies as Sally is not the bathtub picture.  It is the one

8    where she is the voyeur looking at Sierra masturbating the

9    adult male.

10        We are not relying on the declaration of Kevin Laws with

11   regard to Sally.  And, again, I believe that this is a question

12   of we put the facts before the Court and the Court can decide

13   whether this constitutes child pornography or not.

14        And, yes, I agree with you, this particular one with the

15   voyeur -- with Sally as a voyeur, that's not as clear as the

16   other ones.

17             **MR. BALOGH:**  Just for clarity, Your Honor, page 9 of

18   their chart, they rely on John Doe to identify Sally as a

19   victim.  They identify Laws as the witness to identify sexual

20   conduct.  This is their chart, page 9.

21        So they can't change that.  They wrote it in paper.  And

22   it -- and so now they've now admitted they're not relying on

23   Laws, which was the basis of the Court's question:

24   "Mr. Balogh, if I agree with Mr. Laws, what do you say then?"

25   But Mr. Laws doesn't say that.  He talks about the full frontal

1  picture that they disclose as part of expert discovery, not

2  this new voyeur theory.  And the voyeur theory they're only

3  identifying that's a picture of Sally, not sexual conduct

4  because their chart says that.  Their chart says they are

5  relying on Laws.

6          **MS. HEPBURN:**  The Laws's reference in the chart links

7  it to Mr. Curtis.  That is the purpose for the reference to

8  Mr. Laws's declaration.

9          **THE COURT:**  Yeah.  The third column is the nexus

10 column.

11         **MR. BALOGH:**  Right.  But I'm talking about the second

12 column which is the sexual content column.  They're not relying

13 on John Doe.  They are relying on Mr. Laws, which they just

14 disclaimed on the record.

15         **THE COURT:**  Well, they are relying on John Doe for the

16 identification of her.

17         **MR. BALOGH:**  Right.  But that's not what we are

18 talking about.  We are talking about the sexual content of the

19 photo column.  That's column 2.

20         **THE COURT:**  That's column 2, right.

21         **MR. BALOGH:**  Uh-huh.  And that's not Doe, that's Laws.

22         **THE COURT:**  That's true.  That's exactly what it says.

23         **MS. HEPBURN:**  But that is the reference to Sierra's

24 behavior in the photo of which Sally is the voyeur.  That is

25 the purpose for that.

1          **THE COURT:**  The same photo I think appears for Sierra,

2     and it -- yeah.  I'm sure it's the same one -- yeah.  Same file

3     name.  It's "sexual content of image is described by Laws."

4          **MS. HEPBURN:**  The photo with Sally in it, Your Honor,

5     is slightly different than that for Sierra.  The scope of the

6     photo, the frame within which the behavior is shown, is

7     expanded to include Sally on the image that we reference for

8     Sally.  It did not -- it was not the same as for Sierra,

9     although it looks to be the same scene happening at the same

10    time.

11         **THE COURT:**  Okay.

12         **MR. BALOGH:**  My only question with that, Your Honor,

13    is they identified as the identical image -- the supposed

14    hashtag value is the same for both, as the Court correctly

15    noted:  270x330_F28718AE8410B289B47B.jpg for JPEG is the

16    identical image in both so I don't understand how there can be

17    these expanded images or expanded views.  It's either the

18    identical image by the hashtag value or it's a different image,

19    and the plaintiffs in one breath say it's the identical image

20    because they named the image name and they say verbally they're

21    different images because one has an expanded view.  I

22    respectfully contend both those contentions cannot be true.

23    It's one or the other.  They're identical by hashtag value or

24    they're different images, and the --

25         **THE COURT:**  Okay.

1      Now, let me just make sure I understand.  You've got four

2  different sources identifying what is and what is not child

3  pornography.  Okay.  What if the Court determines that an image

4  is not child pornography?

5      I assume, Mr. Balogh, even though you object to the Court

6  reviewing any of these photos, if the Court were to determine

7  that something wasn't child pornography, is it your position

8  that notwithstanding that, if any aspect of the case has to be

9  tried, then the Court would have to allow a jury to make that

10 decision, even though on a Rule 50 motion for a directed

11 verdict I could certainly determine that the jury got it wrong?

12      **MR. BALOGH:**  Well, I think that -- unless you are

13 going to tell the jury "I talked to the agent in my chambers

14 and these were found on his computer because I have been given

15 assurances by the agent," which I would obviously object to --

16 in the absence of that, the plaintiffs have to prove their case

17 to the jury.

18      **THE COURT:**  First of all, I didn't talk to the agent

19 in my chambers.  I received a thumb drive, and I looked at them

20 myself.  I don't need any help looking at --

21      **MR. BALOGH:**  Right.  "So I received a thumb drive that

22 was represented to me to contain what was on his computer, and

23 I accept those ex parte representations."  It's six and one

24 half dozen to another.  I have --

25      **THE COURT:**  Okay.  I don't want to hear any more about

1  that, and I'm losing my patience, and we still have a lot to
2  get through.  So I just want you to answer the question that
3  I'm putting to you.
4          MR. BALOGH:  Okay.
5          THE COURT:  If I determine that an image is not child
6  pornography, if I have made that determination based upon my
7  in camera review, am I supposed to, under your theory of the
8  case, deny summary judgment and allow it to go to a jury, and
9  if the jury finds it is summary judgment, I'm supposed to just
10 let that stand, even if I don't find myself that it amounts to
11 child pornography?
12         MR. BALOGH:  I don't I think I can answer that
13 question.
14         THE COURT:  Yeah.  I didn't -- I guess that doesn't
15 surprise me.
16     Okay.  So let me make sure I understand.  There are not
17 going to be experts from both sides telling the jury its view
18 on whether or not this is child pornography or not?
19         MR. BALOGH:  They disclosed an expert; we didn't.
20         THE COURT:  Okay.  Okay.
21     Now, there are numerous images in the docket and only one
22 appears on the chart.  I'm assuming that the plaintiffs
23 selected one per person.  I didn't actually mean for you to
24 limit it, but I know I said "one," but I meant one as the
25 floor.  You have to pick at least one per person as opposed to

1    everyone.  So there are a lot more in the record than have been

2    identified on the chart.

3        If the Court were to find that there was an image per --

4    for one of the plaintiffs that did not amount to child

5    pornography, is it the plaintiffs' position that you would

6    still be able at trial to present any of the other images that

7    are currently in the record?

8        **MS. HEPBURN:**  Yes, Your Honor.  We did understand from

9    the Court that the Court wanted us to select only one per

10   plaintiff for purposes of making things more manageable, and so

11   that's what we did.

12       **THE COURT:**  I understand.  One of my law clerks told

13   me that that is what he understood, too.  That's not what I

14   meant, but okay.  I stand by that.

15       So your chart does not preclude you from making -- or

16   using other exhibits.  The limitation is they have to already

17   be part of the record.  They cannot be something beyond what

18   you've already produced in this case.  That's the only

19   limitation.

20       **MS. HEPBURN:**  Yes.

21       **THE COURT:**  So in that instance, if the matter were to

22   proceed to trial, both the charted images as well as other

23   images would be presented; is that correct?

24       **MS. HEPBURN:**  Yes, Your Honor.

25       **THE COURT:**  You wouldn't just present the one that you

1   picked for the chart --

2              MS. HEPBURN:  True.

3              THE COURT:  -- when you've got so many.  Okay.  Okay.

4        All right.  Let's turn to one of the other issues, and

5   that is the third column, the possession by the defendant on

6   his computer.

7        Now, in the chart, you say -- I asked you to put down

8   everything that you were relying upon to show the defendant's

9   possession of each of these items -- of each of the images, at

10  least the images that are on the chart.  You indicate for all

11  defendants you're relying upon the plea agreement, the

12  transcript of the plea hearing, and the HSI report.  Then of

13  course as you go through each image, you add additional

14  sources.

15       Now, I spent some time this morning looking at those --

16  all of these items, and I don't see anywhere in the plea

17  agreement or the transcript of the plea hearing or the HSI

18  report anything specific about the images found on the

19  defendant's computer, only references to child pornography

20  generally found on his computer.  The HSI report, which looks

21  to me to be just one page with the NCMEC report attached to it

22  or at least following it on Docket 139-4 -- there are details

23  about the airport stop, the seizure of the devices and the

24  media and the forthcoming forensic examination, but there isn't

25  anything specifically that identifies the images that you all

1    have put forward as having been found on the defendant's

2    computer.

3        Ms. Halbert's letter also makes it clear there aren't any

4    admissions by the defendant as to any particular images.  I

5    also note in her letter it's not clear to me even which images

6    are being discussed and whether or not they're the same images

7    we're talking about today.  And she also objects that not all

8    the images are pornographic in nature.

9        So I'm not seeing anything in those -- the Halbert letter,

10   the HSI report, the plea agreement, or the transcript that tie

11   these images specifically to Mr. Curtis's computer.  So that

12   leaves the NCMEC report, the Coffren declaration, and the Laws

13   declaration.

14       **MS. HEPBURN:**  Your Honor, if I may, the references

15   generally to "all plaintiffs" refer to the recitation in those

16   documents of the USB drives described as the SanDisk Cruzar,

17   the Transcend, etc., those particular items of media which were

18   seized.  They were referenced in the plea agreement, I believe.

19   And so that is a more generic reference.

20       And then when we get to Mr. Laws's declaration, then he

21   refers to finding specific images on each of those pieces of

22   media; again, the SanDisk Cruzar, the Transcend drive, etc.

23   And those are also listed on the HSI report, Your Honor, the

24   single-page HSI report.  That was the intent of those

25   references.

1          **THE COURT:**  And was Mr. Laws -- how do we know that he

2     was looking at the same drives that were seized?

3          **MS. HEPBURN:**  Well, it was the drive that was provided

4     to him in the 3509 procedure by Agent Popper, which was the

5     same one that was listed on the report, acknowledging their --

6     Mr. Balogh's objection that that's an element of hearsay, but

7     we think that we overcome that as well.

8          **THE COURT:**  How?

9          **MS. HEPBURN:**  First -- well, I would rely primarily,

10    Your Honor, on the residual hearsay rule, Federal Rule of

11    Evidence 807, which talks about the indicia of reliability

12    surrounding the statement and corroborating evidence, and in

13    that regard, there's several indicia of reliability.  And,

14    again, it's a -- there's 15 different plaintiffs, and so you

15    have to look multiple places.  But one is this was a statutory

16    procedure that Mr. Laws was involved in, sanctioned by statute,

17    which was also preceded by a specific protocol meeting at

18    Homeland Security in -- around Washington, D.C.  That then --

19    this process proceeded on that.

20         We have the NCMEC report which lists the file name of the

21    individual images.  Mr. Laws did find in a number of

22    circumstances the file name of the individual images.  The

23    images, sanitized images, that supervising agent Barfuss

24    provided similarly had the same file names in multiple

25    instances.

1       And then Ms. Halbert's letter and AUSA Garcia's letter

2  also provide descriptions, which are similar, very similar in

3  some circumstances -- in other circumstances for other images,

4  not so much -- that also are the same for a number of these

5  images.  So you have a corroboration of the whole by all of

6  these different factual instances which do correlate with each

7  other.

8       **THE COURT:**  So for 15 plaintiffs, you expect me to go

9  through this puzzle and figure out where the trail is?

10      **MS. HEPBURN:**  Well, that's why we provided the chart,

11 Your Honor, and we do think that that's a shorter path to

12 resolution in the case than trial, which consumes more judicial

13 resources.

14      **THE COURT:**  Okay.  I'm not sure I even understand

15 exactly how you think all of that shows.

16      Mr. Balogh, you made an objection -- I think you repeated

17 it for each one of your people -- that the -- essentially the

18 plaintiffs are relying upon the hearsay of Agent Popper and

19 Barfuss.  They are the two that provide images, I guess, the

20 devices or a thumb drive or whatever, to Mr. Laws for his two

21 views of the evidence.  And you indicate that those aren't even

22 the images representing the plaintiffs' child

23 exploitation series -- you say that they're the images

24 reflecting the series and not the actual images found on the

25 defendant's computer.  Please explain what you mean.

1        **MR. BALOGH:**  Okay.  I will take it a couple steps.

2        One, let's start with Popper, and the reason 807 doesn't

3   apply is, one, it's just plain hearsay.  It's just "Popper told

4   us that he was giving us," and I think plaintiffs are wrong.

5   If you look at Laws's declaration and his deposition, what Laws

6   says is he doesn't look at what the -- at the actual drives.

7   That what he claims is that Popper made him a different drive

8   and Popper told him everything on that drive was seized.  So

9   that's the nature of the hearsay.

10       And 80 -- one, we don't think that would meet 807.1

11  because we don't think relying on an agent, which is

12  testimonial hearsay and core confrontation, has indicia of

13  reliability.

14       But even if they could overcome that burden, they have to

15  show they couldn't get it from another source through

16  reasonable efforts, and they most certainly could have

17  subpoenaed Laws, Popper, or Barfuss for deposition under Rule

18  30 and secured testimony for this case.

19       So they had a reasonable opportunity to get it.  They

20  forewent it, and this is a shortcut, so I don't think 807 gets

21  them home.

22       But back to your question specifically, so for number one,

23  it's the original images.  It relies on the hearsay of "Popper

24  made me a special drive, and I looked at that drive, and I'm

25  relying on Popper's representations."

1        For Barfuss, that's -- after he couldn't find all the

2   images, if you look at what Laws says -- Laws doesn't say that

3   Barfuss even represented that these are sanitized versions of

4   what was found on Mr. Curtis's media.  There isn't even the

5   equivalence for number one.  He is saying "She -- she sent me

6   sanitized images from the series, and they link up to some file

7   names," meaning they don't link up to other file names, which

8   means they're not exact copies.  And Laws never says that even

9   Barfuss represented to him "I'm sending you in sanitized

10  version all of the images found on Curtis's media."  She says,

11  "I'm sending you sanitized versions of the photographs of these

12  plaintiffs," and that's apples and oranges.

13       So, for example, if we just take Erika and Tori, they say

14  they are relying on MAM8XEC.  That name doesn't come up in

15  Laws's expert disclosures.  It doesn't come up in Laws's expert

16  report.  It doesn't come up in Laws's declaration in support of

17  summary judgment.  It shows up on the chart.  Where does it

18  come from?  And they say in the -- and they finally say in

19  column 3, "well, that image is on the NCMEC report."

20       Where is the evidence that that image was found on it

21  except -- on his computer and where is the evidence that that

22  image is the equivalent of the one they're describing in sexual

23  content?  There is no evidence in the record to find any of it.

24  And I know it's been hard on Your Honor.  Believe me, I hope at

25  least my work shows I've dug through everything extraordinarily

1    closely.  The first time I heard of MAM8XEC being in this case

2    was when I got their chart, and I went through all their

3    citations, and it doesn't mention it.  There is no evidence

4    that -- except for the NCMEC report, there is no evidence that

5    that resided on Curtis's media, and there is no evidence that

6    that image has sexual content because they just describe images

7    they say were found on his thing without linking what they say

8    they see to the file name.  So there is a double disconnect.

9        So I'm saying that none of that -- they can't get over any

10   of that hearsay.  807 -- and they have now admitted it's

11   hearsay -- 807 doesn't mean you can repeat what a police

12   officer tells you, and that's the basis for the opinion.  And

13   I'll go one step further, had Laws -- theoretically Laws could

14   have opined why he was relying on it and what he did, why did

15   he look for a chain of custody form, how has indicia of

16   reliability -- laws, who is a former HSI agent, could have at

17   least undertaken to make a reliability showing or show what

18   these images were, make a list of the file names.  Laws

19   presented none of that.  And at this stage, that evidence is

20   just absent from the record.  And because it's absent from the

21   record, they haven't sustained their burden for any plaintiff

22   that these images that they say are child pornography resided

23   on Mr. Curtis's media, and in the absence of that showing, they

24   cannot have summary judgment.

25            **THE COURT:**  Ms. Hepburn?

1     **MS. HEPBURN:**  We did provide that particular image,

2  the Pink Heart Sisters image with Mr. Laws's expert disclosure.

3  It is on the declaration as well.  So it's not the first time

4  that Mr. Balogh has known of it.

5     We acknowledge there is an issue with the identification

6  there in terms of the mother not knowing which of the girls it

7  is.  That's true.  But it's -- like so many things Mr. Balogh

8  says we're just producing it at this time is simply not true.

9  We did produce it with the expert disclosure.  He did have it

10 before.  It is not one that Mr. Laws found in his evidence

11 review, and he didn't make it up that he found it.  And so --

12 but it was provided to him by Agent Barfuss in response to her

13 request for Curtis sanitized images.

14     **MR. BALOGH:**  I guess we're talking past each other.

15     Here is my simple question:  Where in the record does it

16 say that file name MAM8XEC.jpg is the same image as the image

17 they claim it is?  Which witness identifies that file name as a

18 pornographic image found on his machine?  That's my question.

19     I'm unaware of any witness saying that on any occasion,

20 but I'll stand to be corrected or I'll sit to be corrected

21 because we're on Zoom.  That's what I don't understand.  And

22 that's true for many of them, but that's the example we'll lead

23 with.  Where does that file name show up before the chart in

24 this case ever?

25     **THE COURT:**  What does the -- to throw something else

1   in the mix, what does the NCMEC report get you?  How far does

2   that get you to the possession on the defendant's computer?

3          **MS. HEPBURN:**  It correlates the file name with those

4   images that were produced, Your Honor.  It's another indicia of

5   corroboration of reliability.

6          **THE COURT:**  It correlates the file name with the

7   images that were produced by whom?

8          **MS. HEPBURN:**  Produced with the expert disclosure,

9   Your Honor, and as are detailed in the declarations, some --

10  not all of the declarations but some of the declarations

11  supporting the summary judgment motion, those are -- we do give

12  file names in a number of those declarations.

13         **THE COURT:**  Walk me through this report.  I'm not sure

14  I understand it.  Tell me about this report.  The Coffren

15  declaration doesn't really give me a lot of detail.

16      So who sends these images to this non-profit organization?

17         **MS. HEPBURN:**  The case agent makes a clone of the

18  actual media seized from the defendant.  The clone goes to

19  NCMEC, N-C-M-E-C.  Their case analysts look at it.  They look

20  for known images of child pornography, that is, images that

21  have been identified to a particular series or a particular

22  individual.  And then a report is then sent back to the law

23  enforcement agent on the case.

24      We've found 38 images of the Vicki series.  Here is the

25  file names.  As are listed, they're separated out by series in

1   the report as is shown.

2       THE COURT:  But it doesn't really prove that the

3   images that it lists were found on Mr. Curtis's computer.  I

4   mean, that proof has to come from whoever did the forensic

5   examination of his computer, doesn't it?

6       MS. HEPBURN:  A case agent, yes, Your Honor.

7       THE COURT:  Okay.  Is that Popper?

8       MS. HEPBURN:  Yes, it is Popper.  He was part of the

9   law enforcement team on the original case against Mr. Curtis,

10  and I believe that he was the person designated as the case

11  agent.

12      THE COURT:  And Barfuss as well?

13      MS. HEPBURN:  I'm sorry?

14      THE COURT:  Barfuss, which is -- is with HSI as well,

15  but what is her position, his or her position?

16      MS. HEPBURN:  Popper's?

17      THE COURT:  Barfuss.

18      MS. HEPBURN:  Barfuss.  She's a supervisor of Agent

19  Popper.

20      MR. BALOGH:  Just to be clear, I'm not sure it's a

21  hundred percent correct.  An agent by the name of Jerry

22  Kawai -- I understand no relation to my colleague John Kawai --

23  was the lead case agent.  Popper came on the case later, as I

24  understand it, and I do agree that Barfuss, as I understand her

25  position, has been represented to be a supervising agent

1    currently at HSI on Samson Street -- 630 Battery Street,

2    San Francisco.

3         THE COURT:  Laws says that he was -- in his

4    declaration that he was provided images from both of them, from

5    both Popper and Barfuss.  He reviewed some of the materials at

6    HSI that were provided by Popper on July 14 of 2020, and then

7    he indicates that he received from Barfuss on October 12th,

8    2020, some additional images, but he doesn't say how he

9    received them.

10        MS. HEPBURN:  He received them via email, Your Honor.

11        THE COURT:  Pardon me?

12        MS. HEPBURN:  He received them via email, although it

13   may not be in the declaration.  I can't speak to that

14   specifically at the moment.

15        THE COURT:  It doesn't say how he received them or in

16   what form.  This -- yeah.  I think there are some problems.

17   There are definitely some problems in this case.

18        The absence of having a description, a declaration from

19   someone connected with the forensic examination of the

20   computer -- I mean, even if this a preponderance of the

21   evidence and even if circumstantial evidence is admissible on

22   these questions, there is simply nothing connecting

23   Mr. Curtis's computer with these images other than Popper and

24   Barfuss said they were; right?  But neither one of them has

25   submitted a declaration or been -- have they been deposed?  I

1  have no idea.

2       MS. HEPBURN:  No, they have not been deposed,

3  Your Honor.

4       THE COURT:  They have not been deposed.  They haven't

5  submitted a declaration.  Okay.  That's an issue and obviously

6  some of the identification issues.  I don't quite understand

7  why you -- are there no other pictures from Erika and Tori?  I

8  don't know how you could possibly find, notwithstanding the

9  fact that the image is pornographic, in the Court's view, and

10 has been described as that by Mr.-- no.  No one has described

11 it, actually.  No one has described the image of Erika and Tori

12 as pornographic.  You say in your chart you're relying on the

13 Court's review of it.

14      MS. HEPBURN:  Your Honor, we simply couldn't -- we

15 couldn't possess the image so we couldn't describe it, and we

16 couldn't reach the POC for that particular series.

17      THE COURT:  Yeah.  There are a couple of problems with

18 this showing.  The fact that there are so many different

19 sources.  The fact that there are -- there's an expert for some

20 of the images who identifies them as pornographic.  For some of

21 them there are the points of contact, and those are probably

22 sufficient, I guess.  Assuming the officers know what the

23 statute -- how the statute defines it, it's probably sufficient

24 for a police officer to define something as child pornography.

25      I'm not persuaded that the children themselves, that the

1     victims themselves, are appropriate.  They can certainly

2     describe the nature of the image, but they can't come to the

3     legal -- they can't opine on whether or not it meets 2256, so

4     that would be the fact-finder.

5         And then on some of these, you are relying on the Court,

6     even though you don't even know what my view is on all of

7     these, and I have to tell you, it was not unanimous that -- in

8     my view, that all of these qualified.

9         **MR. BALOGH:**  Can I make one objection to that, one

10    thing in the mix?

11         **THE COURT:**  What?

12         **MR. BALOGH:**  On the POCs, I won't restate prior

13    objections obviously because you told me not to, but for the

14    police officers, expert reports were due on November 30th.

15    They didn't provide expert reports for the POCs, so under

16    Rule 26 they can't rely on expert opinion for them, so I would

17    respectfully contend the Court can't rely on them as experts,

18    as police officer experts, because the plaintiffs did not

19    provide expert reports saying "We will offer expert testimony

20    from this officer, and the opinion the officer will render is

21    X, Y or Z."  And I don't think it's a good objection saying

22    they're POCs because they did ultimately give declarations from

23    the people they are relying on like Rothrock or Findley.  So

24    why couldn't they -- they should have been required under this

25    Court's scheduling order to give me a report on November 30th

1   that said "We are going to rely on the expert opinion of Thomas

2   Rothrock, and he is going to say X.  We are going to rely on

3   the expert testimony of Joshua Findley, and he is going to say

4   Y."  We didn't get that notice, and the absence of giving

5   expert reports precludes reliance on expert testimony at the

6   summary judgment stage.

7          **THE COURT:**  Yeah.  I'm just not sure it's being

8   offered as expert testimony, though, for a police officer, that

9   you have to qualify a police officer as an expert to give an

10  opinion on that.

11         **MR. KAWAI:**  And I believe the written report

12  requirement is for retained witnesses.

13         **MR. BALOGH:**  I respectfully --

14         **THE COURT:**  The written report requirement is for

15  retained experts.  Right.  It's kind of like what happens in

16  civil litigation when doctors -- when the treating physician,

17  who doesn't provide an expert report and is not called as an

18  expert but is being called by virtue of their expertise gained

19  in their treatment of this particular person -- we don't

20  require expert reports.

21         **MR. BALOGH:**  But in criminal cases where a police

22  officer testifies as a fact witness and an expert, reports are

23  required, disclosures required, and *Daubert* vetting required.

24         **THE COURT:**  But this isn't a criminal case,

25  Mr. Balogh.  This is a civil case.

1    So I don't think that that is fatal, but my whole point is

2    I'm very uncomfortable with the notion that for some of these,

3    obviously you feel that you have the need to have an expert or

4    a lay opinion provide the conclusion that these fit within the

5    definition, and on some of them, you're relying on the

6    plaintiffs themselves, which is troublesome for me.  And on

7    some of them, you are relying on the Court, even though you

8    don't even know what my construction is.  And that makes me

9    feel like you're substituting the Court for the proof that you

10   would otherwise need to -- if I had not done an in camera

11   review, you would have to put on some evidence that it

12   qualifies.

13       I don't understand why the Court's in camera review, now

14   that I have had a chance to look at all this stuff, now that I

15   understand that you all haven't seen the images, etc. -- I

16   don't think that that should substitute for some other indicia

17   or some other conclusion.  Either I decide all of them based

18   upon my review or I rely upon the opinions of others as you

19   have put forward with regard to the majority of them.

20       **MS. HEPBURN:**  Your Honor, if I may, let me be really

21   clear here.  We are not in any case relying on an opinion of a

22   plaintiff themselves that the image is in fact pornographic.

23   It is not our intent to have any plaintiff put forth such an

24   opinion.

25       The plaintiffs' statements were "this image was taken

1    while I was being abused."  That is not the equivalent of

2    saying this is a pornographic image under Section 2256.

3        A lot of our perhaps -- the different approaches to this

4    is we were trying to put forth for the Court the best evidence

5    we had having no template, as Your Honor started this hearing

6    with, having no roadmap necessarily about proof that is

7    acceptable to a Court under 2255.  And so we were trying to put

8    forth what we had for the Court.

9        We do believe that the POC declarations are again factual

10   and not expert and that we put forth the facts about here's the

11   image, here's what's in the image as best we know, and we

12   submit that that satisfies 2255.

13       If I could have the image and attach it unredacted to a

14   declaration and I could therefore then put in my brief "and

15   such and such declaration shows and the attachment shows this

16   is what's in the picture and we submit it," then we wouldn't

17   have to ask the Court to have an in camera review.  We're

18   hamstrung by the fact this is contraband, and we were trying to

19   work around those constrictions as best we could.

20           **MR. BALOGH:**  May I respond, Your Honor?

21           **THE COURT:**  Yes.

22           **MR. BALOGH:**  Two points.  One, for Amy for sexual

23   content column, they only rely on Amy's declaration.  For Erika

24   and Tori in the sexual content column, they only rely on

25   Ms. Halbert's confidential settlement letter and no other

1    declaration, no declaration at least for sexual conduct.  No.

2    3, Jenny, again, they rely on Jenny, the plaintiff, for sexual

3    content.

4        So to the extent that -- Ms. Hepburn just said they're not

5    relying on any plaintiff to establish sexual content, then

6    those are all withdrawn because that's exactly what the chart

7    says.

8        And I have to, again, just disagree with this hamstrung

9    theory.  They could have deposed Popper and they could have had

10   Laws testify to everything they wished that he did now.  They

11   could have had him make all those representations subject to

12   cross-examination at deposition.  They didn't do that.  And now

13   they have a failure to prove.  But I don't think they are

14   hamstrung.  They made or executed poor choices, and that is not

15   being hamstrung.  That is just the quality of the litigation.

16           **THE COURT:**  Ms. Hepburn, you were trying to speak?

17           **MS. HEPBURN:**  Yes.  What I said about the plaintiffs'

18   declarations was we put facts there.  We did not intend to put

19   an opinion and have a plaintiff say "and this equals child

20   pornography under 2256."  I think those are two very different

21   things.

22           **THE COURT:**  But you did intend for me to interpret the

23   Laws's declaration as identifying child pornography; correct?

24           **MS. HEPBURN:**  Yes.  In those circumstances in which --

25           **THE COURT:**  That's in the same column.  Why wouldn't I

1    come to that conclusion that that's how you are proffering it?

2    The column heading is "sexual content."

3            **MS. HEPBURN:**  It may be in the same column, but the

4    nature of what is referred to is not necessarily the same,

5    Your Honor.

6            **THE COURT:**  I know.  But to the extent that you're

7    trying to make this easy and clear for me, you've totally

8    confused me.  If you put in that column that you are relying

9    upon Laws, his determination, as to sexual content -- because I

10   told you before -- before you did this, I told you that one of

11   the elements is that it has to not just be sexual content, but

12   it has to be pornographic.

13           **MS. HEPBURN:**  Well, Mr. Laws describes what he saw in

14   the image, and so that is putting facts before the Court as to

15   what is contained in the image.

16           **THE COURT:**  Okay.  Okay.  All right.  And it's up to

17   the trier-of-fact to determine if it's pornographic or not?

18           **MS. HEPBURN:**  Yes.

19           **THE COURT:**  Okay.  All right.  I think that I pretty

20   much had enough.  Is there -- hold on one second.  I just

21   dropped all my papers.  Hold on.  I will be back with you in a

22   few minutes.

23               (Pause in proceedings.)

24           **THE COURT:**  I just looked through my papers, and I

25   don't have anything else.  I think I've run out of patience.

1    And so unless any of you have something that you think I

2    absolutely need to know, I'm going to take the matter under

3    submission and see what I'm going to do with it.

4            **MR. BALOGH:**  Thank you for your time, Your Honor.

5    Appreciate it.

6            **MR. KAWAI:**  Thank you, Your Honor.

7            **MS. HEPBURN:**  Thank you, Your Honor.

8            **THE COURT:**  All right.

9                    (Proceedings adjourned at 2:42 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTER

4          I certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled matter.

6

7     DATE:    Wednesday, March 31, 2021

8

9     *Pamela Batalo Hebel*

10    _____
      Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
11    U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25