UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

"AMY", et al.,

              Plaintiffs,

    v.

RANDALL STEVEN CURTIS,

              Defendant.

Case No.  19-cv-02184-PJH

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 140

Plaintiffs' motion for summary judgment came on for hearing before this court on February 25, 2021.  Plaintiffs appeared through their counsel, Carol L. Hepburn and John A. Kawai.  Defendant appeared through his counsel, Ethan A. Balogh.  Following the hearing, the court sought additional clarification from plaintiffs by way of a supplemental chart of evidence and defendant submitted an opposition with a set of objections in response.  The court held an additional hearing on March 25, 2021.  Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS summary judgment in part and DENIES summary judgment in part as indicated below and for the following reasons.

## I.    Background

Fifteen plaintiffs, proceeding under pseudonyms, collectively bring this civil action against defendant Randall Curtis based on Curtis' possession of child pornography.  See 18 U.S.C. § 2252(a)(4)(B) (criminalizing possession of child pornography).  Plaintiffs assert a single cause of action under Title 18 U.S.C. § 2255(a) ("Section 2255"), which allows victims of child pornography to recover civil damages against people who have

1    committed a violation of certain enumerated statutes, including 18 U.S.C.

2    § 2252(a)(4)(B).

3          On September 6, 2016, the defendant was indicted in the U.S. District Court for

4    the Northern District of California for knowingly transporting and possessing child

5    pornography in violation of §§ 2252(a)(1) and (a)(4)(B), respectively.  FAC ¶ 35 (Dkt. 81

6    at 5).  Defendant pleaded guilty to these offenses on July 13, 2017, and he was

7    sentenced and a judgment was entered against him on June 8, 2018.  FAC ¶ 36 (Dkt. 81

8    at 6).

9          Plaintiffs Amy, Erika, Tori, Jenny, Jessica, Lily, Sarah, Skylar, Savannah, Sally,

10   Sierra, Maureen, Violet, Pia, and Mya each allege that they were victims of childhood

11   sexual abuse depicted in images of child pornography (alternatively referred to herein as

12   "child sexual abuse material" or "CSAM") seized from defendant's possession.[1]  See FAC

13   ¶¶ 3-30 (Dkt. 81 at 2-5).  They first learned of defendant's potential possession of their

14   CSAM images through their participation in the United States Department of Justice

15   Victim Notification System ("VNS"), which alerts them when they are potential victims in

16   investigations by federal law enforcement agencies.  FAC ¶ 38 (Dkt. 81 at 6).  Plaintiffs

17   allege that the Child Victim Identification Program ("CVIP") analysts at the National

18   Center for Missing and Exploited Children ("NCMEC") matched child pornography images

19   on the defendant's computer to child pornography images depicting plaintiffs in NCMEC's

20   database.  FAC ¶ 38 (Dkt. 81 at 6).  The CVIP notified the government of its findings and

21   plaintiffs subsequently received notice through the VNS that their images were among

22   those possessed by defendant.  FAC ¶ 39 (Dkt. 81 at 6).

23   //

24   //

---

[1] The term "child pornography" remains a legal definition, but the court alternatively refers to the subject materials in this case as "CSAM" to avoid trivializing the abuse of children. See Child Sexual Abuse Material (CSAM), NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN, https://www.missingkids.org/theissues/csam (last visited 3/4/2021); Appropriate Terminology, INTERPOL, https://www.interpol.int/en/Crimes/Crimes-against-children/Appropriate-terminology (last visited 3/4/21).

United States District Court
Northern District of California

## II.    Procedural History

Plaintiffs filed the original complaint in this case in April 2019.  Dkt. 1.  Defendant moved to dismiss the complaint for failure to state a claim, asserting in part that plaintiffs failed to plead personal injury attributable to him.  Dkt. 25.  The court denied defendant's motion to dismiss.  Dkt. 42.  In particular, the court joined other courts that have concluded that Section 2255 does not require plaintiffs to prove defendant was the but-for cause of their alleged injuries.  Dkt. 42 at 7, citing Paroline v. United States, 572 U.S. 434, 451 (2014); Doe v. Boland, 698 F.3d 877, 881, 884 (6th Cir. 2012).  Defendant subsequently sought to depose plaintiffs, leading to one of many rulings on discovery in this case.  The court initially ruled in favor of defendant to permit depositions of plaintiffs on the issues of identity and punitive damages.  Dkt. 71.

Plaintiffs thereafter sought leave of court to file a First Amended Complaint ("FAC") that eliminated their original claims for punitive damages, added no new claims, eliminated many factual allegations of the original complaint, and corrected an error pointed out by defense counsel.  Dkt. 77.  The court granted leave to file the FAC (Dkt. 80), and plaintiffs did so (Dkt. 81).  Defendant filed his answer to plaintiffs' FAC on April 10, 2020.  Dkt. 82.  In response, plaintiffs filed a motion to strike defendant's nine affirmative defenses from the answer.  Dkt. 97.

The court granted plaintiffs' motion to strike defendant's affirmative defenses.  Dkt. 130.  The court clarified that as long as a plaintiff demonstrates that she or he is a victim under Section 2255 and only seeks liquidated damages, then that person need not also prove actual damages.  Dkt. 130 at 9.  That is, plaintiffs need not establish actual damages to prevail on their Section 2255 claim, they need only to establish that they are victims of defendant's crime.  Id.

On the same day as the order on the plaintiff's motion to strike affirmative defenses, the court reiterated this premise in a separate order regarding defendant's request for relief from the magistrate judge's order denying discovery on damages.  Dkt. 131 at 2-3 ("[A] plaintiff that elects liquidated damages under § 2255 need not

demonstrate that he or she suffered actual damages. See Boland, 698 F.3d at 882.").
This court found error in a portion of the magistrate judge's discovery ruling, specifically
the magistrate judge's determination that plaintiffs had established their status as
defendant's victims; rather, plaintiffs still had to prove the issue of identity.  Dkt. 131 at 3.
The court did not find error in the magistrate judge's discovery order in any other respect,
leaving in place the judge's grant of plaintiffs' request for a protective order precluding
their depositions.  Dkt. 131; see also Dkt. 106.  The court stated, "given that damages
discovery is no longer an issue and given that identity is particularly within the personal
knowledge of each plaintiff, their identities could easily by established by declaration or
interrogatory responses, obviating the need for expensive, time consuming, and
potentially harassing depositions."  Dkt. 131 at 4.  Even though the court had initially
approved depositions on the issue of identity, as the litigation and motion practice more
clearly focused the issues in this case, the court's view changed.

Prior to the orders on the motion to strike and damages discovery, the court set
the following schedule for the case: close of fact discovery on October 29, 2020;
designation of experts by November 27, 2020; designation of rebuttal experts due by
December 29, 2020; dispositive motions to be heard by February 17, 2021; close of
expert discovery March 1, 2021.  Dkt. 87.  Neither party sought further extension of any
of these dates.

On January 19, 2021, defendant filed a motion for judgment on the pleadings, or in
the alternative, motion for summary judgment or adjudication.  Dkt. 142.  On the same
day, plaintiffs filed the present motion for summary judgment.  Dkt. 140.  Both motions
were briefed and heard on February 25, 2021.  Dkt. 166.  The court denied defendant's
motion by order entered on March 8, 2021.  Dkt. 169.

The court, struggling to ascertain the locations of plaintiffs' evidence in a fairly
opaque docket, instructed plaintiffs to submit a chart with citations to the documents and
at least one photo for each victim relied upon in their motion for summary judgment and
already in the record of this case.  Dkt. 170 at 2.  Defendant was permitted to file a

4

1   response to plaintiffs' chart "if he believes that the chart refers to evidence not currently in

2   the record." Id. at 3.   On March 10, 2021, plaintiffs' counsel requested by email to the

3   courtroom deputy that the court review an initial draft of the chart before they complete it.

4   Defendant emailed an objection.  The court issued an order clarifying its instructions for

5   the requested post-hearing filing.  (Dkt. 172).  Plaintiffs timely submitted their evidentiary

6   chart (Dkt. 175), and defendant filed a 20-page opposition that reached far beyond the

7   court's permitted scope of response (Dkt. 177).  The court nonetheless accepted

8   defendant's brief and has found it helpful.  The court held further hearing on the motion

9   on March 25, 2021.  Dkt. 179.

10  **III.    Legal Standard**

11          Summary judgment is proper where the pleadings, discovery, and affidavits show

12  that there is "no genuine dispute as to any material fact and the movant is entitled to

13  judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may

14  affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

15  (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a

16  reasonable jury to return a verdict for the nonmoving party.  Id.  "A 'scintilla of evidence,'

17  or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to

18  present a genuine issue as to a material fact."  United Steelworkers of Am. v. Phelps

19  Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989).  Rule 56(c)(1) expressly requires that,

20  to show the existence or nonexistence of a disputed fact, a party must "cit[e] to particular

21  parts of materials in the record."  Fed. R. Civ. Pro. 56(c)(1).

22          The party moving for summary judgment bears the initial burden of identifying

23  those portions of the pleadings, discovery and affidavits which demonstrate the absence

24  of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).

25  Where the moving party will have the burden of proof on an issue at trial, it must

26  affirmatively demonstrate that no reasonable trier of fact could find other than for the

27  moving party. However, on an issue for which the opposing party will have the burden of

28  proof at trial, the moving party need only point out "that there is an absence of evidence

United States District Court
Northern District of California

to support the nonmoving party's case." Id. at 325; In re Brazier Forest Prod., Inc., 921 F.2d 221, 223 (9th Cir. 1990) ("[I]if the nonmoving party bears the burden of proof on an issue at trial, the moving party need not produce affirmative evidence of an absence of fact to satisfy its burden.  The moving party may simply point to the absence of evidence to support the nonmoving party's case.  The nonmoving party must then make a sufficient showing to establish the existence of all elements essential to their case on which they will bear the burden of proof at trial.") (quoting Celotex Corp., 477 U.S. at 322-23).

"Where a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense."  Friedman v. Live Nation Merch., Inc., 833 F.3d 1180, 1188 (9th Cir. 2016) (internal citations omitted).  But allegedly disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.  The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  Id.

The court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  Tolan v. Cotton, 134 S.Ct. 1861, 1865 (2014); Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  If the nonmoving party fails to produce evidence rebutting the moving party's initial showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

Lastly, without granting summary judgment of an entire claim, courts may rely upon Rule 56 to determine certain facts or elements of a claim as established and thereby dispose of the need to adjudicate them at trial.  Fed. R. Civ. Pro. 56(g); see also

United States District Court
Northern District of California

1    Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1202 n.9 (9th Cir. 2009) (citing with approval

2    then-existing Rule 56(d)'s advisory committee note that "[t]he partial summary judgment

3    is merely a pretrial adjudication that certain issues shall be deemed established for the

4    trial of the case . . . and likewise serves the purpose of speeding up litigation by

5    eliminating before trial matters wherein there is no genuine issue of fact.").

6    **IV.    Discussion**

7          This case, where defendant pleaded guilty to possessing and transporting child

8    pornography but avoided acknowledging the identities of those depicted in the child

9    pornography he possessed, is one of first impression.  The case relies on interpretation

10   of Section 2255, a statute providing civil damages for victims of certain enumerated

11   criminal offenses.  There are thus only two issues to be decided: victimhood and

12   damages.  Through extensive motion practice, the court has made clear its reliance on

13   both Doe v. Boland, 698 F.3d 877, 882 (6th Cir. 2012), which held a plaintiff that elects

14   liquidated damages under Section 2255 need not demonstrate that he or she suffered

15   actual damages, and Paroline v. United States, 572 U.S. 434, 456-57 (2014), which held

16   that a possessor of CSAM is part of the overall phenomenon that caused a victim's

17   losses.  See Dkt. 42 at 7-8; Dkt. 130 at 8-9; Dkt. 131 2-3.  Plaintiffs proceed here seeking

18   only liquidated damages and thus need not establish damages separately.  If they

19   establish victimhood, they necessarily establish entitlement to civil (liquidated) damages

20   under Section 2255.  Dkt. 130 at 9.

21          In support of their motion for summary judgment, plaintiffs proffer a variety of

22   declarations, reports, and photos.  Defendant does not offer any contrary evidence of his

23   own, and instead objects to plaintiffs' offerings.  Defendant's objections are discussed

24   first before considering the sufficiency of plaintiffs' evidence.

25          **A.    Defendant's objections**

26          Defendant's several objections to the evidence proffered by plaintiffs generally

27   focus on certain categories of evidence.

28

7

United States District Court
Northern District of California

### 1.    Due process and declarations from plaintiffs not deposed

Defendant argues that the declarations of Amy, Maureen, Sarah, Lily, and Jenny should all be excluded from evidence because he was not permitted to depose any of them.  He asserts that it is "fundamentally unfair" as well as a violation of Fifth Amendment due process to hear their testimony despite their refusal to be examined in the case.  In support, defendant cites Ching v. Mayorkas, 725 F.3d 1149 (9th Cir. 2013) without pincite.  The court in Ching reversed a district court denial of an immigration petition where due process required that the petitioner be provided with an opportunity to confront witnesses against her.  Id. at 1157-59.  Plaintiffs do not directly address this issue on reply.

Here, defendant seeks another bite at the apple—that is, he attempts to re-litigate an issue already considered at length in this case.  Magistrate Judge Illman rejected defendant's effort to compel depositions of any plaintiffs, some of whom were still minors, explaining, " . . . Defendant's request to depose [plaintiffs] about their damages as related to his offense conduct should be foreclosed as irrelevant (due to their election of the liquidated damages remedy) and also because, even if relevant, it would be grossly disproportional to the needs of the case."  Dkt. 106 at 10.  This court found no error in that part of Judge Illman's ruling, agreeing that any depositions to determine plaintiffs' injuries or causation are unnecessary where plaintiffs seek only liquidated damages.  Dkt. 131.  Accordingly, the court overrules the objection to the extent that it goes to depositions on damages.

However, defendant also objects to the declarations of five of the plaintiffs who rely on their own declarations to establish their identity in the CSAM because he was foreclosed by the protective order from deposing them on this issue.  The court overrules the objection and continues to find that the Magistrate Judge's protective order was not clearly erroneous.  Nonetheless, only two plaintiffs rely solely on their own identification of themselves in CSAM, and only four minor plaintiffs rely solely on their parents' identification of them.  The court evaluates the sufficiency of the identity evidence of all

8

1   plaintiffs below.

2   **2.     Timeliness of plaintiffs' supplemental disclosures**

3          Defendant asserts that the court should disregard several declarations and

4   exhibits relevant to plaintiffs' proof of identity pursuant to Federal Rule of Evidence

5   37(c)(1).  That rule provides that a party that "fails to provide information or identify a

6   witness as required by Rule 26(a) or (e) . . . is not allowed to use that information or

7   witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

8   substantially justified or is harmless."  Under Rule 26(a), a party must identify individuals

9   "likely to have discoverable information . . . that the disclosing party may use to support

10  its claims or defenses."  Rule 26(e) requires a party to supplement or correct a Rule 26(a)

11  disclosure or discovery response if it learns that the disclosure or response is incomplete

12  or incorrect.

13         In affirming the exclusion of untimely disclosed evidence, the Ninth Circuit

14  explained, "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial

15  of any information required to be disclosed by Rule 26(a) that is not properly disclosed."

16  Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).  In that

17  case, the trial court excluded an expert report where, despite timely disclosure of the

18  expert's identity, the report was not provided to the opposition until two years after the

19  close of discovery and only 28 days before trial.  Id. at 1105.  Similarly, the circuit court

20  affirmed a trial court's exclusion of damages calculations not disclosed until the eve of

21  trial.  Hoffman v. Constr. Protective Servs., Inc., 541 F.3d 1175, 1179-80 (9th Cir. 2008),

22  as amended (Sept. 16, 2008).

23         Here, defendant argues that plaintiffs' supplemental disclosure of additional fact

24  and potential expert witnesses was untimely because it was made on October 28, 2020,

25  the day before fact discovery closed (October 29, 2020).  Plaintiffs counter in part that

26  they supplemented discovery two days after this court's order on discovery, which

27  clarified their need to establish each individual plaintiffs' identity.  See Dkt. 131 at 4 (order

28  entered October 26, 2020).  Defendant provides no authority suggesting that

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1    supplementing disclosures merely late within the discovery period (as opposed to well

2    after the close of discovery, as in the cases he cites above) renders the disclosures

3    untimely.

4         Defendant undercuts his argument further by raising this issue at the dispositive

5    motion stage of the case.  The court issued its revised pretrial order on June 18, 2020,

6    setting the close of non-expert discovery for October 29, 2020, and calling for dispositive

7    motions to be heard by February 17, 2021.  Dkt. 87.  If defendant needed to conduct

8    further discovery to oppose summary judgment, he should have requested a meet and

9    confer with plaintiffs at the close of fact discovery, as plaintiffs suggest in their papers.  If

10   defendant believed that would not have been fruitful, he should have filed a motion to

11   compel or otherwise sought leave to re-open discovery immediately.  Indeed, this

12   district's Civil Local Rules specify that a party has seven (7) days after the close of fact

13   discovery to seek to compel discovery, including depositions.  Civ. L. R. 37-3.  Thus,

14   waiting until the opposition to a later-filed motion for summary judgment to seek to bar

15   declarations from witnesses he did not even try to depose was an unreasonable and

16   inappropriate strategy.[2]

17        Because plaintiffs made timely supplemental disclosures when they submitted

18   them to defense counsel within the discovery period, there is no basis on which to

19   exclude the proffered declarations as untimely.  Thus, plaintiffs may rely on the

20   declarations from the witnesses named in their supplemental disclosures to establish

21   their identity.

22                    **3.    Hearsay and reliability of parent declarations**

23        Defendant argues that the declarations of parents offered to identify minor

24   plaintiffs should be excluded additionally because they are based on information provided

25   by others in violation of Federal Rules of Evidence 602 (personal knowledge

26

27   ───────────────
     [2] The court is not privy to the disclosures or to discovery and assumes that no
     depositions were noticed for or subpoenas issued for the witnesses defendant now
28   claims he should have been permitted to depose.  The court is unaware of any motion to
     compel depositions of the POCs.

United States District Court
Northern District of California

1  requirement) and 801 (hearsay bar).

2       Hearsay is a "statement, other than one made by the declarant while testifying at a

3  trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Ev.

4  801(c).  "[H]earsay evidence in rule 56 affidavits is entitled to no weight."  Scosche

5  Indus., Inc. v. Visor Gear Inc., 121 F.3d 675, 681 (9th Cir. 1997).  Hearsay evidence thus

6  may not be considered on summary judgment if it does not fall under a hearsay

7  exception.  See Orr v. Bank of America, 285 F.3d 764, 778 (9th Cir. 2002).  In

8  considering a motion for summary judgment, a court does not focus on the admissibility

9  of the evidence's form, but instead focuses on the admissibility of its contents.  See

10  Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).

11       Here, defendant objects to the declarations of John Doe and Jane Doe, arguing

12  the parents base their identification testimony in part on early childhood photos of their

13  daughters provided to them by a social worker.  John Doe Decl. ¶ 4 (Dkt. 139-4 at 269);

14  Jane Doe Decl. ¶¶ 3-4 (Dkt. 139-4 at 276).  For the alleged hearsay in the declarations of

15  adoptive parents John Doe and Jane Doe, plaintiffs note that the declarants' identification

16  of their daughters as victims in the sanitized photos is not based solely on photos taken

17  prior to adoption; rather, the identification is informed by those photos plus years of

18  parenting in which they have grown to recognize their respective daughters.  The

19  declarations from these parents, read in full, mention the individual plaintiffs' pre-adoption

20  photos in the context of supporting the reliability of a parent's identification of a victim

21  based on their personal knowledge of the victim's appearance over time.  The plaintiffs'

22  argument is more accurate here.  The pre-adoption photos are not offered at all as

23  truthful representations of plaintiffs, and thus do not constitute hearsay.[3]

24

25  _____

26  [3] Defendant also argues that the court should exclude the Jane Doe declaration because
    it is (1) unsigned, (2) the declarant does not present her true identity, and (3) the
27  signature page may have been from a different document despite having the same
    ending paragraphs formatted differently.  Plaintiffs' counsel certifies that the declaration
28  was signed electronically, and the substance of the declaration is accurate without
    alteration.  The objection is overruled.

1

**4.    Hearsay of criminal defense counsel correspondence**

Defendant alleges that copies of correspondence between the Assistant United States Attorney and his criminal defense counsel amount to hearsay, and that they should be excluded as statements pursuing negotiated compromise protected by Federal Rule of Evidence 408(a).  Plaintiffs counter that the correspondence is not being offered for purposes of revealing negotiations between counsel in the criminal case, but rather, it is offered for purposes of negating undue delay as permitted in Federal Rule of Evidence 408(b).  Plaintiffs argue that the correspondence details arrangements for defense counsel to view the actual contraband in mid-2018 and includes some descriptions by Mr. Curtis' then-counsel of the content of a portion of the images in this matter.  Because some defense counsel previously reviewed the materials involved in this case, they say, the defendant here cannot allege he has been prejudiced by their late submission of supplemental disclosures.

The issue of the lateness of plaintiffs' supplemental disclosures (served prior to the close of discovery) is fully resolved above, leaving no purpose to consider it here.  The correspondence itself, part of an exchange to resolve issues of restitution in defendant's criminal case, clearly falls within the context of a negotiated settlement where defense counsel made certain representations in an attempt to resolve the amounts of restitution payments that would be ordered at sentencing.  To the extent the settlement correspondence is proffered by plaintiffs to establish the sexual content of the photos depicting plaintiffs on defendant's media, as reflected on their post-hearing chart, it is rejected by the court and will not be considered on the issue of sexual content of the images.  Defendant's objection to its use for this purpose is sustained.

**B.    Plaintiffs' evidentiary offerings and determination of victimhood**

Title 18 U.S.C. Section 2255(a) allows for civil recovery by victims of certain enumerated statutes prohibiting child molestation, exploitation, and pornography, including the provision to which defendant pleaded guilty, Title 18 U.S.C. Section 2252(a)(4)(B) and (a)(1).  As stated in the post-hearing order requiring supplemental

United States District Court
Northern District of California

12

1   filings, the court explained that in its view, to establish victimhood under Section 2255,

2   plaintiffs must prove that (1) they are pictured in CSAM (identity), (2) the CSAM depicts

3   sexually explicit conduct as defined by Title 18 U.S.C. § 2256 (sexual content), and

4   (3) the CSAM was found in defendant's possession.

5                          **1.     Identity**

6          There are three categories of proof offered by plaintiffs to establish their identity in

7   the images involved in this case as reflected in the post-hearing chart: (1) plaintiffs' self-

8   identification, (2) plaintiffs identified by a parent, and/or (3) plaintiffs identified by law

9   enforcement points of contact (POCs) for respective series of CSAM.  Even though the

10  law enforcement POCs have long term familiarity and experience with the child

11  pornography series, they identify each plaintiff from the specific images in the record and

12  reflected on the post-hearing chart.  It appears from the papers that plaintiffs have also

13  relied on the identification made by Kevin Laws of some of them.  Defendant objects to

14  the Laws declaration on the issue of the identification of the minors in the CSAM because

15  it is unreliable and because he is not qualified as an expert on this issue.  Because the

16  court ultimately resolves the identification of the minors on the basis of evidence other

17  than the Laws' declaration, it does not reach this issue.

18                          **a.     Self-identifying plaintiffs**

19         **Amy** is identified through her own declaration.  Amy Decl. ¶ 5 (Dkt. 139-4 at 375).

20  **Jenny** is identified through her own declaration.  Jenny Decl. ¶ 5 (Dkt. 139-4 at 358).

21  **Maureen** is identified through her own declaration.  Maureen Decl. ¶ 8 (Dkt. 139-4 at

22  281-82).  **Sarah** is identified in her own declaration.  Sarah Decl. ¶ 6.  However, Maureen

23  and Sarah are also identified by one or more POCs, leaving Amy and Jenny as the only

24  two plaintiffs who rely solely on their self-identification.  Defendant has proffered no

25  evidence contrary to these identifications and the court has overruled his objections.  The

26  court finds these declarations to be sufficient to establish the plaintiffs' identities by a

27  preponderance of the evidence.

28

United States District Court
Northern District of California

13

1

#### b.    Parents identifying plaintiffs

2       **Jessica** is identified by her mother.  Cooper Decl. ¶ 6 (Dkt. 139-4 at 363).  **Mya** is

3   identified by her mother.  Jane Roe Decl. ¶ 6 (Dkt. 139-4 at 306).  **Pia** is identified by her

4   mother.  Jane Roe Decl. ¶¶ 7-8 (Dkt. 139-4 at 306).  **Sally** is identified by her father, John

5   Doe.  John Doe Decl. ¶ 6 (Dkt. 139-4 at 270).  **Savannah** is identified by her mother,

6   Jane Doe.  Jane Doe Decl. ¶ 4 (Dkt. 139-4 at 276-77).  **Sierra** is identified by her father,

7   John Doe.  John Doe Decl. ¶ 6 (Dkt. 139-4 at 270).  **Skylar** is identified by her mother,

8   Jane Doe.  Jane Doe Decl. ¶ 4 (Dkt. 139-4 at 276-77).  **Violet** is identified by her mother.

9   Violet's Mother Decl. ¶ 5 (Dkt. 139-4 at 261).  Defendant has proffered no evidence

10   contrary to these identifications and the court has overruled his objections.  The court

11   finds these declarations to be sufficient to establish the plaintiffs' identities by a

12   preponderance of the evidence.  In addition to being identified by their parents, Mya, Pia

13   and Violet are identified by POCs.

14       Plaintiffs rely on the declaration of Jane Smith, mother of **Erika** and **Tori**, for their

15   identifications.  However, the declaration fails to distinguish between the girls because

16   the mother cannot tell which of her daughters the image reflects.  Jane Smith Decl. ¶¶ 6-

17   7 (Dkt. 139-4 at 368).  Because there is no way of knowing which of the two girls is

18   pictured, plaintiffs have not met their burden to establish the identity of either Erika or

19   Tori, much less the identity of both of them.

20

#### c.    Law enforcement POCs identifying plaintiffs

21       **Lily** is identified by POC for the "Vicky" series, Special Agent Joshua Findley.[4]

22   Findley Decl. ¶¶ 7-11 (Dkt. 139-4 at 344).  **Lily** is also identified by another POC for the

23   "Vicky" series, Retired Detective Roy Shepherd.  Shepherd Decl. ¶¶ 9-13 (Dkt. 139-4 at

24   351-52).   In addition to her own declaration, **Maureen** is identified by POC for the

25   "Lighthouse" series, Retired Special Agent Thomas Rothrock.  Rothrock Decl. ¶ 10 (Dkt.

26

27   _____

[4] Though Lily submits a declaration in support of plaintiffs' motion for summary judgment,
she requests that the court rely on the declarations of her law enforcement POCs for

28   identification, and plaintiffs do not rely on Lily's declaration for proof of identity.  Lily Decl.
¶ 8 (Dkt. 139-4 at 341).

United States District Court
Northern District of California

1    139-4 at 290).  In addition to the declaration of her mother, Jane Roe, **Mya** is also

2    identified by POC for the "Sweet Sugar" series, Corporal Adele Brown.  Brown Decl. ¶ 11

3    (Dkt. 139-4 at 318-19).  In addition to the declaration of her mother, Jane Roe, **Pia** is also

4    identified by POC for the "Sweet Sugar" series, Corporal Adele Brown.  Brown Decl. ¶¶

5    12-18 (Dkt. 139-4 at 319-21).  In addition to her own declaration, **Sarah** is identified by

6    POC for the "Marineland" series, Retired Detective Deborah Behymer.  Behymer Decl. ¶

7    6 (Dkt. 139-4 at 301).  In addition to the declaration of her mother, **Violet** is identified by

8    POC for the "At School" series, FBI Special Agent Jeffrey Stetler.  Stetler Decl. ¶¶ 6-7

9    (Dkt. 139-4 at 266).  Defendant has proffered no evidence contrary to these

10   identifications and the court has overruled his objections.  The court finds these

11   declarations sufficient to establish the plaintiffs' identities by a preponderance of the

12   evidence.

13                   **2.      Sexually explicit conduct**

14         Title 18 U.S.C. Section 2256(2)(A) defines "sexually explicit conduct" in part as

15   "actual or simulated . . . sexual intercourse;" "masturbation;" or "lascivious exhibition of

16   the anus, genitals, or pubic area of **any person**," (emphasis added).[5]  Additionally

17   relevant is that section's definition of "child pornography."  18 U.S.C. § 2256(8)(A).  The

18   term "lascivious exhibition" tends to resist easy classification in the context of child

19   pornography, requiring an image-by-image assessment for which many courts have

20   come to rely on the following factors articulated in United States v. Dost:

21              [I]n determining whether a visual depiction of a minor
                constitutes a "lascivious exhibition of the genitals or pubic area"
22              under § 2255(2)(E), the trier of fact should look to the following
                factors, among any others that may be relevant in the particular
23              case:
24              1) whether the focal point of the visual depiction is on the child's

25   _____

26   [5] It is the court's view that the emphasized language would apply to the images where the
     genitalia exhibited is that of an erect male penis in, on, or near the mouth of a child even
27   if the child's genitals are not exhibited.  In a number of the photos at issue here, the girls'
     mouths are simply too small to accommodate the size of the penis.  Nonetheless, the
28   court finds that the proximity of an erect penis to the mouth of a child is sufficient to
     establish the lascivious nature of the image even if it not sufficient to establish oral-genital
     sexual intercourse.

genitalia or pubic area;
2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
4) whether the child is fully or partially clothed, or nude;
5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

636 F.Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239 (9th Cir. 1987), and aff'd, 813 F.2d 1231 (9th Cir. 1987).  "The Dost factors are neither exclusive nor conclusive, and courts may consider any other factor that may be relevant in a particular case."  United States v. Perkins, 850 F.3d 1109, 1121 (9th Cir. 2017) (internal citations omitted).

The images underlying plaintiffs' claims are contraband in nature, creating significant difficulty for both sides in establishing facts.  Indeed, counsel for neither side has actually reviewed all the unsanitized images themselves.  Plaintiffs' counsel has reviewed some of the images at issue, as has defendant's counsel, but his review took place three years ago.  Plaintiffs rely on descriptions of the contraband images from declarations along with sanitized versions that redact or blackout the more graphic aspects of each image.  So, the attorneys are arguing for and against a finding that certain images qualify as CSAM when they haven't even seen, or recently seen, the unsanitized images.  When ordering that plaintiffs prepare a chart reflecting the docket entry for the evidence upon which they rely (see Dkt. 170), the court also advised that it would conduct an *in camera* review of the unsanitized images and directed plaintiffs to identify at least one image per plaintiff for the court's review.  There are many more images in the record than those appearing on plaintiffs' chart and plaintiff may rely on any of the images currently in the record, but the court has only reviewed the unsanitized versions of those images reflected on the chart.

About the court's *in camera* review of this limited set of images.  In its order, the court explained that because Title 18 U.S.C. 3509(m)(3) prohibits the copying or

1   duplication of contraband images, an *in camera* review was the only way to resolve

2   defendant's various challenges that the images did not qualify as contraband.  Dkt. 170 at

3   3.  The *in camera* review was all the more imperative because defendant did not retain

4   an expert who would testify that certain of the images did not qualify as contraband.

5   Rather, defendant appears to rest solely on the argument of his attorney.  At the second

6   hearing held on this motion and in his supplemental brief, defendant vehemently objected

7   to the court's *in camera* review, even going so far as to accuse the court of being a star

8   chamber.  Dkt. 177 at 5.

9          The objection to the court's review of the unsanitized contraband images is difficult

10  to understand given that both defense counsel and plaintiffs' counsel agreed at the

11  second hearing that, should the case proceed to trial, a jury would be shown the

12  unsanitized images and be asked to determine if they depicted sexually explicit conduct.

13  Given that the court is required to review child pornography before it is admitted at trial in

14  exercise of its discretion under Federal Rule of Evidence 403, the court overrules

15  defendant's objection.  United States v. Curtin, 489 F.3d 935, 957 (9th Cir. 2007)

16  (presentation of child pornography evidence was improper where it was not first reviewed

17  by trial judge).  In addition to its obligation to assess evidence to comply with Rule of

18  Evidence 403, the court has the obligation to adjudicate issues that can be resolved

19  pretrial in order to avoid the unnecessary exhibition of contraband child pornography to a

20  jury of laypersons unaccustomed to viewing this sort of offensive and distasteful

21  evidence.

22         However, to the extent that defendant's intended objection is that plaintiffs cannot

23  rely on the court's *in camera* review to substitute for their own production of evidence to

24  establish the necessary elements of their claims, the court agrees.  Accordingly, the *in*

25  *camera* review is used herein only to confirm the adequacy or inadequacy of plaintiffs'

26  position that the proffered images qualify as child pornography.  Again, defendant offered

27  no evidence to rebut any of plaintiffs' evidence.

28         A summary describing the findings from the court's *in camera* review of the images

United States District Court
Northern District of California

1  is entered under seal as an addendum to the present order.  That document is sealed

2  and the descriptions of the sexually explicit conduct referred to in this order are redacted

3  for the reasons stated in the court's separate order filed today granting the parties'

4  motions to seal.

5      There are three categories of proof offered by plaintiffs to establish the sexually

6  explicit conduct depicted in the CSAM involved here: (1) plaintiffs' descriptions of image

7  content, (2) POCs' descriptions of image content, and (3) expert Kevin Laws' descriptions

8  of image content.

9                    a.       **Plaintiffs self-describe image content**

10      **Amy** describes, "The photo attached as Ex. 1 is a photo of me taken by my abuser

11  during the sexual abuse that I endured as a child . . . I remember the blue, red and white

12  bed sheets on the mattress pictured in this photo.  I also remember that my abuser

13  posed, photographed, and sexually abused me on top of a mattress with these same

14  blue, red and white bed sheets.  Additionally, I remember that my abuser posed me

15  naked with my legs up in the air while he photographed me on top of a mattress with

16  these same blue, red and white bed sheets."  Amy Decl. ¶ 5 (Dkt. 139-4 at 375).  The

17  court conducted its own review of the unsanitized image.  Amy's description, confirmed

18  by the court, meets the definition of "sexually explicit conduct."  18 U.S.C.

19  § 2256(2)(B)(iii).

20      **Jenny** describes, "The photo attached at Ex. 1 is a photo of me taken by my

21  abuser during the sexual abuse that I endured as a child. . . I recognize this photo as my

22  own appearance . . . I recognize the blue, white, and tan blanket in the background of the

23  photo.  I remember being abused on the same blue, white, and tan blanket.  I also

24  recognize the brown dog collar I am wearing around my neck in the photo.  I recall that

25  my abuser required that I wear this same dog collar while he sexually abused me.  The

26  blacked-out part of the photograph likely consists of my face, my mouth, and the genitals

27  of my abuser.  I remember my abuser taking photos of my face and mouth with his

28  genitals on or near me."  Jenny Decl. ¶ 5 (Dkt. 139-4 at 358).  The court conducted its

United States District Court
Northern District of California

1    own review of the unsanitized image.  Jenny's description, confirmed by the court, meets

2    the definition of "sexually explicit conduct."  18 U.S.C. § 2256(2)(B)(iii).

3         **Maureen** describes, "Among the images that were created of me are images ███

4    ████████████████████████.  The attached redacted photograph is one of

5    those images, although his ███████████████."  Maureen Decl. ¶ 8

6    (Dkt 139-4 at 282).  A POC similarly describes the image below.  The court conducted its

7    own review of the unsanitized image.  Maureen's description, confirmed by the court,

8    meets the definition of "sexually explicit conduct."  18 U.S.C. § 2256(2)(B)(i).

9                    **b.    Law enforcement POCs describe image content**

10        Special Agent Findley describes the sexual content of one of the images depicting

11   **Lily** as follows: "The photo attached hereto as Ex. 1 is a photo of Lily also taken during

12   her sexual abuse.  The unredacted photo would shows ████████████████

13   ██████████████████████████████████████."

14   Findley Decl. ¶ 8 (Dkt. 139-4 at 344).  The sexual content of the media is described by

15   Retired Detective Shepherd using the same terms.  Shepherd Decl. ¶¶ 10-13 (Dkt. 139-4

16   at 352).   The court conducted its own review of the unsanitized version of the image

17   referred to by both POCs as Ex. 1.  The description of Ex. 1, confirmed by the court,

18   meets the definition of "sexually explicit conduct."  18 U.S.C. § 2256(2)(B)(iii).

19        Retired Special Agent Rothrock describes the sexual content of one of the images

20   depicting **Maureen** as follows: "The photo attached hereto as Ex. 1 is a photo of Maureen

21   taken during the sexual abuse she endured as a child.  The unredacted photo shows ███

22   ████████████████████████████████████████."

23   Rothrock Decl. ¶ 11 (Dkt. 139-4 at 290).  The image is similarly described by Maureen

24   above.  The court conducted its own review of the unsanitized image.  Retired Agent

25   Rothrock's description, confirmed by the court, meets the definition of "sexually explicit

26   conduct."  18 U.S.C. § 2256(2)(B)(i).

27        Corporal Brown describes the sexual content of one of the images depicting **Mya**

28   as follows: "The unredacted photo shows Mya ████████████████████████

United States District Court
Northern District of California

19

1 ████████████████████████████████████████████

2 ████████████████████  . . .  ████████████████

3 ████.”  Brown Decl. ¶ 11 (Dkt. 139-4 at 318-19).  The court conducted its own review of

4 the unsanitized image.  Corporal Brown's description, confirmed by the court, meets the

5 definition of "sexually explicit conduct."  18 U.S.C. § 2256(2)(B)(iii).

6    The sexual content of the media depicting **Pia** is also described by Corporal

7 Brown.  Brown Decl. ¶¶ 12-18 (Dkt. 139-4 at 319-21).  Corporal Brown describes, "The

8 unredacted photo shows ████████████████████████████████

9 ████████████████████████████████████████████

10 ████.”  Brown Decl. ¶ 13 (Dkt. 139-4 at 319).  The court conducted its own review of the

11 unsanitized image.  Corporal Brown's description, confirmed by the court, meets the

12 definition of "sexually explicit conduct."  18 U.S.C. § 2256(2)(B)(iii).  It may additionally fit

13 the definition of "sexually explicit conduct" as graphic masturbation. 18 U.S.C.

14 § 2256(2)(B)(ii)(II).

15    Retired Detective Behymer describes the media of **Sarah** as follows: "The blacked

16 out portion of the photo on the left would show her ████████████████████.

17 On her face ████████████████████████.  Based on my experience and training

18 as a law enforcement officer involved in child exploitation cases it is my professional

19 opinion that the unredacted version of this photo is child pornography within the definition

20 of that term in the federal statute 18 U.S.C. 2256."  Behymer Decl. ¶ 6 (Dkt. 139-4 at

21 301).  Defendant contests that this description and image fail to meet the definition of

22 sexually explicit conduct.  The court conducted its own review of the unsanitized image

23 and agrees that neither the description nor the image reflect the lascivious display of

24 genitals nor does it include sexual intercourse of any kind.  Additionally, given the poor

25 quality of the photo, the presence of any substance on her face is not clearly

26 ascertainable.  Thus, the image does not clearly fall within the statutory definition of

27

28

United States District Court
Northern District of California

1  "sexually explicit conduct."[6]

2    Special Agent Stetler provides the following image description regarding **Violet**:

3  "The unredacted version of this photo shows Violet ████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████." Stetler

6  Dec. at ¶ 7 (Dkt. 139-4 at 266).  Defendant contests that this image fails to meet the

7  definition of sexually explicit conduct.  The court conducted its own review of the

8  unsanitized image.  Special Agent Stetler's description, confirmed by the court, meets the

9  definition of "sexually explicit conduct."  18 U.S.C. § 2256(2)(B)(iii).  <u>See</u> footnote 5

10  above.

    c.  **Descriptions of images from expert Kevin Laws**

12    In his review of files, expert Kevin Laws described images attributed to **Lily** (Laws

13  Decl. ¶ 9(d) (Dkt. 139-4 at 157-58), referring to Ex. 9 (Dkt. 139-4 at 235)), **Mya** (Laws

14  Decl. ¶ 9(c)(i) (Dkt. 139-4 at 153), referring to Ex. 8 (Dkt. 139-4 at 219)), **Pia** (Laws Decl.

15  ¶ 9(c)(ii) (Dkt. 139-4 at 154-55), referring to Ex. 8 (Dkt. 139-4 at 220-234)), and **Violet**

16  (Laws Decl. at ¶ 9(a) (Dkt. 139-4 at 148), referring to Ex. 4 (Dkt. 139-4 at 195)).  The

17  court, having found that the POCs' respective descriptions of the images of these

18  plaintiffs are sufficient, finds it unnecessary to set forth the substantially similar

19  descriptions provided by Laws.  The repetition of the descriptions for those plaintiffs'

20  images here would be cumulative and duplicative.  The remaining plaintiffs for whom

21  Laws described images were Sally, Savannah, Sierra, and Skylar.

22    Laws identified only one image of **Sally**.  Laws provides the following description:

23  "This image shows Sally ████████████████████████████████████

24  ████████████████████████████████████████████████████

25  ████████████████." Laws. Decl. ¶ 9(b)(iv) (Dkt. 139-4 at 153), referring to Ex. 5 (Dkt.

26  139-4 at 201).  Defendant contests that this image meets the definition of sexually explicit

27

28  ———————————
[6] This is the only image in which Sarah is identified in the record.

United States District Court
Northern District of California

1  conduct.  The court conducted an *in camera* review of a different unsanitized image

2  designated for Sally.  Because the court did not review the unsanitized version of the only

3  image of Sally for which there is a description in the record, and because the court has

4  found at least one other image that did not meet the definition of sexually explicit conduct

5  contrary to plaintiffs' position, the court declines to adjudicate this issue in plaintiffs'

6  favor.[7]

7      Laws describes two images of **Savannah**.  One of these images is the unsanitized

8  version of the image relied upon for identification by Savannah's parent.  Laws provides

9  the following image description: "This image depicts Savannah ████████████

10 ███████████████████████████████████████████

11 ███████████████████████████████████████████

12 ██████████████████████████████████████████

13 ███████████████████████████████████████████

14 ██████████, was provided to me by HSI Group Supervisor Barfuss."  Laws. Decl. ¶

15 9(b)(ii) (Dkt. 139-4 at 151), referring to Ex. 5 (Dkt. 139-4 at 200).  The court conducted its

16 own review of the unsanitized image.  Laws' description, confirmed by the court, meets

17 the definition of "sexually explicit conduct."  18 U.S.C. § 2256(2)(B)(i).

18      Laws describes four images of **Sierra**.  Two of these images are the unsanitized

19 versions of the image relied upon for identification by Sierra's parent.  Laws provides the

20 following image description: "In this image, ███████████████████████

21 ███████████████████████████████████████████

22 ███████████████."  Laws. Decl. ¶ 9(b)(i) (Dkt. 139-4 at 149), referring to Ex. 5

23 (Dkt. 139-4 at 205).  The court conducted its own review of the unsanitized image.  Laws'

24 description, confirmed by the court, meets the definition of "sexually explicit conduct."  18

25 U.S.C. § 2256(2)(B)(iii).

26

27 _____

28 [7] There is at least one more image in the record in which Sally is identified.  John Doe
Decl. ¶ 6 (Dkt. 139-4 at 270), referring to Exhibit 4 (Dkt. 139-4 at 274).  This image was
not provided to the court for its *in camera* review.

1    Laws describes a total of five images for **Skylar**.  One of these images is the

2    unsanitized version of the image relied upon for identification by Skylar's parent.  Laws

3    provides the following image description: "Sierra is ████████████████████████

4    ████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████

6    ████████████████████████████."  Laws Decl. ¶ 9(b)(iii) (Dkt. 139-4 at 151),

7    referring to Ex. 5 (Dkt. 139-4 at 206).  The court conducted its own review of the

8    unsanitized image.  Laws' description, confirmed by the court, meets the definition of

9    "sexually explicit conduct."  18 U.S.C. § 2256(2)(B)(i).

10                  **d.      Images lacking description**

11                  There are no descriptions of the contraband images in the record for **Erika**, **Tori**,

12   and **Jessica**.  Plaintiffs admit in their supplemental chart that no declaration describes

13   the redacted content of the photo attributed to both Erika and Tori, exhibit 2 to Jane

14   Smith Declaration (Dkt. 139-4 at 373) and exhibit 9 (second photo) to Kevin Laws

15   Declaration (Dkt. 139-4 at 259).[8]  Plaintiffs admit in their supplemental chart that no

16   declaration describes the redacted content of the photo attributed to Jessica, exhibit 1 to

17   the Cooper Declaration (Dkt. 139-4 at 365) and exhibit 11 to Kevin Laws Declaration

18   (Dkt. 139-4 at 254).[9]  Plaintiffs rely on court's *in camera* review of the media to determine

19   whether these images fall within the definition of sexually explicit content.  However,

20   plaintiffs cannot substitute the court's review of the images for their own proof, and this

21   element is therefore not established for Erika, Tori, or Jessica.

22                  **3.      Defendant's possession of CSAM**

23                  Civil liability under Section 2255 requires plaintiffs to establish they are victims of

24   one of 14 enumerated child sexual abuse offenses.  Plaintiffs here allege they are victims

25   of defendant's possession of CSAM depicting them.  Because defendant's possession is

26

27   ─────────────────────
     [8] There are two images in which Jane Smith identifies either Erika or Tori.  See Jane
28   Smith Decl. ¶¶ 6-7 (Dkt. 139-4 at 368), referring to Exs. 1 & 2 (Dkt. 139-4 at 370-373).
     [9] This is the only image in which Jessica is identified in the record.

23

United States District Court
Northern District of California

an essential element of proof for defendant's underlying criminal offense (18 U.S.C. § 2252), it is thus an essential element to establish plaintiffs' victimhood.

### a.    Documents from underlying criminal matter

Plaintiffs, in their supplemental chart, first identify a set of documents as applicable to all plaintiffs to establish that defendant possessed their CSAM in violation of Title 18 U.S.C. § 2252.  They are (1) the plea agreement from defendant's criminal case, (2) the transcript of defendant's plea hearing where he admits possession of computer media containing child pornography, and (3) a Report of Investigation from HSI's criminal investigation of defendant listing the same computer media as that contained in the plea agreement.

These documents generally present defendant's criminal culpability, an important set of facts underlying plaintiffs' case in chief.  However, none of these documents provide the necessary nexus to establish that the CSAM depicting plaintiffs' alleged abuse was found in defendant's possession.  These documents generally show that, throughout his criminal plea, defendant Curtis specifically avoided admitting or otherwise establishing that any of the individuals depicted in the CSAM he possessed are statutory victims.  See, e.g., "Stipulation re: Restitution to Claimants Other than 'CC'", United States v. Randall Curtis, 16-cr-00510-SI, Dkt. 90 at 2, ("the defendant does not concede that any of the [restitution] Claimants is a statutory victim, and nothing in this Stipulation shall be construed as any admission by defendant in any proceeding by any party").  Defendant generally admitted possession of contraband media, but he did not admit possessing media depicting the plaintiffs in this case.  Plaintiffs' reliance on this set of documents from defendant's criminal case is therefore unavailing.

### b.    NCMEC Report

Plaintiffs additionally rely on the information provided in the NCMEC report in their attempt to establish defendant's possession of their CSAM.  However, as plaintiffs acknowledge, the NCMEC report identifies that images from certain "child pornography series" were found in media files attributed to defendant during the investigation of his

24

1   criminal case.  Each series may also depict more than one individual, meaning that even

2   if a series is identified in some media, an individual plaintiff may not be depicted within

3   that specific media.  Plaintiffs' presentation is missing any declaration or other showing

4   that CSAM depicting each individual plaintiff was found on defendant's computer.

5                             **c.      Laws Declaration**

6          Plaintiffs additionally refer to the report of their expert, Kevin Laws, to establish

7   that their CSAM was found in defendant's possession.  As defendant has pointed out,

8   however, plaintiffs fail to establish that the unsanitized media reviewed by Laws at the

9   HSI office was the media found on defendant's computer, forming the basis for his

10  conviction.  In Mr. Laws' declaration, he states that he was tasked with performing a

11  forensic examination of the media found on the digital devices seized by HSI during its

12  criminal investigation of Curtis, but there is no confirmation in the declaration that the files

13  reviewed by Mr. Laws indeed originated from or matched those from defendant's

14  computer.[10]  See Laws Decl. ¶ 7 (Dkt. 139-4 at 146).  Mr. Laws' testimony simply states

15  that Special Agent Popper provided him with a portable Universal Serial Bus (USB) drive

16  containing folders with titles consistent with defendant's computer media.  Laws Decl. ¶ 8

17  (Dkt. 139-4 at 147).  Plaintiffs further fail to establish that the sanitized media received by

18  Laws after his in-person review was the media found on defendant's computer.  Mr. Laws

19  reported receiving by email the sanitized images relied upon elsewhere in plaintiffs'

20  evidentiary presentation from HSI Group Supervisor Christina Barfuss.  Laws Decl. ¶ 11

21  (Dkt. 139-4 at 158).  Laws does not report that Supervisor Barfuss made any

22  representations regarding the source of these images.  Id.  Plaintiffs have made much of

23  the difficulties posed by the new and unique evidentiary procedure under Title 18 U.S.C.

24

25  [10] The court harbors some doubt that HSI officials would permit Mr. Laws to review any
    unsanitized CSAM recovered from a criminal investigation without first establishing Mr.
26  Laws' representative status in relation to these plaintiffs and defendant's criminal
    culpability.  The terms of Title 18 U.S.C. § 3509(m)(3) limit the viewing of the contraband
27  images to the victims or their representatives.  However, the court cannot assume the
    element of possession from the mere act by HSI of providing Laws with certain CSAM
28  series.

1  § 3509(m)(3) to allow their designated representative to review the contraband images in

2  government custody.  The difficulties with contraband evidence, however, cannot serve to

3  excuse their lack of evidentiary showing for this essential element—that the images upon

4  which plaintiffs claim their victimhood were found in defendant's possession, on his

5  computer.

6         To be clear, in the absence of a declaration or deposition testimony from the

7  person who conducted the forensic examination of defendant's computer, or someone

8  with personal knowledge of the contents of his computer, that each of these images

9  relied on by plaintiffs, rather than just the series of which they are known to be included in

10  the past, none of the plaintiffs establish that defendant possessed CSAM depicting them.

11  Plaintiffs are not entitled to a favorable adjudication of this issue, and they must proceed

12  to trial to establish defendant's possession.

13  **V.    Summary of Findings and Conclusions as to Each Element**

14         The court adjudicates the following elements of each plaintiff's single claim for

15  liquidated damages under Section 2255:

16    • **Amy**.  Amy's identity as the girl pictured in the image discussed above is

17       established through her own declaration.  Amy's own description of the

18       pornographic nature of the image, confirmed by the court's *in camera*

19       review, meets the definition of sexually explicit conduct.  Defendant offers

20       no contrary evidence as to these two elements.  These two elements are

21       summarily adjudicated in Amy's favor.  However, Amy's showing of

22       defendant's possession of that image is insufficient and summary

23       adjudication is denied as to that element.

24    • **Erika**.  Erika's identity is not established in any of the images proffered by

25       plaintiffs as Jane Smith, mother of Erika and Tori, fails to distinguish

26       between the girls in her declaration.  Plaintiffs offer no description of media

27       depicting Erika engaged in sexually explicit conduct.  There is no showing

28       that any image of Erika was possessed by defendant.  Summary judgment

United States District Court
Northern District of California

is denied as to Erika.

- **Tori**.  Tori's identity is not established in any of the images proffered by plaintiffs as Jane Smith, mother of Erika and Tori, fails to distinguish between the girls in her declaration.  Plaintiffs offer no description of media depicting Tori engaged in sexually explicit conduct.  There is no showing that any image of Tori was possessed by defendant.  Summary judgment is denied as to Tori.

- **Jenny**. Jenny's identity as the girl pictured in the image discussed above is established through her own declaration.  Jenny's own description of the pornographic nature of the image, confirmed by the court's *in camera* review, meets the definition of sexually explicit conduct.  Defendant offers no contrary evidence as to these two elements.  These two elements are summarily adjudicated in Jenny's favor.  However, Jenny's showing of defendant's possession of that image is insufficient and summary adjudication is denied as to that element.

- **Jessica**.  Jessica's identity as the girl pictured in one of the images is established through the declaration of her mother.  Defendant offers no contrary evidence as to this element.  The element of identity is summarily adjudicated in Jessica's favor.  Plaintiffs offer no description of media depicting Jessica engaged in sexually explicit conduct.  Plaintiffs make no showing that any image of Jessica was possessed by defendant.  Summary adjudication is denied as to these two elements for Jessica.

- **Lily**.  Lily's identity as the girl pictured in the image discussed above is established through the declarations of POCs Special Agent Joshua Findley and Retired Detective Roy Shepherd.  The descriptions of the pornographic nature of the image by Laws and the POCs, confirmed by the court's *in camera* review, meet the definition of sexually explicit conduct.  Defendant offers no contrary evidence as to these two elements.  These two elements

are summarily adjudicated in Lily's favor.  However, Lily's showing of
defendant's possession of that image is insufficient and summary
adjudication is denied as to that element.

- **Maureen**.  Maureen's identity as the girl pictured in the image discussed
above is established through her own declaration as well as that of POC
Retired Special Agent Thomas Rothrock.  Maureen and Agent Rothrocks'
descriptions of the pornographic nature of the image, confirmed by the
court's *in camera* review, meet the definition of sexually explicit conduct.
Defendant offers no contrary evidence as to these two elements.  These
two elements are summarily adjudicated in Maureen's favor.  However,
Maureen's showing of defendant's possession of that image is insufficient
and summary adjudication is denied as to that element.

- **Mya**.  Mya's identity as the girl pictured in the image discussed above is
established through declarations of her mother and POC Corporal Adele
Brown.  The descriptions of the pornographic nature of the image by Laws
and the POC, confirmed by the court's *in camera* review, meet the definition
of sexually explicit conduct.  Defendant offers no contrary evidence as to
these two elements.  These two elements are summarily adjudicated in
Mya's favor.  However, Mya's showing of defendant's possession of that
image is insufficient and summary adjudication is denied as to that element.

- **Pia**.  Pia's identity as the girl pictured in the image discussed above is
established through declarations of her mother and POC Corporal Adele
Brown.  The descriptions of the pornographic nature of the image by Laws
and the POC, confirmed by the court's *in camera* review, meet the definition
of sexually explicit conduct.  Defendant offers no contrary evidence as to
these two elements.  These two elements are summarily adjudicated in
Pia's favor.  However, Pia's showing of defendant's possession of that
image is insufficient and summary adjudication is denied as to that element.

United States District Court
Northern District of California

- **Sally**.  Sally's identity as the girl pictured in the image discussed above is established through the declaration of her father, John Doe.  Defendant offers no contrary evidence as to this element.  The element of identity is summarily adjudicated in Sally's favor.  The description of the media depicting Sally does not match the unsanitized version of the image reviewed *in camera*, and defendant argues that the description of the image does not meet the definition of sexually explicit conduct.  Summary adjudication is denied as to the element of sexually explicit conduct.  Plaintiffs make no showing that any image of Sally was possessed by defendant.  Summary adjudication is also denied as to this element for Sally.

- **Sarah**.  Sarah's identity as the girl pictured in the image discussed above is established through her own declaration as well as that of Retired Detective Deborah Behymer.  Defendant offers no contrary evidence as to this element.  This element is summarily adjudicated in Sarah's favor.  The description of the pornographic nature of the image by Detective Behymer, while confirmed by the court's *in camera* review, does not squarely meet the definition of sexually explicit conduct and summary adjudication is denied as to that element.  Sarah's showing of defendant's possession of that image is insufficient and summary adjudication is denied as to that element.

- **Savannah**.  Savannah's identity as the girl pictured in the image discussed above is established through her mother's declaration.  The description of the pornographic nature of the image by Laws, confirmed by the court's *in camera* review, meets the definition of sexually explicit conduct.  Defendant offers no contrary evidence as to these two elements.  These two elements are summarily adjudicated in Savannah's favor.  However, Savannah's showing of defendant's possession of that image is insufficient and

29

summary adjudication is denied as to that element.

- **Sierra**. Sierra's identity as the girl pictured in the image discussed above is established through the declaration of her father. Laws' description of the pornographic nature of the image, confirmed by the court's *in camera* review, meets the definition of sexually explicit conduct. Defendant offers no contrary evidence as to these two elements. These two elements are summarily adjudicated in Sierra's favor. However, Sierra's showing of defendant's possession of that image is insufficient and summary adjudication is denied as to that element.

- **Skylar**. Skylar's identity as the girl pictured in the image discussed above is established through the declaration of her mother. Laws' description of the pornographic nature of the image, confirmed by the court's *in camera* review, meets the definition of sexually explicit conduct. Defendant offers no contrary evidence as to these two elements. These two elements are summarily adjudicated in Skylar's favor. However, Skylar's showing of defendant's possession of that image is insufficient and summary adjudication is denied as to that element.

- **Violet**. Violet's identity as the girl pictured in the image discussed above is established through the declarations of her mother and POC Special Agent Jeffrey Stetler. The descriptions of the pornographic nature of the image by Laws and the POC, confirmed by the court's *in camera* review, meet the definition of sexually explicit conduct. Defendant offers no contrary evidence as to these two elements. These two elements are summarily adjudicated in Violet's favor. However, Violet's showing of defendant's possession of that image is insufficient and summary adjudication is denied as to that element.

//

//

United States District Court
Northern District of California

## VI.     Conclusion

For these reasons, the court hereby **GRANTS** summary judgment in part and **DENIES** summary judgment in part and adjudicates the various elements of each plaintiff's claim as indicated above.  The elements not adjudicated in plaintiffs' favor must proceed to trial.  A telephone conference will be held shortly in order to discuss the trial date.

**IT IS SO ORDERED.**

Dated: April 13, 2021

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge